# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**W.E. AUBUCHON CO., INC., AUBUCHON DISTRIBUTION, INC., W.E. AUBUCHON CO. INC. EMPLOYEE MEDICAL BENEFIT PLAN,** and **AUBUCHON DISTRIBUTION, INC. EMPLOYEE MEDICAL BENEFIT PLAN,**

                                        **Plaintiffs,**

v.

**BENEFIRST, LLC**,

                                        **Defendant.**

**CIVIL ACTION No. 05-40159 FDS**

---

## DEFENDANT BENEFIRST, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendant, BeneFirst, LLC, hereby moves, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an Order compelling Plaintiffs to produce documents in response to BeneFirst's written discovery requests, as set forth below.  BeneFirst also requests that Plaintiffs be ordered to provide a privilege log for documents withheld on the grounds of privilege.

## I.    BACKGROUND

This matter arises out of BeneFirst's role as the third party administrator for the W.E. Aubuchon Co. Inc. Employee Medical Benefit Plan and the Aubuchon Distribution Inc. Employee Medical Benefit Plan.  In their Amended Complaint, Plaintiffs contend that BeneFirst breached its fiduciary duty to them by failing to perform its duties, including "investigating and determining eligibility, payments, co-pays, co-insurance and subrogation claims,"  in a reasonably prudent fashion.  Plaintiffs also contend that BeneFirst breached its contract with them for administrative services.

On July 26, 2006, BeneFirst served Requests for Production of Documents to Plaintiffs W.E. Aubuchon Co. Inc. and Aubuchon Distribution Inc.  Plaintiffs insisted that they could not respond

to the requests and their time for responding was extended until October 30, 2006.  The Plaintiffs finally served their written responses to the requests for production of documents on October 30, 2006, but did not, however, produce any documents at that time. **[Exhibit A, Plaintiffs' Response to Defendant's Requests for Production of Documents]**   Moreover, there were a number of deficiencies in Plaintiffs' responses.  Among other things, although Plaintiffs routinely claimed attorney client privilege as a basis for withholding documents, no privilege log, as required by Fed. R. Civ. P. 26(b)(5) was or has been provided. In addition, Plaintiffs' counsel routinely reinterpreted the requests to narrow them to only those documents that the Plaintiffs wished to search for or allow production of, and interposed numerous unfounded objections.

Counsel for BeneFirst raised these deficiencies with Plaintiffs via letter dated November 15, 2006. **[Exhibit B, Rosenberg Nov. 15, 2006 Letter]**  Counsel for BeneFirst sent Plaintiffs a second later dated November 27, 2006, requesting that the documents be produced by November 30, 2006, or he would be forced to move to compel production. **[Exhibit C, Rosenberg Nov. 27, 2006 Letter]**  Counsel for Plaintiffs finally responded by letter on November 28, 2006, essentially asserting that Plaintiffs' objections were appropriate and that BeneFirst is not entitled to much of the information it seeks. **[Exhibit D, Ciavarra Nov. 28, 2006 Letter]** Over the course of this litigation Plaintiffs have produced a limited number of documents, but continue to stand by almost all of their previously stated objections.[1] The production to date is clearly absent numerous relevant

---

[1]Plaintiffs produced approximately 560 pages of documents as their initial disclosures at the commencement of this litigation.  In response to BeneFirst's requests for production of documents, Plaintiffs produced those same materials a second time under cover of a November 28, 2006 letter.  At that time, the only other documents produced by Plaintiffs consisted of a computer disk compilation of documents produced to Plaintiffs by a third party witness from whom Plaintiffs subpoenaed documents during the course of this litigation.  Plaintiffs also provided at the same time two spreadsheets listing medical claims covered by Plaintiffs' employee benefit plans for which Plaintiffs want BeneFirst to provide hard copies of medical bills submitted during the operation of those plans; these spreadsheets are not part of the requested production, but instead relate to a separate discovery dispute that is currently pending before Magistrate Judge Hillman. Accordingly, either the Plaintiffs claim to have no non-objectionable documents responsive to the requests other than those produced as part of their initial disclosures in this lawsuit, or they have simply failed to produce non-objectionable documents in their possession, custody or control.  Which it is remains unclear. **[Exhibit G, Rosenberg December 7, 2006 email]**.  If it is the latter, the Court should order immediate production, since Plaintiffs are over 40 days late in producing the required documents.  BeneFirst will file a further motion on this issue should it become apparent that Plaintiffs are still withholding and have failed to produce responsive documents whose production was not objected to by Plaintiffs.

documents and, as a result, and in light of Plaintiffs' counsel's unwillingness to respond properly to the requests for production, BeneFirst has no choice but to file the present Motion to Compel.

## II.     ARGUMENT

In essence, the Plaintiffs simply refuse to respond properly to a number of requests, all of which are clearly relevant and require production, on the basis of objections interposed simply to obstruct BeneFirst in constructing its defense.  The requests, and the improper responses, are discussed below.

### A.     Contract Documents

**Request No. 16**

All documents discussing, concerning, or relating to the negotiation, drafting or execution of any contracts between BeneFirst and any Plaintiffs in this lawsuit.

**Response**

Plaintiffs state that they will produce documents responsive to this Request only to the extent that they relate to contracts at issue in this action.

**Request No. 17**

All documents discussing, concerning, or relating to the performance by BeneFirst of any contracts between BeneFirst and any Plaintiffs in this lawsuit.

**Response**

Plaintiffs object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine.  Notwithstanding and without waving the foregoing objections, Plaintiffs state that they will produce documents responsive to this Request only to the extent that they relate to the contracts at issue in this action.

This is a breach of contract action.  In fact, in their interrogatory answers in this case, the Plaintiffs charge that BeneFirst breached certain terms of the contracts between the Plaintiffs and BeneFirst and is accordingly liable for breach of contract. **[Exhibit E, Plaintiff W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan's Answers to Interrogatories at answer no. 12][2]** In light

---

[2]Each of the other Plaintiffs makes the same allegations of breach of contract in their interrogatory answers, but in the interest of economy, BeneFirst cites to only the interrogatory answers of Plaintiff W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan.

of these claims, BeneFirst has requested, in Request No. 16, all documents discussing, concerning, or relating to the negotiation, drafting or execution of any contract between BeneFirst and any Plaintiff, and, in Request No. 17, all documents discussing, concerning, or relating to the performance by BeneFirst of any contract between BeneFirst and any Plaintiff.   Plaintiffs state in their response that they will produce documents responsive to these two Requests only to the extent that they relate to contracts at issue in this action. Of note, they raise no objection to producing the documents actually requested (other than with regard to documents covered by the attorney-client privilege or work product doctrine), and simply unilaterally declare that they will only produce documents related to the exact contracts at issue in this case.  Having raised no objection, they have no standing to refuse to produce the requested documents.

Moreover, all the documents requested by BeneFirst, not just those related to the contracts at issue, are relevant to the Plaintiffs' breach of contract claim, and are reasonably calculated to lead to the discovery of admissible evidence, as required by Fed. R. Civ. P. 26(b)(1).  The scope of permissible discovery under Fed. R. Civ. P. 26(b)(1) is broad: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  As the First Circuit has stated, "the word 'relevant' encompasses

> any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. . . . Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.  Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

Klonoski v. Mahlab, 156 F.3d 255 (1st Cir. 1998) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978)).

BeneFirst seeks documents relating to all contracts between BeneFirst and Plaintiffs because such contracts are relevant to the business transactions between the parties and the

scope of BeneFirst's duties and responsibilities to Plaintiffs, including, potentially, BeneFirst's duties and responsibilities as set forth in the contracts at issue and any liabilities it supposedly has under the contracts.   While other contracts may not be the subject of this lawsuit, the course of dealing between the parties, as evidenced by the other contracts, may be relevant to the formation and terms of the contracts that are at issue, and provide extrinsic evidence as to the meaning of the terms used in the contracts involved in this litigation.  Unless the Plaintiffs are willing to admit on the record that BeneFirst's interpretation of any terms in the contracts at issue govern any dispute over the meaning of terms in the contract - something the Court, as BeneFirst did in drafting its narrowly tailored requests, can assume the Plaintiffs will not do - BeneFirst is entitled to all evidence that may shed light on the meaning and purpose of terms in the agreement, including all documents sought in these two requests.  Documents related to the performance of all of the contracts are relevant for much the same reasons, in that they will show what level of performance the Plaintiffs actually believed, as one of the contracting parties, to be required under all contracts, including the contracts at issue in this lawsuit.  At a minimum under these circumstances, the documents sought by BeneFirst in these two requests are "reasonably calculated" to lead to the discovery of admissible evidence.

The Court, therefore, should compel Plaintiffs to produce all documents responsive to Request Nos. 16 and 17.  If the only documents that exist are documents that relate to contracts at issue in this action, then Plaintiffs should so state.

**B.    Stop Loss Policies and Documents**

**Request No. 20**

All stop loss policy applications filed, filled out, or submitted by you or any Plaintiffs since 1990.

**Response**

Plaintiffs object to this Request to the extent that it is overbroad, unduly burdensome, vague and seeks information which is irrelevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs further object to this Request as the term "Stop Loss" is not defined.  Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they will produce responsive

documents, if any exist, for the time in which BeneFirst was Third Party Administrator and only to the extent that such documents relate to medical insurance.

**Request No. 21**

All stop loss policies issued to you or any Plaintiffs since 1990.
**Response**

Plaintiffs object to this Request to the extent that it is overbroad, unduly burdensome, vague and seeks information which is irrelevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this Request as the term "Stop Loss" is not defined. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they will produce responsive documents, if any exist, for the time in which BeneFirst was Third Party Administrator and only to the extent that such documents relate to medical insurance.

**Request No. 22**

All documents discussing, concerning, or relating to the negotiation, selection, issuance, cancellation or non-renewal of any stop loss policies issued to you or any Plaintiffs since 1990.

**Response**

Plaintiffs object to this Request to the extent that it is overbroad, unduly burdensome, vague and seeks information which is irrelevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this Request as the term "Stop Loss" is not defined. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they will produce responsive documents, if any exist, for the time in which BeneFirst was Third Party Administrator and only to the extent that such documents relate to medical insurance.

It was counsel for BeneFirst's understanding that Plaintiffs' claims are based, at least in part, on the impact of BeneFirst's actions on Plaintiffs' stop loss policies, and that the Plaintiffs claim to have suffered losses related to their stop loss policies due to BeneFirst's actions. Plaintiffs and their counsel have at all times maintained this position in this case, and, prior to suit, in their dealings with BeneFirst. In fact, in their interrogatory answers in this case, the Plaintiffs admit that their claims include losses related to their stop loss policies from BeneFirst's alleged errors. **[Exhibit E, Plaintiff W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan's Answers to**

**Interrogatories at answer no. 10]**.[3] In Requests No. 20, 21 and 22, BeneFirst therefore requested all stop loss policies issued to any Plaintiff since 1990, as well as documents relating to the application, negotiation, selection, issuance, cancellation or non-renewal of such stop loss policies.

In his letter dated November 15, 2006, counsel for BeneFirst told counsel for Plaintiffs that he would move to compel production of all of the requested documents unless Plaintiffs are prepared to declare that they make no claims related to the impact of BeneFirst's alleged conduct on Plaintiffs' stop loss policies. Counsel for BeneFirst expressly asked counsel for Plaintiffs to advise him whether Plaintiffs acknowledge that they do not make such claims. Counsel for Plaintiffs, however, in his response dated November 28, 2006, did not make any such acknowledgment, but simply reiterated that Plaintiffs' objections to Requests No. 20, 21 and 22 are appropriate. Moreover, thereafter, in responses to interrogatories, the Plaintiffs admitted that they are making claims based upon the impact of BeneFirst's alleged conduct on their stop loss policies. **[Exhibit E, Plaintiff W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan's Answers to Interrogatories at answer no. 10]** Thus, counsel for BeneFirst's understanding that Plaintiffs' claims are based on the alleged impact of BeneFirst's actions on Plaintiffs' stop loss policies is clearly correct, and thus documents concerning the Plaintiffs' stop loss policies are discoverable.

The Plaintiffs objections to such discovery are unfounded. This is made most obvious by the Plaintiffs' objection to producing these materials that they somehow do not understand what the term "stop loss" means in these requests. Since the Plaintiffs admit that their claims are based upon the impact of BeneFirst's alleged conduct on their stop loss policies, Plaintiffs obviously understand what the term "stop loss" means, and Plaintiffs' objection that the term is undefined is not appropriate.

Under these circumstances, it is certainly a fair interpretation of the Plaintiffs' responses that this objection based on the meaning of the term "stop loss" was interposed solely to obstruct

---

[3]Once again, BeneFirst cites only to the interrogatory answers of one of the Plaintiffs in the interest of judicial economy, but notes that the other Plaintiffs likewise in their interrogatory answers assert that BeneFirst's conduct caused them to suffer losses under their stop loss policies.

BeneFirst in conducting discovery, and that actually defining the term in any manner more narrow than the understanding and use of that term by the Plaintiffs, their counsel, their experts, their insurance brokers and advisors on the employee benefit plans at issue, and their employees in making claims for damages in this case will accomplish nothing more than encouraging Plaintiffs to try to parse the definition for the express purpose of avoiding discovery.  For the purposes of educating this Court only, BeneFirst points out that it is generally understood in the industry as referencing various types of insurance or reinsurance policies, and similar agreements, covering certain losses incurred under and claims submitted under employee benefit plans.

Because Plaintiffs' claims are based upon the impact to their stop loss policies, the documents requested are needed by BeneFirst in order to investigate the history of Plaintiffs' stop loss premiums, recoveries, reimbursements and exposures and to determine to what extent, if any, such premiums, recoveries, reimbursements and exposures were altered by BeneFirst's alleged conduct.  In order to determine what impact BeneFirst's conduct had on the Plaintiffs' stop loss policies, it is essential that BeneFirst obtain copies of the policies and associated documents for a significant time prior to and after the time BeneFirst served as Third Party Administrator, as well as for the time during which BeneFirst served as Third Party Administrator.  Indeed, it is impossible to determine whether BeneFirst's conduct actually affected the Plaintiffs in this regard without comparing stop loss premiums, recoveries, reimbursements, exposures and the like during the time that BeneFirst was the administrator with stop loss premiums, recoveries, reimbursements, exposures and the like during a control period during which BeneFirst was **not** the administrator.

These documents are thus clearly relevant to the Plaintiffs' liability theories and must be produced.  They will also detail the extent to which, if any, the Plaintiffs' stop loss premiums, recoveries, reimbursements, exposures and the like were harmed by BeneFirst in comparison to other time periods in the history of the employee benefit plans at issue, and are thus relevant to any damages claimed by the Plaintiffs.

These materials are clearly directly relevant in and of themselves, and thus must be produced. At a minimum, they are certainly likely to lead to the discovery of admissible evidence on the Plaintiffs' claims for losses related to their stop loss insurance and the employee benefit plans at issue in this lawsuit. The Court should therefore compel the production of all of the documents requested in this three requests.[4]

### C.    Loss History

**Request No. 23**

All documents discussing, concerning or relating to the Plan's loss history from 1990 to the present.

**Response**

Plaintiffs object to this Request to the extent that it is overbroad, unduly burdensome, and seeks information which is irrelevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they will produce responsive documents, if any exist, for the time in which BeneFirst was Third Party Administrator.

In Request No. 23, BeneFirst is seeking all documents relating "to the Plan's loss history from 1990 to the present." Plaintiffs responded that "they will produce responsive documents, if any exist, for the time in which BeneFirst was Third Party Administrator." This unilateral narrowing by the Plaintiffs of the request to only a couple of particular years is not acceptable for the same reasons, discussed above, that this type of narrowing in Plaintiffs' response to Requests No. 20, 21 and 22 was insufficient. In order to determine what impact, if any, BeneFirst had on Plaintiffs' losses under their plans, and to determine the extent of that impact, BeneFirst must investigate the plans' historical loss exposure. The Court, therefore, should compel Plaintiffs to produce all responsive documents.

---

[4]Incidentally, to the extent that the Plaintiffs may complain as to the starting point for the requested production in these three requests - 1990 - the Court should note that the Plaintiffs make no showing of any particular burden in light of their document retention policies or filing that producing documents on these narrowly identified topics since 1990 will impose on them. Should there actually be such a burden on them, and Plaintiffs actually submit evidence of such a burden, BeneFirst would suggest to the Court that 1995 be used as the start date for the "control period" against which BeneFirst's conduct can be compared, and that the Plaintiffs be required to produce the documents from that date going forward.

**D.    Expert Requests**

**Request No. 31**

All reports and opinions of any expert witness that you intend to call with respect to this matter.

**Response**

Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26.  Plaintiffs further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine.  Plaintiffs further object to this Request to the extent that it is premature.  Notwithstanding and without waiving the foregoing objections, Plaintiffs reserve the right to seasonably supplement this response in accordance with the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

**Request No. 32**

All documents exchanged by you and any of your representatives or attorneys and any expert witness that you intend to call with respect to that matter.

**Response**

Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26.  Plaintiffs further object to this Request to the extent that it is vague, confusing and seeks information protected by the attorney-client privilege and/or work product doctrine.

**Request No. 33**

All documents relied upon by any  expert witness you intend to call with respect to this matter in rendering such expert's opinion.

**Response**

Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26.  Plaintiffs further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine.  Plaintiffs further object to this Request to the extent that it is premature.  Notwithstanding and without waiving the foregoing objections, Plaintiffs reserve the right to seasonably supplement this response in accordance with the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

**Supplemental Response**

With respect to Request No. 33, Plaintiffs will supplement their Response by forwarding to Defendant's counsel the documents relied upon by our expert to date. Please be aware that these documents are voluminous and will be produced in electronic format for Defendant's review.  **[Exhibit D, Ciavarra Nov. 28, 2006 Letter, at page 3]**

**Request No. 34**

Copies of all testimony, at trial or in deposition, of any expert witness you intend to call with respect to this matter to the extent such testimony related to topics or matters similar to the topics or matters for which the expert will serve as a witness in this matter.

**Response**

Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26. Plaintiffs further object to this Request to the extent that it is premature. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they are not in possession, custody or control of any documents responsive to this Request. Plaintiffs reserve the right to seasonably supplement this response in accordance with the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

**Request No. 35**

Copies of all publications, authored, or co-authored, by any expert witness that you intend to call with respect to this matter.

**Response**

Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26. Plaintiffs further object to this Request to the extent that it is premature. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they are not in possession, custody or control of any documents responsive to this Request. Plaintiffs reserve the right to seasonably supplement this response in accordance with the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

**Request No. 36**

A copy of the resume and or curriculum vitae of any expert witness that you intend to call with respect to this matter..

**Response**

Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26. Plaintiffs further object to this Request to the extent that it is premature. Notwithstanding and without waiving the foregoing objections, Plaintiffs reserve the right to seasonably supplement this response in accordance with the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

BeneFirst's Requests No. 31, 32, 33, 34, 35 and 36 are related in that they all pertain to any expert witness that Plaintiffs intend to call with respect to this matter. In particular, they request documents relied upon and facts known by the expert concerning the employee benefit plans at issue, and that are not generally available from other sources. In considering these requests, it is important to place them in context. This is not a case in which an accident or other event has

occurred, and a plaintiff retains an expert to review testimony and the like and render an opinion for trial as to cause.  Instead, this is a case in which the Plaintiffs have retained an expert for the purpose of reviewing the processing of claims and payment history under the employee benefit plans during the time that BeneFirst administered them for the express purpose of identifying and listing the specific errors under the plans that allegedly occurred.  The Plaintiffs' expert is actually the creator of the evidence in this case for all intents and purposes, rather than simply an after the fact reviewer of the evidence.

The Plaintiffs' expert, by all accounts, is a stop loss auditor whose normal line of work is engaging in these types of reviews of benefit plans for stop loss companies and reporting to them on transactions incurred under such plans. In fact, by all accounts, the Plaintiffs' expert in this case is either an auditor who previously was used by a stop loss carrier to review the Plaintiffs' plans during the time that BeneFirst was actually administering those plans, or an auditor from the same company that was previously retained for that purpose.[5]  In the case at bar, there were apparently no reports of this type that were created by any stop loss auditor during the time that BeneFirst administered the plans in question (which was prior to the institution of this litigation) that are sufficient to support the Plaintiffs' claims in this case.  Plaintiffs have, as a result, hired an auditor - whom Plaintiffs declare to be their expert in this case in the hope of using that designation to prevent the discovery of facts known to the auditor - to create such a report after the fact.  Under normal circumstances, this report would have been created during the course of BeneFirst's administration of the Plaintiffs' plans and documents related to the audit would be freely discoverable.  Nothing is different now simply because the audit is conducted during the litigation at the request of the Plaintiffs, and documents relevant to that audit are thus discoverable.  The

---

[5]These circumstances, of course, further undercut the Plaintiffs' credibility when they claim that they cannot produce documents because they have trouble understanding the scope of the term "stop loss," as discussed *supra* at pages 5-6.

documents at issue relate to and concern the audit, and should be just as discoverable now as they would be if the audit had been performed prior to litigation.[6]

Plaintiffs do not pretend otherwise in their responses to these requests for production, but instead raise a series of unfounded objections to the requests, namely that the requests are premature, outside the scope of Federal Rule of Civil Procedure 26, and impinge on the attorney-client privilege and work-product doctrine.  Each of these objections has no basis in fact or law.

The Plaintiffs' objection that the requests are premature particularly illustrates the extent to which the Plaintiffs are simply acting to impede discovery.  In response to each of these requests, Plaintiffs objected that the requests are premature.  However, the simple fact of the matter is that if the documents currently exist, the Plaintiffs have an obligation to produce them, and if they do not exist, they have an obligation to say so in their responses and supplement their responses later.  Plaintiffs refuse to do either.

Moreover, there is no question that the Plaintiffs do in fact have such documents in their possession, custody and control.  Counsel for Plaintiffs has represented on numerous occasions that an expert is examining the issue of BeneFirst's performance and its impact on the employee benefit plans at issue in this case.  Indeed, on November 28, 2006, Plaintiffs' counsel specifically declared that Plaintiffs' expert has selected some 3,000 transactions that are at issue in this litigation.  **[Exhibit F, Killman Nov. 28, 2006 Letter]**  Under these circumstances, it is difficult to understand how the document requests can be premature.

Plaintiffs' objection that these Requests seek information outside the scope of Fed. R. Civ. P. 26 is equally unavailing.  That rule does not limit BeneFirst's discovery only to the mandatory disclosures provided for by Fed. Rule Civ. P. 26(a)(2)(B).  While Rule 26(a)(2)(B) provides for the

---

[6]In fact, the Plaintiffs essentially admit in their interrogatory answers that their so-called expert is simply a stop loss auditor engaged in exactly this type of standard review of the plans; the Plaintiffs declare in their interrogatory answers that they cannot identify BeneFirst's alleged errors unless and until the audit they retained their expert to conduct is completed.  **[Exhibit E, Plaintiff W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan's Answers to Interrogatories at answers no. 5 through 9]**.

mandatory disclosure of certain expert witness information, it does not provide or suggest that a party is prohibited from seeking additional information about an opposing party's expert witness or the facts known to them.. In fact, Fed. R. Civ. P. 26(b)(1) describes the scope of permissible expert discovery as follows: "Parties may obtain discovery regarding *any matter*, not privileged, that is relevant to the claim or defense of any party." (emphasis added). Courts recognize that expert testimony is often critical to the outcome of litigation, and effective cross examination may be impossible in the absence of expert discovery, including the use of requests for production of background documents. North Carolina Elec. Membership Corp. v. Carolina Power & Light Co., 108 F.R.D. 283 (M.D.N.C. 1985); see also Smith v. Ford Motor Co., 626 F.2d 784 (10th Cir. 1980); Musselman v. Phillips, 176 F.R.D. 194 (D. Md. 1997).

The Plaintiffs' assertions that the requested discovery is precluded by the attorney-client privilege and/or the work product doctrine are, if possible, even more specious than the objections as to the scope of Rule 26 and prematurity. The Plaintiffs have not submitted a privilege log or otherwise detailed facts showing the application of the privilege or the doctrine, or establishing that any particular documents actually fall within the province of the attorney-client privilege or the work product doctrine. Indeed, Plaintiffs' counsel represented as recently as November 28, 2006, four weeks after raising the attorney-client privilege and work product doctrine in response to these requests, that in truth no documents were withheld from production on the basis of the attorney-client privilege or the work product doctrine. **[Exhibit D, Ciavarra Nov. 28, 2006 Letter at page 2, declaring, in response to BeneFirst's request for a privilege log as required by the relevant Federal Rules, that a privilege log will be provided only "if and when we withhold documents based on the attorney - client privilege or work product doctrine")].** Clearly, then, there is no basis for withholding any of the requested documents on the ground of the attorney-client privilege or the work product doctrine, and Plaintiffs should not be allowed to withhold any of the requested documents on these grounds.

To the extent that the Plaintiffs intend to assert some sort of generalized complaint that the requested discovery infringes on the communications between their attorneys and their expert, which they deem somehow to be protected as part of the attorney-client privilege or the work product doctrine, there is simply no such privilege or bar to disclosure. Any information considered by a testifying expert in forming his opinion, even if the information contains documents supplied to an expert by his attorney, is discoverable. Suskind v. Home Depot Corp., 2001 U.S. Dist. LEXIS 1349 (D. Mass. January 2, 2001) (holding that attorney work product materials considered by an expert are discoverable).

Moving beyond the frivolous objections, there is no doubt that the documents sought by the requests are discoverable and are properly the subject of requests for production. Request No. 31 requested "All reports and opinions of any expert witness that [Plaintiffs] intend to call with respect to this matter." Rule 26(a)(2)(B) mandates the production of a written expert report. Several courts have also compelled the disclosure of notes and drafts of expert reports. Trigon Ins. Co. v. United States, 204 F.R.D. 277 (E.D. Va. 2001); Krisa v. Equitable Life Assurance Soc'y, 196 F.R.D. 254 (M.D. Pa. 2000).; Hewlett Packard Co. v. Bausch & Lomb., Inc., 116 F.R.D. 533 (N.D. Cal. 1987).

BeneFirst's Request No. 32 requested "All documents exchanged by [Plaintiffs] and any of [their] representatives or attorneys and any expert witness that [Plaintiffs] intend to call with respect to that matter," while Request No. 33 demanded "All documents relied upon by any expert witness [Plaintiffs] intend to call with respect to this matter in rendering such expert's opinion." Rule 26(a)(2)(B) requires disclosure of all data or other information considered by an expert witness in forming his opinion. Information supplied to or considered by an expert, in connection with his opinion, is discoverable regardless of whether the expert relies upon the information in preparing his expert report. In re Pioneer Hi-Bred Int'l, Inc., 238 F. 3d 1370 (Fed. Cir. 2001). In addition, as discussed *supra*, documents considered by a party's expert are discoverable even if they were

supplied to the expert by his attorney. <u>Suskind</u>, 2001 U.S. Dist. LEXIS 1349 (D. Mass. January 2, 2001) (holding that attorney work product materials considered by an expert are discoverable).

BeneFirst's Request No. 34 requested "Copies of all testimony, at trial or in deposition, of any expert witness [Plaintiffs] intend to call with respect to this matter to the extent such testimony related to topics or matters similar to the topics or matters for which the expert will serve as a witness in this matter." Copies of sworn testimony are discoverable under Rule 26 because they are fundamental in assisting in cross examination of Plaintiffs' experts.

BeneFirst's Request No. 35 requested "Copies of all publications, authored, or co-authored, by any expert witness that [Plaintiffs] intend to call with respect to this matter," and Request No. 36 sought "A copy of the resume and or curriculum vitae of any expert witness that [Plaintiffs] intend to call with respect to this matter." Certainly there can be no dispute at this late date in the development of the federal rules that an expert's qualifications and publications are discoverable. <u>See e.g.</u> Fed. R. Civ. P. 26(a)(2)(B)(providing that an expert report should include "the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years"). Indeed, the Plaintiffs' refusal to so much as produce their expert's resume - particularly when they admit to having retained the expert and admit that the expert has already engaged in extensive review of the documents in this case **[Exhibit F, Killman Nov. 28, 2006 Letter]**, is simply redolent of obstructionism and bad faith.

The Court, therefore, should compel Plaintiffs to produce all documents responsive to BeneFirst's expert requests.

### E.     Privilege Log

Plaintiffs objected to the production of various documents on the basis of the attorney-client privilege and the work-product doctrine. Plaintiffs, however, have thus far not produced a privilege log, despite BeneFirst's insistence. Plaintiffs now claim that they will produce a privilege log *if and when* they withhold documents based upon attorney-client privilege or work product doctrine.

16

Plaintiffs' response is clearly evasive.  Plaintiffs assert privilege as a justification for refusing to produce documents in response to BeneFirst's Request Nos.: 17,  24, 26, 27, 29, 30, 31, 32 and 33.  If Plaintiffs are not withholding documents on the basis of privilege, then their objection is inappropriate.  BeneFirst should not be expected to guess whether or not Plaintiffs have withheld documents responsive to these Requests on the basis of privilege.

BeneFirst is clearly entitled to obtain a privilege log where Plaintiffs withhold discoverable information based upon a claim of privilege.  Fed. R. Civ. P. 26 not only authorizes, but requires a party to provide a privilege log to the requesting party with enough detail to "enable other parties to assess the applicability of the privilege or protection."  BeneFirst has an absolute right under the Federal Rules to evaluate Plaintiffs' claims of privilege and challenge such claims if warranted. Plaintiffs should, therefore, be ordered to produce a privilege log (or to supplement their responses by withdrawing these objections).

## III.    CONCLUSION

For all of the foregoing reasons, BeneFirst respectfully requests that the Court grant its Motion to Compel Production of Documents and order Plaintiffs to produce the requested documents and privilege log.

Respectfully submitted,

**BeneFirst, LLC**
Defendant

By its attorneys,


/s/ Stephen D. Rosenberg
**Date:**   December 7, 2006

Stephen D. Rosenberg      BBO #558415
Eric L. Brodie          BBO #639833
THE McCORMACK FIRM, LLC
One International Place - 7th Floor
Boston, MA      02110
617.951.2929
617.951.2672 fax

17

## LOCAL RULE 7.1/37.1 CERTIFICATION

Defendant, BeneFirst, by and through its undersigned attorneys, hereby certifies to the Court that Defendant has in good faith attempted to resolve this discovery dispute with Plaintiffs. Defendant's counsel and Plaintiffs' counsel discussed various issues regarding Plaintiffs' deficient discovery responses via written communication as evidenced by, and herein incorporated by reference, the exhibits to this motion.

/s/ Stephen D. Rosenberg
Stephen D. Rosenberg

## CERTIFICATE OF SERVICE

I hereby certify that today, December 7, 2006, a copy of *BeneFirst's Motion to Compel Production of Documents* along with the referenced supporting exhibits were served via the ECF system upon the following attorneys of record, each of whom has been identified as a registered participant on the Notice of Electronic Filing (NEF):

Louis M. Ciavarra      *lciavarra@bowditch.com*
Ryan T. Killman       *rkillman@bowditch.com*
Colleen E. Cushing    *ccushing@bowditch.com*
**Bowditch & Dewey, LLP**
311 Main Street
P.O. Box 15156
Worcester, MA    01615-0156

/s/ Stephen D. Rosenberg
Stephen D. Rosenberg

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| W.E. AUBUCHON CO., INC., AUBUCHON DISTRIBUTION, INC., W.E. AUBUCHON CO. INC. EMPLOYEE MEDICAL BENEFIT PLAN, and AUBUCHON DISTRIBUTION, INC. EMPLOYEE MEDICAL BENEFIT PLAN<br>        Plaintiffs,<br><br>v.<br><br>BENEFIRST, LLC,<br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 05-40159FDS
(Louis M. Ciavarra. BBO# 546481)
(Ryan T. Killman BBO# 654562)
(Colleen E. Cushing BBO# 663498)

## PLAINTIFFS' RESPONSE TO DEFENDANT BENEFIRST, LLC'S REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure Rule 34, Plaintiffs, W.E. Aubuchon Co., Inc., ("W.E. Aubuchon") Aubuchon Distribution, Inc., ("Aubuchon Distribution") W.E. Aubuchon Co. Inc., Employee Medical Benefit Plan ("W.E. Aubuchon Plan"), and Aubuchon Distribution, Inc. Employee Medical Benefit Plan ("Aubuchon Distribution Plan") (hereinafter referred to collectively as "Plaintiffs") hereby respond to Defendant, Benefirst, LLC's ("Benefirst") Requests for Production of Documents (the "First Request") served on each of the Plaintiffs as follows.

### GENERAL OBJECTIONS AND RESPONSES

The following General Objections and Responses apply to, and are incorporated by reference into, each of Plaintiffs' specific responses to the First Request contained herein.

1.    Plaintiffs respond to this First Request, and produce documents pursuant thereto, without waiver of or prejudice to their rights, at any later time, to raise objections to:

    (a)    the relevance, materiality or admissibility of:

        (i)    the First Request or any part thereof;
        (ii)    statements made in this response to the First Request or any part

thereof; or

(iii)    any document produced pursuant to this response; or

(b)    any further demand for discovery involving or relating to the matters raised in the First Request.

2.    The Specific Responses set forth below and the production that Plaintiffs undertake to make pursuant thereto are based upon information now available to it after having made a diligent search within the limited time available of the files in Plaintiffs' possession. Plaintiffs may, in the future, obtain or locate additional documents responsive to the First Request and may identify or determine additional information relevant to its Specific Responses to the First Request. Plaintiffs object to the First Request to the extent that it purports to demand production of documents not in Plaintiffs' possession or to require a search of files that do not reasonably relate to one or more of the specific document production Requests contained in the First Request. Plaintiffs reserve the right to revise, correct, add to, supplement, modify or clarify the Specific Responses set forth below or the production made pursuant thereto.

3.    Plaintiffs object to the First Request to the extent that it demands production of any document covered by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege or doctrine, including those recognized by Rule 26 of the Federal Rules of Civil Procedure and including the doctrine relating to documents prepared in anticipation of litigation. In the event that Plaintiffs produce privileged documents, such production is inadvertent and does not constitute a waiver of any privilege.

4.    Plaintiffs object to the First Request to the extent that it demands production of any documents containing confidential, proprietary and/or trade secret information.

5.    Plaintiffs object to the First Request to the extent that it purports to seek documents evidencing, referring, relating, pertaining to or created by any expert as that term is used in Rule 26(b)(4) of the Federal Rules of Civil Procedure, or his/her representative or that describes, summarizes, evidences or sets forth any communications by and between Plaintiffs and any such

expert or his/her representative, beyond those Plaintiffs' are entitled to receive pursuant to Rule 26(b)(4) of the Federal Rules of Civil Procedure.

6.      Plaintiffs object to the production of any document falling within one of the General Objections set forth above or one of the Specific Objections set forth below.  In the event that any document falling within such an objection is or may be produced by Plaintiffs, its production is inadvertent and does not constitute a waiver of the objection with respect to the produced document or any other document.  Moreover, statements by Plaintiffs that they will produce documents responsive to a particular Request or falling within a particular description means that Plaintiffs will produce documents within their possession, custody or control that: (a) are responsive to the particular Request or fall within the particular description in question; (b) have been located by Plaintiffs after diligent search; and (c) do not fall within one of the General Objections set forth above or within any of the objections contained in the Specific Responses set forth below.  Further, such a statement is not an acknowledgment or an admission that any document responsive to the particular Request or falling within the particular description in question currently exists or has ever existed.

SPECIFIC OBJECTIONS AND RESPONSES

Request No. 1:

   The Plan documents for each Plan year at issue in your Complaint.

Response No. 1:

   Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 2:

   All Plan summaries or other documents concerning the Plan provided to employees, participants or beneficiaries for any Plan year at issue in your complaint.

Response No. 2:

   Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 3:

All documents related to the design, drafting or other establishment and creation of the Plan.

Response No. 3:

OBJECTION: Plaintiffs object to this Request to the extent that it is overbroad, unduly burdensome and vague. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 4:

All documents provided to BeneFirst concerning the Plan, the Plan's terms, the Plan's operation, the Plan's management, the Plan's administration, claims submitted under the Plan, or BeneFirst's duties, authority, obligations or responsibilities under the Plan.

Response No. 4:

OBJECTION: Plaintiffs object to this Request to the extent that it seeks information and/or materials in the custody and control of Defendant. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 5:

All documents describing, establishing or otherwise relating to BeneFirst's duties, activities and responsibilities with regard to the Plan for any Plan year.

Response No. 5:

OBJECTION: Plaintiffs object to this Request to the extent that it seeks information and/or materials in the custody and control of Defendant. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 6:

All protocols, guidelines or other documents stating, describing, governing or otherwise

addressing what claims, persons, procedures or treatments should be covered or are eligible for coverage under the Plan for any Plan year at issue in your complaint.

Response No. 6:

OBJECTION: Plaintiffs object to this Request to the extent that it seeks information and/or materials in the custody and control of Defendant. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 7:

All plan documents, protocols, guidelines or other documents stating, describing, governing or otherwise addressing the amount and application of deductibles for the Plan for any Plan year at issue in your complaint.

Response No. 7:

OBJECTION: Plaintiffs object to this Request to the extent that it seeks information and/or materials in the custody and control of Defendant. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 8:

All documents describing or showing errors by BeneFirst in the payment, processing, denial, or allowance of any claims submitted under the Plan or in the application to any claims of deductibles under the Plan.

Response No. 8:

Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 9:

All documents describing, concerning, demonstrating or showing any damages suffered by you as a result of BeneFirst's acts, errors or omissions at issue in your complaint, including but not

limited to any documents showing amounts paid by the Plan as a result of BeneFirst's acts, errors or omissions that you contend should not have been paid.

Response No. 9:

    Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 10:

    All explanation of benefits forms generated by BeneFirst.

Response No. 10:

    OBJECTION: Plaintiffs object to this Request to the extent that it is vague and confusing. Plaintiffs further object to this Request to the extent that it seeks information and/or materials in the custody and control of Defendant.  Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 11:

    All reports provided by BeneFirst to you regarding any services rendered by BeneFirst.

Response No. 11:

    OBJECTION:  Plaintiffs object to this Request to the extent that it seeks information and/or materials in the custody and control of Defendant.  Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 12:

    All administrative service agreements between BeneFirst and any Plaintiffs in this lawsuit.

Response No. 12:

    OBJECTION:  Plaintiffs object to this Request to the extent that it seeks information and/or materials in the custody and control of Defendant.  Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 13:

All documents discussing, concerning, or relating to the negotiation, drafting or execution of any administrative service agreements between BeneFirst and any Plaintiffs in this lawsuit.

Response No. 13:

Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 14:

All documents discussing, concerning, or relating to the performance by BeneFirst of any administrative service agreements between BeneFirst and any Plaintiffs in this lawsuit.

Response No. 14:

Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 15:

All contracts entered into between BeneFirst and any Plaintiffs in this lawsuit.

Response No. 15:

OBJECTION: Plaintiffs object to this Request to the extent that it seeks information and/or materials in the custody and control of Defendant. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they will produce documents responsive to this Request only to the extent that they relate to the contracts at issue in this action.

Request No. 16:

All documents discussing, concerning, or relating to the negotiation, drafting or execution of any contracts between BeneFirst and any Plaintiffs in this lawsuit.

Response No. 16:

Plaintiffs state that they will produce documents responsive to this Request only to the extent that they relate to contracts at issue in this action.

Request No. 17:

All documents discussing, concerning, or relating to the performance by BeneFirst of any

contracts between BeneFirst and any Plaintiffs in this lawsuit.

Response No. 17:

OBJECTION:  Plaintiffs object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine.  Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they will produce documents responsive to this Request only to the extent that they relate to the contracts at issue in this action.

Request No. 18:

All documents evidencing repricing of claims for services, procedures, equipment, or other benefits submitted by persons under the Plan.

Response No. 18:

OBJECTION:  Plaintiffs object to this Request to the extent that it seeks information and/or materials in the custody and control of Defendant.  Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive in this Request, if any, will be produced.

Request No. 19:

All documents that define the applicable deductibles under the Plan.

Response No. 19:

The Plaintiff state that documents responsive to this Request, if any, will be produced.

Request No. 20:

All stop loss policy applications filed, filled out, or submitted by you or any Plaintiffs since 1990.

Response No. 20:

OBJECTION:  Plaintiffs object to this Request to the extent that it is overbroad, unduly burdensome, vague and seeks information which is irrelevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs further

object to this Request as the term "Stop Loss" is not defined. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they will produce responsive documents, if any exist, for the time in which Benefirst was Third Party Administrator and only to the extent that such documents relate to medical insurance.

Request No. 21:

All stop loss policies issued to you or any Plaintiffs since 1990.

Response No. 21:

OBJECTION: Plaintiffs object to this Request to the extent that it is overbroad, unduly burdensome, vague and seeks information which is irrelevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this Request as the term "Stop Loss" is not defined. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they will produce responsive documents, if any exist, for the time in which Benefirst was Third Party Administrator and only to the extent that such documents relate to medical insurance.

Request No. 22:

All documents discussing, concerning, or relating to the negotiation, selection, issuance, cancellation or non-renewal of any stop loss policies issued to you or any Plaintiffs since 1990.

Response No. 22:

OBJECTION: Plaintiffs object to this Request to the extent that it is overbroad, unduly burdensome, vague and seeks information which is irrelevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this Request as the term "Stop Loss" is not defined. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they will produce responsive documents, if any exist, for the time in which Benefirst was Third Party Administrator and only to the extent that such documents relate to medical insurance.

{J:\CLIENTS\lit\302508\0002\PLD\00750787.DOC;1}

Request No. 23:

All documents discussing, concerning or relating to the Plan's loss history from 1990 to the present.

Response No. 23:

OBJECTION: Plaintiffs object to this Request to the extent that it is overbroad, unduly burdensome, and seeks information which is irrelevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they will produce responsive documents, if any exist, for the time in which Benefirst was Third Party Administrator.

Request No. 24:

All documents discussing, concerning or relating to the amount of premium charged to or paid by you or any Plaintiffs for stop loss insurance from 1990 to the present, including but not limited to any and all documents involving negotiation or other discussions with any party concerning the amount of the premiums.

Response No. 24:

OBJECTION: Plaintiffs object to this Request to the extent that it is overbroad, unduly burdensome, and seeks information which is irrelevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 25:

All documents that define BeneFirst's authority under the Plan.

Response No. 25:

OBJECTION: Plaintiffs object to this Request to the extent that it seeks information and/or

materials which are in the custody, control, and/or possession of Defendant. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 26:

All reports discussing or identifying mistakes in claims processing by BeneFirst.

Response No. 26:

OBJECTION: Plaintiffs object to this Request to the extent that it seeks information and/or materials which are in the custody, control, and/or possession of Defendant. Plaintiffs further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that documents responsive to this Request, if any, will be produced.

Request No. 27:

All audits performed by you or on your behalf of BeneFirst's administrative services.

Response No. 27:

OBJECTION: Plaintiffs object to this Request where it is premature and seeks information protected by the attorney-client privilege and/or work product doctrine. Notwithstanding and without waiving the foregoing objections, Plaintiffs have no documents in their possession, custody or control responsive to this Request.

Request No. 28:

All correspondence between you and BeneFirst.

Response No. 28:

Plaintiffs state documents responsive to this Request, if any, will be produced.

Request No. 29:

All correspondence between you and any employee or beneficiary of the Plan regarding any alleged misconduct by BeneFirst.

Response No. 29:

OBJECTION:   Plaintiffs object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that document responsive to this Request, if any, will be produced.

Request No. 30:

All documents you intend to introduce in evidence at trial.

Response No. 30:

OBJECTION:   Plaintiffs object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine.  Plaintiffs further object to this Request to the extent that it is premature.  Notwithstanding and without waiving the foregoing objections, Plaintiffs reserve the right to seasonably supplement this response in accordance with the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

Request No. 31:

All reports and opinions of any expert witness that you intend to call with respect to this matter.

Response No. 31:

OBJECTION:  Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26.  Plaintiffs further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine.  Plaintiffs further object to this Request to the extent that it is premature.  Notwithstanding and without waiving the foregoing objections, Plaintiffs reserve the right to seasonably supplement this response in accordance with the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

Request No. 32:

All documents exchanged between you or any of your representatives or attorneys and any

expert witness that you intend to call with respect to this matter.

Response No. 32:

OBJECTION: Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26. Plaintiffs further object to this Request to the extent that it is vague, confusing and seeks information protected by the attorney-client privilege and/or work product doctrine.

Request No. 33:

All documents relied upon by any expert witness you intend to call with respect to this matter in rendering such expert's opinion.

Response No. 33:

OBJECTION: Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26. Plaintiffs further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work product doctrine. Plaintiffs further object to this Request to the extent that it is premature. Notwithstanding and without waiving the foregoing objections, Plaintiffs reserve the right to seasonably supplement this response in accordance with the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

Request No. 34:

Copies of all testimony, at trial or in deposition, of any expert witness you intend to call with respect to this matter to the extent such testimony related to topics or matters similar to the topics or matters for which the expert will serve as a witness in this matter.

Response No. 34:

OBJECTION: Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26. Plaintiffs further object to this Request to the extent that it is premature. Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they are not in possession, custody or control of any documents responsive to this Request. Plaintiffs

reserve the right to seasonably supplement this response pursuant to the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

Request No. 35:

Copies of all publications, authored, or co-authored, by any expert witness that you intend to call with respect to this matter.

Response No. 35:

OBJECTION:  Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26.  Plaintiffs further object to this Request to the extent that it is premature.  Notwithstanding and without waiving the foregoing objections, Plaintiffs state that they are not in possession, custody or control of any documents responsive to this Request.  Plaintiffs reserve the right to seasonably supplement this response pursuant to the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

Request No. 36:

A copy of the resume and or curriculum vitae of any expert witness that you intend to call with respect to this matter.

Response No. 36:

OBJECTION:  Plaintiffs object to this Request to the extent that it seeks information outside the scope of Fed.R.Civ.P. 26.  Plaintiffs further object to this Request to the extent that it is premature.  Notwithstanding and without waiving the foregoing objections, Plaintiffs reserve the right to seasonably supplement this response pursuant to the applicable Scheduling Order and in compliance with Fed.R.Civ.P. 26.

Request No. 37:

Copies of all documents referenced or described in your answers to BeneFirst's interrogatories to you that were not otherwise previously requested.

<u>Response No. 37:</u>

Plaintiffs state that documents responsive to this Request, if any, will be produced.

W.E. AUBUCHON CO., INC.,
AUBUCHON DISTRIBUTION, INC.,
W.E. AUBUCHON CO., INC.
EMPLOYEE MEDICAL BENEFIT PLAN, and
AUBUCHON DISTRIBUTION, INC. EMPLOYEE
MEDICAL BENEFIT PLAN,

By Their Attorneys,

Louis M. Ciavarra  (BBO#546481)
Ryan T. Killman (BBO#654562)
Colleen E. Cushing (BBO# 663498)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156
Telephone:  (508) 926-3408
Facsimile:  (508) 929-3011

Dated:  October 30, 2006


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of October, 2006 I served the foregoing document by mailing a copy of same, first class, postage prepaid, to:

Stephen D. Rosenberg, Esq.
Eric L. Brodie, Esq.
The McCormack Firm, LLC
One International Place, 7th Floor
Boston, MA 021010

Ryan T. Killman

# THE McCORMACK FIRM, LLC

Attorneys at Law

ONE INTERNATIONAL PLACE - 7TH FLOOR
BOSTON, MASSACHUSETTS   02110

Phone   617•951•2929
Fax      617•951•2672

Michael J. McCormack
Mark E. Cohen
Joseph H. Aronson
Brian C. Duffey
Amy M. Soisson
Marc L. LaCasse
Stephen D. Rosenberg
David T. Mitrou
Robert J. Maselek, Jr.

Eric L. Brodie
Donna E. Hess
Sylvia Chu
Gerald S. Frim
Laura G. Ryan
Erica L. Silverman
Jon A. Halaby
Shayna W. Borakove

Caroline M. Fiore
Susan N. Granoff
Brooks von Biberstein Powers
Of Counsel

Sender's E-Mail:
srosenberg@mccormackfirm.com

November 15, 2006

***via Fax and U.S. Mail***
***Fax No.: 508/929-3011***

Louis M. Ciavarra, Esq.
**Bowditch & Dewey, LLP**
311 Main Street
P.O. Box 15156
Worcester, MA      01615-0156

RE:   <u>W.E. Aubuchon Co., Inc. et al. v. BeneFirst, LLC</u>
       **U.S.D.C. C.A. No.:**   05-40159FDS
       **Our File No.:**       8157 ~ 259.08157

Dear Mr. Ciavarra:

With regard to your letter of November 9, I am a bit surprised by the issues you note. Concerning the issue raised in the first paragraph of your letter, we requested some time ago that you provide us with authority based on the contract or the ERISA statute itself requiring us to engage in the requested production, and you never bothered to respond. Beyond that, as you well know, all possibly responsive documents have already been provided to you as part of this litigation, with the exception of the medical bills, which are currently the subject of a pending motion before the court and which, moreover, you most recently represented to the court were not needed in their entirety by your client. With regard to the previously produced materials, there is obviously no value in producing the same materials yet again. In any event, you still have not provided any support, whether in the contract, in ERISA or in the statute's applicable regulations, requiring the production you demand. As we previously advised you, we will evaluate your request if and when you provide legal support, in the terms of the contract or otherwise, for it. If you believe there is the obligation set forth in your letter, it is incumbent upon you to provide support for it. Absent such support, we see no reason to consider your demand further at this time. I would reiterate that, in any event, we are discussing only the medical bills, as all other materials have already been turned over.

Concerning the issue raised in the second paragraph of your letter, I find both this request and your prior email to this same effect somewhat odd. This issue was addressed in the conference with Judge Hillman conducted after your email, and you represented to the court at that time, as you did in your opposition to our motion for reconsideration that documented the burden imposed on us by your demand, that you had other means of narrowing your requests and thus you did not

THE MCCORMACK FIRM, LLC

Louis M. Ciavarra, Esq.
**Bowditch & Dewey, LLP**
November 15, 2006
Page 2

need to demand full production of all the medical bills. I was thus somewhat surprised to learn from your letter that you are presenting an entirely different position to me with regard to production of the medical bills than you were taking in front of the court, requesting that we turn over to you all medical bill files, and not just those you have actually identified as relevant. In any event, as you well know, we cannot simply produce the medical bills in their entirety, given HIPAA, and thus could not comply with your request in any event. This is of course one of the reasons that your request for the production of such documents is pending before the court, and cannot just be resolved by your demand to see all the medical bills for yourself.

Moving onto other issues, given the judge's comments and your representations to the court, the plaintiffs will be fully answering all outstanding interrogatories on or before November 30, except to the extent that any medical bills that the court may eventually order BeneFirst to produce may alter the answers. Other than any changes mandated solely by production at a later date of any medical bills ordered to be produced, all interrogatory answers are to be full and complete when made on November 30.

Finally, rather than forward a separate letter to your associate, Ryan Killman, I will address the plaintiffs' recently served responses to the defendants' requests for production of documents at this time as well. Initially, please have all responsive documents, without restriction, copied and forwarded to us immediately. With regard to the pages previously produced to prior counsel that were numbered AUB 001 through AUB 559, it appears that we have some, but may not have all, of these documents; in response to Ryan's inquiry, please instruct him to forward a complete set of those pages as well as part of the production.

In addition, there are a number of deficiencies in the plaintiffs' responses. First, you routinely claim attorney client privilege and interpose other bases for withholding documents, without providing a privilege log with sufficient detail to establish the validity of those objections, as required by Federal Rule of Civil Procedure 26(b)(5). We expect the plaintiffs to provide the necessary information to support its claim of privilege, or will move to compel the production of those materials. Please advise as to when we can expect the required information.

Second, in responses numbers 3, 4, 5, 6, 7, 10, 11, 12, 15, 18, 24, 25 and 26, the plaintiffs interpose generalized nonspecific objections - such as burden or vagueness - and then proceed to declare that subject to the objections, responsive documents will be produced. The plaintiffs are under an obligation in response to these requests to make a diligent and full search for the requested documents and then to produce those that are located. Your responses leave unclear as to whether this was done, or whether instead the defendants simply unilaterally restricted their search and production based on the objections. Please advise which is the case within seven days, or we will have no choice but to assume it is the latter and will move to compel a proper search and production by the plaintiffs.

Third, response number 16 is unacceptable under the rules and a violation of the plaintiffs' discovery obligations. Initially, the plaintiffs interpose no objections, but simply refuse to produce the requested materials. The documents are clearly relevant, as comparisons among the history of the various contracts are at a minimum likely to lead to the discovery of admissible evidence

THE MCCORMACK FIRM, LLC

Louis M. Ciavarra, Esq.
**Bowditch & Dewey, LLP**
November 15, 2006
Page 3

relevant to the contract claims you have alleged in this case. The request is, moreover, clearly narrowly tailored, restricted only to documents concerning the contracts between the parties to this litigation. Thus, there is no basis for you to refuse to produce all documents involving any contracts between the plaintiffs and the defendant. We expect all such documents to be timely produced.

Fourth, the plaintiffs engage in the same inappropriate narrowing of the request in their response to request number 17. For similar reasons detailed above with regard to the plaintiffs' response to request number 16, this is not acceptable and a violation of the plaintiffs' obligations under the rules governing discovery.

Fifth, with regard to responses numbers 20, 21 and 22, it is obvious that the objections are interposed simply for the basis of withholding discoverable documents and not based on any actual burden, vagueness or other issues. It is my understanding that the plaintiffs allege claims based on the impact of the defendant's actions on their stop loss policies, and assuming I am correct about this - it is hard to be certain, after all, since the plaintiffs continue to refuse to provide interrogatory answers - then the defendants obviously understand what the term stop loss means and refers to in this context and the objection interposed as to the meaning of the term represents nothing more than willful obstructionism. Further, if I am correct that the plaintiffs are making such claims, then the materials going back for the entire time period identified in the requests are all obviously relevant, regardless of what party was the third party administrator at the time, for purposes of investigating the history of the plaintiffs' stop loss premiums, recoveries, reimbursements and exposures, and how they were, in comparison, altered by my client's alleged conduct. All of the requested documents for the entire time period identified in each of these requests are thus discoverable, and must be produced or we will move to compel their production, unless the plaintiffs are prepared to declare on the record that they make no claims of this nature. Please advise us in the next seven days whether the plaintiffs acknowledge that they make no such claims, or that the plaintiffs will instead produce all of the requested documents; otherwise, we will move to compel their production.[1]

Sixth, the same issues identified with regard to responses numbers 20 to 22 likewise render the plaintiffs' objections to request number 23 meritless. Once again, the plaintiffs allege that the defendant's actions affected their losses under the plans, and we are entitled to investigate the historical loss exposure to determine whether or not this is true and, if so, to what extent.

Seventh, with regard to the plaintiffs' responses to requests numbers 31, 32, 33, 34, 35 and 36, the plaintiffs' objections are again meritless and simply obstructionist. While the federal rules do impose certain disclosure obligations with regard to experts, they are the minimum, and not the outer limit, of the plaintiffs' discovery obligations. They do not preclude the discovery requests made in these requests for unprivileged documents and other material related to or that will reflect

---

[1]Likewise, to the extent that the plaintiffs intend to limit their responses to stop loss policies related to medical benefits, than the plaintiffs must acknowledge on the record that they make claims in this case related to these alone, which the plaintiffs so far have not done. This will, of course, not affect the time period or other scope of the discovery requests, other than to restrict the requests to stop loss related to medical benefits.

THE MCCORMACK FIRM, LLC

Louis M. Ciavarra, Esq.
**Bowditch & Dewey, LLP**
November 15, 2006
Page 4

upon the testimony of any such expert witness. Indeed, the law in this district is that all documents provided to an expert for that expert's consideration must be produced if so requested, even if those documents would reveal mental impressions, conclusions, or legal theories of an attorney. See Suskind v. Home Depot, Corp., 2001 U.S. Dist. LEXIS 1349 (D. Mass. Jan. 2, 2001)(compelling production of documents turned over by party to expert even though revealing materials otherwise qualifying as undiscoverable work product). Accordingly, any claims of work-product privilege are improper in response to these requests. Further, there is no such objection as a request being "premature," despite your constant inclusion of it in these responses. The plaintiffs either possess or have access to the requested materials and thus must produce them at this time, or do not, and must so state on the record and timely supplement the responses later if and when such documents come into existence. Since you have represented time and again that you have an expert examining the issues and that delays in the expert's work have prevented you to date from answering the outstanding interrogatories, it is impossible to understand how the document requests can be premature, since obviously under these circumstances the requested materials already exist.

Please consider this a request for a conference pursuant to the local rules. I expect to be advised that the responsive documents will be produced, or as to any other change in the plaintiffs' position or explanation as to why the requested materials are not discoverable, within one week. Otherwise, we will move to compel production of the documents in question. Please feel free to call me, or to have Ryan call me, to discuss these inadequacies in the plaintiffs' responses before that time.

Sincerely,

Stephen D. Rosenberg

SDR:tab

91291.1

# THE McCORMACK FIRM, LLC

Attorneys at Law

ONE INTERNATIONAL PLACE - 7TH FLOOR
BOSTON, MASSACHUSETTS   02110

Phone   617•951•2929
Fax      617•951•2672

Michael J. McCormack
Mark E. Cohen
Joseph H. Aronson
Brian C. Duffey
Amy M. Soisson
Marc L. LaCasse
Stephen D. Rosenberg
David T. Mitrou
Robert J. Maselek, Jr.

Eric L. Brodie
Donna E. Hess
Sylvia Chu
Gerald S. Frim
Laura G. Ryan
Erica L. Silverman
Jon A. Halaby
Shayna W. Borakove

_____

Caroline M. Fiore
Susan N. Granoff
Brooks von Biberstein Powers
Of Counsel

Sender's E-Mail:
srosenberg@mccormackfirm.com

November 27, 2006

**via Fax and U.S. Mail**
**Fax No.:  508/929-3011**

Louis M. Ciavarra, Esq.
**Bowditch & Dewey, LLP**
311 Main Street
P.O. Box 15156
Worcester, MA      01615-0156

RE:    <u>W.E. Aubuchon Co., Inc. et al. v. BeneFirst, LLC</u>
       **U.S.D.C. C.A. No.:   05-40159FDS**
       **Our File No.:        8157 ~ 259.08157**

Dear Mr. Ciavarra:

The plaintiffs' production of documents are now nearly a full month overdue, and the plaintiffs' continuing foot dragging with regard to their discovery obligations is unacceptable.  I expect the documents to be delivered here to my office no later than Thursday of this week, or I will move to compel and for other appropriate relief.

If you have any excuse for the tardiness, or - even better - intend to resolve the issue by prompt and immediate production of the documents, I will be happy to hear from you.  Otherwise, I will advise the court in my motion that I have contacted you to demand timely production, and have received no response.

In addition, I take from your silence that the plaintiffs have no intention of curing the deficiencies in their responses to the defendant's request for production of documents that I identified in my correspondence of November 15, and that the plaintiffs do not intend to address the issues raised in my letter or to otherwise resolve the issues raised in my earlier correspondence.  If I do not hear from you otherwise before we file our motion to compel over these issues, I will so advise the court with regard to our local rule obligations.

Sincerely,

Stephen D. Rosenberg

SDR:tab
91559.1



*Bowditch*
*&Dewey*
ATTORNEYS

Direct telephone: (508) 926-3408
Direct facsimile: (508) 929-3011
Email: lciavarra@bowditch.com

November 28, 2006

VIA FACSIMILE AND
FIRST CLASS MAIL

Stephen D. Rosenberg, Esquire
The McCormick Firm, LLC
One International Place - 7th Floor
Boston, MA 02110

> **Re:**   **W.E. Aubuchon Co., Inc., et al. v. Benefirst, LLC**
>             **Civil Action No.  05-05-40159-FDS**

Dear Mr. Rosenberg:

This will respond to your letters of November 15, 2006 and November 27, 2006.

In your letter of November 15, 2006, you insisted that I provide support, whether in contract or law, for the return of my clients' records, as requested in my letter to you of November 9, 2006.  Frankly, I find your request disingenuous.  Do you claim that the records belong to your client?  Of course you don't and basic common law requires you to return them. Further, Section I(B)(3) of the Administrative Services Agreement between the parties provides the following:

> The Plan Administrator, as agent of the Plan Sponsor shall: ...[m]aintain, for the duration of this Agreement and for two (2) years thereafter, adequate records of all transactions between Plan Sponsor, the Plan Administrator and plan participants.  The records are the property of the Plan Sponsor.  The Plan Sponsor has the right of continuing access to their records....

(Emphasis added.)  This contractual language clearly provides that any and all records of transactions between Plaintiffs, Defendant and any plan participants are Plaintiffs' property and Plaintiffs have the right to obtain their records.  Please provide us with the requested records immediately.

You also depict my position taken with the Court with respect to the outstanding medical records (i.e., that we did not need full production of all medical bills) and my November 9, 2006, letter to you, requesting copies of all medical records on disk as conflicting.  That is not the case. They are two separate issues.  First, with respect to discovery, my position, as presented to the

Court, remains the same. However, aside from discovery, the medical records in your client's possession are my clients' property. As such, my clients are entitled to their return.

With respect to your concerns regarding Plaintiffs' Responses to Defendant's Request for Production of Documents, we respond as follows:

If and when we withhold documents based on the attorney-client privilege or work product doctrine, we will provide a privilege log in compliance with Fed.R.Civ.P.26 (b)(5).

With respect to your concerns regarding Plaintiffs' Responses to Request Nos. 3, 4, 5, 6, 7, 10, 11, 12, 15, 18, 24, 25 and 26, Defendant's objections will stand. These objections relate to the non-specific or burdensome nature of the respective Requests and in no way indicate an unwillingness to make a diligent and full search for the requested documents. Notwithstanding the vague and/or burdensome nature of the Requests, Plaintiffs will make a diligent search for all categories of documents responsive to said Requests. If Defendant is concerned that Plaintiffs' search will not include all documents that it seeks, perhaps Defendant should revise the respective Requests or supplement them so that they are more specific and/or less burdensome.

Plaintiffs' response to Request No. 16 is entirely appropriate. Any contracts entered into between the parties, other than the contracts at issue in this action, are irrelevant and not likely to lead to the discovery of admissible evidence. I do not see how "comparisons among the history of the various contracts" other than the contracts at issue in this case would result in the discovery of any admissible evidence whatsoever. As such, Plaintiffs' Response to Request No. 16 stands.

With respect to Request No. 17, Defendant's Request as drafted covers information which is subject to the attorney-client privilege and/or work product doctrine. Furthermore, similar to Defendant's Request No. 16, Request No. 17 is overbroad in scope. As such, Plaintiffs have appropriately limited the scope of their Response to relate only to the contracts at issue in this action.

With respect to Request Nos. 20, 21 and 22, Plaintiffs' objections are not meant to withhold discoverable documents. Rather, Plaintiffs' responses are appropriate objections to overbroad requests which contain an undefined term of art. While Plaintiffs may have an understanding as to what the term "stop loss" means, without a definition provided in Defendant's Request for Production of Documents, Plaintiffs can not guaranty that its production in response to these Requests will be fully responsive. Rather than arguing this point, Defendant could simply provide a definition of the term in order to insure an accurate response. Furthermore, with respect to Defendant's Requests Nos. 20 through 23, Defendant's request for responsive documents ranging back sixteen years is unquestionably overbroad and not likely to lead to the discovery of admissible evidence. Plaintiffs' have appropriately limited their response to documents for the time in which Benefirst was Third-Party Administrator and only to the extent that such documents relate to medical insurance. Anything outside of this scope is irrelevant.

With respect to Request Nos. 30 and 31, as stated in their Response, Plaintiffs reserve the right to seasonably supplement its responses in accordance with the applicable scheduling order and in compliance with Fed.R.Civ.P.26.

With respect to Request No. 32, the Request is objectionable in that it is overbroad as drafted, and would include documents clearly protected by the attorney-client privilege and/or work product doctrine.  If Defendants wish to revise and/or supplement this Request in order to request the kinds of documents contemplated in Suskind v. Home Depot, Corp., 2001 U.S. Dist. LEXIS 1349 (D Mass. Jan. 2, 2001) Plaintiffs will respond accordingly.

With respect to Request No. 33, Plaintiffs will supplement their Response by forwarding to Defendant's counsel the documents relied upon by our expert to date.  Please be aware that these documents are voluminous and will be produced in electronic format for Defendant's review.

With respect to Request Nos. 34 and 35, as stated in their Responses, Plaintiffs are not in possession, custody or control of any documents responsive to these Requests.  Plaintiffs will supplement these Responses if and when such documents come into their possession, custody or control subject to the applicable Scheduling Order and in compliance with Fed.R.Civ.P.26.

Lastly, with respect to your letter of November 27, 2006, we are in the process of compiling documents responsive to Defendant's Request for Production of Documents.  I have asked you in the past and still have no answer as to whether you wish to have us provide you with copies of documents which were provided by Benefirst to Plaintiffs during the time period in which Benefirst was acting as Third Party Administrator.  I have not searched for those records as they are already in Benefirst's possession.  However, if you want them you need to let me know.  Further, as you have requested, we will reproduce documents AUB 001 through AUB 559, again, as part of our production.

Very truly yours,

Louis M. Ciavarra

LMC/cdh

cc:     Ryan T. Killman, Esq.

*Bowditch*
*&Dewey*
ATTORNEYS

Ryan T. Killman
Direct telephone: (508) 926-3497
Direct facsimile: (508) 929-3197
Email: rkillman@bowditch.com

November 28, 2006

VIA FIRST CLASS MAIL

Stephen D. Rosenberg, Esquire
The McCormick Firm, LLC
One International Place – 7th Floor
Boston, MA 02110

     Re:    **W.E. Aubuchon Co., Inc., et al. v. Benefirst, LLC**
           **Civil Action No. 05-05-40159-FDS**

Dear Attorney Rosenberg:

     Enclosed please find a CD-ROM containing two Excel spreadsheet files. The file named "Aubuchon Global Claim Selection" references 2,992 claim transactions in connection with the administration of the W.E. Aubuchon Co., Inc. Medical Benefit Plan. The file named "Distribution Ctr. Global Claim Selection" references 167 claim transactions in connection with the administration of the Aubuchon Distribution, Inc. Medical Benefit Plan. These claim transactions have been selected by our expert to be audited. In order to complete the audit, we require all medical bills corresponding to the transactions listed in the above-referenced files. By providing you with a list of designated transactions, we have significantly narrowed the scope of files that Benefirst will have to review in order to locate the corresponding medical bills. Please provide these medical bills to us as soon as possible so that the audit can begin. If you fail to do so, we will need to re-visit this matter with the Court in connection with your pending Motion for Reconsideration.

     In addition, I am enclosing herewith a CD-ROM containing all electronic files provided by the Trizetto Group. Also, as you requested, I have enclosed copies of documents bates numbered AUB 001 through AUB 575, which had previously been served on Defendant's counsel.

                    Very truly yours,

                    Ryan T. Killman

RTK/cdh
Enclosures
cc:    Louis M. Ciavarra, Esquire

## Stephen D. Rosenberg

| | |
|---|---|
| **From:** | Stephen D. Rosenberg |
| **Sent:** | Thursday, December 07, 2006 9:53 AM |
| **To:** | 'Ciavarra, Louis M.' |
| **Subject:** | Aubuchon |

Lou, I need you to clarify a point for me.  From the package from Ryan that was delivered last week and your correspondence, I was left with the impression that you have now produced all documents to us that are within the plaintiffs' possession, custody or control that are not being withheld on the basis of the objections raised in your responses, with the exception of documents sent to the plaintiffs by BeneFirst, which you were not sure we needed and which you are now compiling and will produce to us shortly.

However, in further reviewing what was contained in the package from Ryan, it appears that the materials are very sparse.  Was my impression from your letter and the production incorrect, and in fact you have not yet compiled and produced to us all non-objected to documents, with the exception noted above, that are being produced in response to the document requests?  And if so, when will we receive them, given that they were due to be produced almost 40 days ago?

**Stephen Rosenberg, Esq.**
**The McCormack Firm, LLC**
One International Place
Boston, MA 02110
phone:  617-951-2929
fax:      617-951-2672

mailto:srosenberg@mccormackfirm.com
www.mccormackfirm.com

--
**My Blog: Boston ERISA and Insurance Litigation Blog**
**http://www.bostonerisalaw.com/**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| W.E. AUBUCHON CO., INC., AUBUCHON DISTRIBUTION, INC., W.E. AUBUCHON CO. INC. EMPLOYEE MEDICAL BENEFIT PLAN, and AUBUCHON DISTRIBUTION, INC. EMPLOYEE MEDICAL BENEFIT PLAN     Plaintiffs,<br><br>v.<br><br>BENEFIRST, LLC,     Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-40159FDS<br>(Louis M. Ciavarra. BBO# 546481)<br>(Ryan T. Killman BBO# 654562)<br>(Colleen E. Cushing BBO# 663498) |

## PLAINTIFF W.E. AUBUCHON CO., INC. EMPLOYEE MEDICAL BENEFIT PLAN'S ANSWERS TO INTERROGATORIES

### GENERAL OBJECTIONS

1.    Plaintiff W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan ("Plaintiff"), objects to each and every Interrogatory to the extent that it seeks information and/or materials privileged from discovery by the attorney-client privilege and/or the attorney work-product doctrine.

2.    Plaintiff objects to each and every Interrogatory to the extent that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3.    Plaintiff objects to each and every Interrogatory to the extent that it is overly broad and/or unduly burdensome.

4.    Plaintiff objects to each and every Interrogatory to the extent that it is vague and ambiguous.

5.    Plaintiff objects to each and every interrogatory to the extent that it purports to establish a continuing duty to supplement, or seeks to impose a duty beyond those imposed by the

Federal Rules of Civil Procedure.

6.     Each of the General Objections shall be deemed to apply to each of Defendant's separate Interrogatories.

### ANSWERS

Interrogatory No. 1

Please identify the person answering and signing these interrogatories, including name, age, residence address, occupation, business address, job title, and the relationship and capacity of such person to the Plan.

Answer No. 1

Sarah Q. Arel, Benefits Manager, W.E. Aubuchon Co., Inc., 95 Aubuchon Drive, Westminster, Massachusetts 01473-0473.

Interrogatory No. 2

State the full name and current residence address for each person who has knowledge of any of the Plaintiffs' claims against Benefirst, and for each such person, describe your understanding of the subject of their knowledge and what they know.

Answer No. 2

**OBJECTION**: Plaintiff objects to this Interrogatory to the extent that it seeks information and/or materials which are privileged from discovery pursuant to the attorney-client privilege and/or the work product doctrine. Plaintiff further objects to this Interrogatory on the grounds that it is overly broad, vague and ambiguous. Notwithstanding and without waiving the foregoing objections, Plaintiff states as follows:

M. Marcus Moran, Jr., President and Treasurer of W.E. Aubuchon Co. Inc., 95 Aubuchon Street, Westminster, MA. 01473, has knowledge regarding the retention of Benefirst, LLC as Third Party Administrator and Benefirst, LLC's wrongful acts and omissions consisting of breach of the Administrative Services Agreement (the "Agreement") and the negligent delivery of

services under the W.E. Aubuchon Co. Inc. Employee Medical Benefit Plan and Aubuchon Distribution, Inc. Employee Medical Benefit Plan (the "Plans").

Sarah Q. Arel, Benefits Manager of W.E. Aubuchon Co. Inc., 95 Aubuchon Street, Westminster, MA 01473, has knowledge regarding the retention of Benefirst, LLC as Third Party Administrator and Benefirst, LLC's wrongful acts and omissions consisting of breach of the Agreement and the negligent delivery of services under the Plans.

Charles T. Dobens, 30 Parkers Grove Lane, Duxbury, MA, upon information and belief, has knowledge of the mishandling of plan participants' claims by Benefirst, LLC.

Carrie Reddie, formerly of Benefirst, LLC, upon information and belief, has knowledge of the mishandling of plan participants' claims by Benefirst, LLC.

Maureen Fitzgerald, formerly of Benefirst, LLC, upon information and belief, has knowledge of the mishandling of plan participants' claims by Benefirst, LLC.

Paul Sullivan, formerly of Benefirst, LLC, upon information and belief, has knowledge of the mishandling of plan participants' claims by Benefirst, LLC.

Sandra Schnabel of BP, Inc., 6160 Summit Drive, Brooklyn Center, MN, upon information and belief, has knowledge regarding excess insurance coverage issues relating to the payment of claims made by plan participants and the effect of Benefirst, LLC's mishandling of said claims on Plaintiff's excess insurance.

Adria L. Garneau, CEBS, of Northshore International Insurance Services, 199 Rosewood Drive, Danvers, MA 01923, has knowledge regarding the mishandling of plan participants' claims by Benefirst, LLC.

Paul Gatanti, formerly of Benefirst, LLC, upon information and belief, has knowledge of the mishandling of plan participants' claims by Benefirst, LLC.

Charles S. Lord, of the Chittenden Insurance Group, Burlington, Vermont, upon information and belief, has knowledge regarding the retention of Benefirst, LLC as Third Party

Administrator and Benefirst, LLC's wrongful acts and omissions consisting of breach of the Agreement and the negligent delivery of services under the Plans.

Interrogatory No. 3

      Identify and describe the role of:

    a.    all persons who participated or played any role in negotiating the Plan's retention of Benefirst as the plan's administrator;

    b.    all persons who participated or played any role in the administration or management of the Plan during any year Benefirst administered the Plan.

Answer No. 3

    a.    Sarah Q. Arel, M. Marcus Moran, Jr., and Charles S. Lord participated in negotiating the retention of Benefirst, LLC as Third Party Administrator.

    b.    Sarah Q. Arel participated in the administration and/or management of the W.E. Aubuchon Co. Inc. Employee Medical Benefit Plan and Aubuchon Distribution Inc. Employee Medical Benefit Plan while Benefirst, LLC served as Third Party Administrator of said Plans.

Interrogatory No. 4

      Please identify the plan years that are at issue in your complaint.

Answer No. 4

      Plaintiff states that its Complaint alleges damages relating to negligent acts and/or omissions by Benefirst, LLC, as Third Party Administrator, during each year in which Benefirst, LLC was Third Party Administrator, 2001-2004. However, whereas discovery is ongoing in this matter and Plaintiff has been delayed by Defendant's failure to provide it with data necessary to conduct a full audit of all claims administered by Benefirst, LLC, Plaintiff reserves the right to supplement this Answer if and when it discovers negligent acts and/or omissions by Benefirst, LLC relating to claims made in other years.

Interrogatory No. 5

Do you contend that the defendant improperly paid claims for **ineligible procedures, services, or benefits**? If so, for each such claim, identify each such claim by claimant, date of claim, claim number, amount paid, and description of procedure/service/benefit, and state why you contend the procedure/service/benefit was ineligible.

Answer No. 5

Yes. Plaintiff alleges that Benefirst, LLC, through its negligent acts and omissions failed to properly investigate and pay plan participants' claims in violation of the Agreement, the express provisions of the respective plans, industry-wide third party administrator processing guidelines, and Benefirst, LLC's own policies and procedures. Further answering, Plaintiff states that while discovery is ongoing and Plaintiff has been delayed in conducting a full audit of all claims under the Plans by Benefirst, LLC's failure to provide Plaintiff with all relevant data, Plaintiff reserves the right to supplement this Answer if and when it discovers other wrongful or negligent acts in the administration of the above-referenced Plans by Benefirst, LLC.

Further answering, Plaintiff refers to <u>Exhibit 1</u> attached hereto which provides a summary of claims mishandled by Benefirst, LLC based on an initial audit. <u>Exhibit 1</u> categorizes errors as "Potential Errors" and "Actual Errors." "Actual Errors" include claims which were improperly paid by Benefirst, LLC while "Potential Errors" include claims where it appears that Benefirst, LLC improperly paid claims due to Benefirst, LLC's failure to utilize the requisite due diligence in handling the claim and further investigation is necessary.

Interrogatory No. 6

Do you contend that the defendant improperly paid claims for **persons ineligible to receive benefits**? If so, for each such claim, identify each such claim by claimant, date of claim, claim number, amount paid, and description of procedure/service/benefit, and state why you contend the claimant was ineligible.

Answer No. 6

      Yes.  Please refer to Plaintiff's Answer to Interrogatory No. 5.

Interrogatory No. 7

      Do you contend that the defendant paid **duplicate** claims?  If so, identify each such claim by claimant, claim number, amount paid, and description of procedure/service/benefit, and the date(s) such payments were made, and state why you believe the payment(s) were duplicates.

Answer No. 7

      Yes.  Please refer to Plaintiff's Answer to Interrogatory No. 5.

Interrogatory No. 8

      Do you contend that the defendant paid **improper amounts** for claims?  If so, identify each such claim by claimant, date of claim, claim number, amount paid, and description of procedure/service/benefit, and state the amount you believe should have been paid and the basis for your contention.

Answer No. 8

      Yes.  Please refer to Plaintiff's Answer to Interrogatory No. 5.

Interrogatory No. 9

      Do you contend that the defendant improperly calculated applicable **deductibles**?  If so, identify relevant claims by claimant, date of claim, claim number, description of procedure/service/benefit, and the deductible that was applied, the deductible that you believe should have been applied and the basis for your contention.

Answer No. 9

      Yes.  Please refer to Plaintiff's Answer to Interrogatory No. 5.

Interrogatory No. 10

      Do you contend that your stop loss policy **premiums** were affected by anything done by the defendant?  If so, describe the basis for your contention that your premiums were so affected

and the amounts to which they were affected.

Answer No. 10

Yes.   Because premiums are impacted by loss history, the fact that Plaintiff's losses appeared greater than they actually were increased Plaintiff's premium.  Plaintiff does not know yet the extent of that loss.  Whereas discovery is ongoing in this matter, Plaintiff reserves the right to supplement this Answer in the future.

Interrogatory No. 11

Do you contend that you have been damaged by any other act, error, or omission on the part of Benefirst that has not been described in your response to a preceding interrogatory?  If so, describe the nature of said act, error, or omission.

Answer No. 11

Plaintiff is unaware of any damages by any other act, error, or omission on the part of Benefirst, LLC other than those referenced in Plaintiff's Answer to Interrogatory No. 5.  Further answering, Plaintiff states that since discovery is ongoing, Plaintiff reserves the right to supplement this Answer if and when it discovers any other act, error, or omission on the part of Benefirst that has not been described in Plaintiff's Answers to the preceding interrogatories.

Interrogatory No. 12

If you contend that any act, error or omission by Benefirst constituted a breach of contract, identify the contract at issue, the specific language of the contract you contend was breached, and how Benefirst breached that contractual language.

Answer No. 12

Plaintiff claims that Benefirst, LLC breached the Agreement.  Plaintiff states that Benefirst, LLC breached Section I(B)(1) which provides that "the Plan Administrator, as Agent of the Plan Sponsor, shall:... [p]ay plan benefits in its usual and customary manner subject to and in accordance with this Agreement to or on behalf of persons entitled to receive plan benefits..."

Further answering, Plaintiff states that since discovery is ongoing, Plaintiff reserves the right to supplement this Answer if and when it discovers other contract provisions which were breached as a result of the acts or omissions of Benefirst, LLC in connection with its administration of the above-referenced Plans. In further response to this Interrogatory, Plaintiff refers to its Answer to Interrogatory No. 5.

<u>Interrogatory No. 13</u>

Do you claim that Benefirst was a fiduciary for purposes of ERISA with respect to the Plan for any given year identified in your response to interrogatory number 4? If so, please state:

    a.    the year or years;

    b.    the aspects of the Plan's management, operation or administration for which Benefirst was a fiduciary;

    c.    the damages you allegedly suffered as a result; and

    d.    the factual basis for these assertions.

<u>Answer No. 13</u>

Yes.

    a.    2001 - 2004.

    b.    The aspects of the Plan's management, operation or administration for which Benefirst was a fiduciary are outlined in the parties' Agreement and the respective Summary Plan Descriptions.

    c.    Please refer to Plaintiff's Answer to Interrogatory No. 5.

    d.    Please refer to Plaintiff's Answer to Interrogatory No. 5.

<u>Interrogatory No. 14</u>

Do you claim that Benefirst had discretionary authority with respect to the Plan or any aspect of it for any given year identified in your response to interrogatory number 4? If so, please state:

a.      the year or years;

b.      the aspects of the Plan's management, operation or administration for which

        Benefirst exercised discretionary authority;

c.      the damages you allegedly suffered as a result; and

d.      the factual basis for these assertions.

Answer No. 14

        Yes.

a.      2001 - 2004.

b.      The aspects of the Plan's management, operation or administration for which

        Benefirst was a fiduciary are outlined in the parties' Agreement and the respective

        Summary Plan Descriptions.

c.      Please refer to Plaintiff's Answer to Interrogatory No. 5.

d.      Please refer to Plaintiff's Answer to Interrogatory No. 5.

Interrogatory No. 15

        Do you claim that Benefirst committed breaches of fiduciary duty with respect to the Plan

for the given year identified in your response to interrogatory number 4?  If so, please state:

a.      the year or years;

b.      the exact acts by Benefirst which constituted such breaches;

c.      the damages you allegedly suffered as a result; and

d.      the factual basis for these assertions.

Answer No. 15

        Yes.

a.      2001 - 2004.

b.      Benefirst breached its fiduciary duty to Plaintiff by improperly performing its

        responsibilities as Third Party Administrator and erroneously paying claims as more

specifically described in Plaintiff's Answer to Interrogatory No. 5.

c.    Please refer to Plaintiff's Answer to Interrogatory No. 5.

d.    Please refer to Plaintiff's Answer to Interrogatory No. 5.

Further answering, Plaintiff states that since discovery is ongoing, Plaintiff reserves the right to supplement this Answer if and when it discovers further breaches of fiduciary duty and/or other damages suffered as a result of Benefirst, LLC's breaches of fiduciary duty in connection with its administration of the above-referenced Plans.

Interrogatory No. 16

How and when did you first discover the acts, errors, or omissions previously discussed in your answers to the preceding interrogatories?

Answer No. 16

Plaintiff first discovered Benefirst, LLC's acts, errors, and/or omissions after receiving a report from Plaintiff's excess insurance carrier on or about April 22, 2005.

Interrogatory No. 17

For each category of acts, errors or omissions you have discussed in your response to any of the preceding interrogatories, state the damages you claim to have sustained, and describe the method or basis used to calculate your damages.

Answer No. 17

Please refer to Plaintiff's Answer to Interrogatory No. 5. Further answering, Plaintiff states that since discovery is ongoing, Plaintiff reserves the right to supplement this Answer if and when it discovers further damages suffered as a result of Benefirst, LLC's errors and omissions in connection with its administration of the above-referenced Plans.

Interrogatory No. 18

Identify your stop loss insurers for the Plan from 5 years before the first plan year that you identified as a response to Interrogatory #4 up to the present, and for each policy year, identify the

applicable premium rate, the number of employee and family units covered, and any applicable aggregate factors that applied on a per employee or per family basis.

Answer No. 18

**OBJECTION**: Plaintiff objects to this Interrogatory to the extent that it is overly broad, unduly burdensome and vague. Plaintiff further objects to the term "applicable aggregate factors," which is vague and undefined. Plaintiff will limit its Answer to plan years at issue in this action. Notwithstanding and without waiving the foregoing objections, Plaintiff states the following:

For the policy year 2001-2002 the stop loss insurer was BCS Underwriters. The annual premium for the Specific Excess Loss was $116,412.00. It covered 175 single and 324 family units. The aggregate factor was $381.88.

For the policy year 2002-2003 the stop loss insurer was Combined Insurance Company of America. The aggregate premium rate payable per covered participant unit per month was $3.98 and the specific monthly premium rates payable per covered participant unit for the coverage period was $10.31 (single) and $24.07 (family). It covered 155 single and 320 family units.

For the policy year 2003-2004 the stop loss insurer was Combined Insurance Company of America. The aggregate premium rate payable per covered participant unit per month was $3.72 and the specific monthly premium rates payable per covered participant unit for the coverage period was $8.13 (single) and $19.88 (family). It covered 168 single and 311 family units.

For the policy year 2004-2005 the stop loss insurer was Starline USA, LLC the Issuing Carrier was Underwriters at Lloyd's of London. The annual premium was $181,217.00. Total aggregate factors were $495.00 (single) and $1,248.00 (family). It covered 159 single and 304 family units.

In further response to this Interrogatory, Plaintiff refers to insurance materials produced pursuant to Fed.R.Civ.P. 33(d).

Interrogatory No. 19

Have you ever had any communications with any representative of Benefirst regarding any of the acts, omissions, or errors identified in any of your answers to the foregoing interrogatories? If so, please identify when the conversation occurred, how it took place (i.e. telephone, e-mail, mail, face to face, etc.), who the parties to the conversation were, and the substance of the conversation.

Answer No. 19

No.

Interrogatory No. 20

Please state what actions have been taken by you to mitigate the damage sought by you in this lawsuit, the date any such actions were taken, and the results of said action.

Answer No. 20

Plaintiff changed its Third Party Administrator.

Interrogatory No. 21

Was there a broker for your account with Benefirst and if so, identify the broker(s).

Answer No. 21

Charles S. Lord of the Chittenden Insurance Group.

Interrogatory No. 22

Who was the broker for your account(s) with the stop loss insurers identified in your Answer to the preceding interrogatories.

Answer No. 22

Charles S. Lord of Chittenden Insurance Group.

Interrogatory No. 23

Do you claim to be entitled to payment of your attorney's fees in connection with this matter? If so, state the amount of attorney's fees you have incurred to date and state the basis for

your claim of attorney's fees.

Answer No. 23

Yes. Plaintiff is entitled to attorney's fees under ERISA, 29 U.S.C. § 1001 *et seq*. Plaintiff reserves the right to supplement this Answer in the future.

Interrogatory No. 24

Please identify what documents you received from Benefirst before, during and after Benefirst's tenure with the Plan, and who presently has custody of them.

Answer No. 24

**OBJECTION**: Plaintiff objects to this Interrogatory to the extent that it is overly broad, vague and unduly burdensome. Notwithstanding and without waiving the foregoing objections, Plaintiff states that all documents provided to Plaintiff by Benefirst, LLC, to the extent that they exist, are in Plaintiff's possession.

Interrogatory No. 25

Do you claim that you were a fiduciary for purposes of ERISA for any given year identified in your response to interrogatory number 4? If so, please state the year or years you were a fiduciary and the factual basis for your assertion.

Answer No. 25

No.

Signed under the pains and penalties of perjury this $\underline{29}$ day of November, 2006.

_Sarah Q. Arel_
Sarah Q. Arel, Benefits Manager,
W.E. Aubuchon Co., Inc.

AS TO OBJECTIONS:

Louis M. Ciavarra  (BBO#546481)
Ryan T. Killman (BBO#654562)
Colleen E. Cushing (BBO# 663498)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156
Telephone: (508) 926-3408
Facsimile:   (508) 929-3011

Dated: November  $\underline{30}$ , 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this  $\underline{30^{th}}$  day of November, 2006 I served the foregoing document by mailing a copy of same, first class, postage prepaid, to:

Stephen D. Rosenberg, Esq.
Eric L. Brodie, Esq.
The McCormack Firm, LLC
One International Place, 7th Floor
Boston, MA 021010

Ryan T. Killman

# EXHIBIT 1

# EXHIBIT I

Potential and Actual Claim Errors

W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Andre | Self | ▓▓▓14-00 | 20055753-01 | 4/5/2002 | $0.00 | | |
| | | | 20101591-01 | 4/5/2002 | $ 7,637.90 | | $ 7,637.90 |
| | | | 20057420-01 | 4/5/2002 | $ 300.00 | $ 300.00 | |
| | | | 20057424-01 | 4/5/2002 | $ 1,725.00 | $ 1,725.00 | |
| | | | 20083238-01 | 4/5/2002 | $ 1,650.00 | $ 975.00 | $ 675.00 |
| | | | 20057414-01 | 4/5/2002 | $ 3,250.00 | $ 3,250.00 | |

**Comments:** Notes indicate that the claimant was hit in the face by a baseball while coaching, and that claims should be pended for clarification of coverage from school insurance, but that Aubuchon instructed that the claims be paid with post-payment investigation of the potential of recovery from the school insurance. BeneFirst paid the claim, but never pursued the investigation. In our experience, schools typically carry accident coverage for coaches, so we believe recovery should have been pursued. Secondary to our questioning of the pursuit of recovery for these claims, we found a duplicate payment agreed by BeneFirst of $7,637.90 (claim 20101591-01 and 20083238-01), and a missed multiple surgery discount of $675.00 (claim 20057414-01), also agreed by BeneFirst. Therefore, regardless of the missed recovery, this claim is overpaid by $8,312.90.

# EXHIBIT I

## Potential and Actual Claim Errors
### W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Dennis | Andrea | ▇6732 | Various | 2002-2004 | $ 11,093.76 | $ 10,681.26 | $ 412.50 |

**Comments:** Andrea's address is different than the employee's address. The plan requires that an eligible dependent reside with the employee and be eligible to be claimed as a dependent on the employee's Federal Income Tax. We asked BeneFirst to confirm this claimant's eligibility, and BeneFirst responded that the claimant had requested that her mail be sent to her dorm address as she is a full-time college student. However, student status verification provided by BeneFirst is for Allison, not Andrea. When we questioned BeneFirst further, BeneFirst responded that they could not obtain anything from the employee. We believe that this claimant's claims should not be allowed until her eligibility status is clearly verified. We also identified **an** overpayment on claim number 30075901-02 of $412.50 for mis-application of multiple surgery rules.

| Dennis | Allison | ▇6732 | Various | 2002-2004 | $ 4,623.87 | $ 4,623.87 | |

**Comments:** In questioning the above claim, we were sent documentation regarding another dependent's student status, Allison, and noted that Allison's address is also is different than the employee's address. The plan requires that an eligible dependent reside with the employee and be eligible to be claimed as a dependent on the employee's Federal Income Tax. When we asked BeneFirst to confirm Andrea's eligibility, BeneFirst responded that the claimant had requested that her mail be sent to her dorm address as she is a full-time college student. We confirmed that the school she attends, ▇▇▇▇▇▇ College, does not have dorms. When we questioned BeneFirst further regarding Andrea's eligibility, BeneFirst responded that they could not obtain anything from the employee. We believe that this claimant's claims should not be allowed until her eligibility status is clearly verified.

# EXHIBIT I

## Potential and Actual Claim Errors

### W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Wayne | Self | 7299 | 40012934-01 | 1/12/2004 | $ 9,976.40 | | $ 2,542.86 |

**Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Patrick F. Sr. | Ryan | 9685-03 | 20074786-01 | 12/23/2001 | $ 4,248.85 | | |
| | | | 20074792-01 | 1/24/2002 | $ 990.38 | | |
| | | | 20074794-01 | 4/2/2002 | $ 990.38 | $ 4,260.86 | $ 1,968.75 |

**Comments:** This claim was the result of a motor vehicle accident. In correspondence provided to BeneFirst, the auto carrier indicated that it made two payments to the hospital, one for $1,839.75 and one for $1,968.25. Only the $1,839.75 was noted on the hospital bill sent to BeneFirst, so BeneFirst ignored the auto carrier's correspondence and only considered the $1,839.75 in its claim adjudication. In addition, BeneFirst indicated that it did not pursue identification of other auto insurance recovery, such as from Uninsured/Underinsured Motorist (UM) or Bodily Injury (BI) coverages. At the very least, this claim is overpaid by $1,968.75, and further recovery might have been possible had BeneFirst pursued the information.

## EXHIBIT I

### Potential and Actual Claim Errors
### W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| James E. | Kim | 3842 | Various | 2002-2004 | $ 11,828.37 | $ 11,828.37 | |
| Shannon | Jennifer | 5734-03 | Various | 07/01/04-12/31/04 | $ 6,400.04 | | $ 6,400.04 |
| Robert | Samuel | 1631-02 | 20074966-01 | 05/16-18/02 | $ 3,154.33 | | |
| | | | 20066684-01 | 05/16-18/02 | $ 48.86 | | |
| | | | 20118036-01 | 05/16-18/02 | $ 3,744.00 | $ 3,744.00 | $ 3,744.00 |
| Dennis R. | Maria | 8751 | 30132446-01 | 11/26/2003 | $ 5,260.00 | | $ 1,100.00 |

**Comments:** The child has a different last name than the employee, and we asked for verification that she resides with the employee and is eligible to be claimed as a dependent on the employee's Federal Income Tax, as required by the plan. BeneFirst provided a copy of the enrollment form, which shows that the child is enrolled as a step-daughter, but did not provide any further eligibility verification. We asked BeneFirst to obtain confirmation of the child's status for the claimant's Federal Income Tax, and BeneFirst responded they were unable to obtain written verification from the employee, and did not want to pursue it, as the child is deceased. We believe that this claim should not be allowed until eligibility status is verified.

**Comments:** The claimant was added to the plan on 03/01/03 when her father's insurance was terminated. She is the employee's stepdaughter. The patient has a different address than the employee, and the Aubuchon plan requires that a dependent reside with the employee to be eligible. Therefore, we believe that this is not an eligible dependent.

**Comments:** Claim 20118036-01 is a duplicate payment. BeneFirst agrees.

**Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees.

# EXHIBIT I

## Potential and Actual Claim Errors
### W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Dennis | Carrie | 5782 | 40004486-01 | 01/02-03/2004 | $ 3,163.00 | | $ 316.30 |
| **Comments:** 90% coinsurance was not applied to this out-of-network claim. BeneFirst agrees. | | | | | | | |
| Leo | Self | 7217-00 | 20031825-01 | 1/17/2005 | $70.00 | $70.00 | $70.00 |
| **Comments:** This claim is a follow-up to surgery on 01/16/02, CPT code 63030. Usual, customary and reasonable guidelines (UCR) published by MediCode indicate that any follow-up within 90-days of surgery is included in the surgical fee. Therefore, we believe that this visit should not have been allowed. BeneFirst responded that "Nothing in the CPT book says that 63030 can't have a follow-up visit." We agree. The CPT book does not include considerations of UCR. We asked BeneFirst to check our reference source, MediCode, a UCR reference guide, but they did not. | | | | | | | |
| Leo | Self | 7217-00 | 20031228-01 | 1/24/2002 | $22.00 | $22.00 | $22.00 |
| **Comments:** This claim is a follow-up to surgery on 01/16/02, CPT code 63030. Usual, customary and reasonable guidelines (UCR) published by MediCode indicate that any follow-up within 90 days of surgery is included in the surgical fee. Therefore, we believe that this visit should not have been allowed. BeneFirst responded that "Nothing in the CPT book says that 63030 can't have a follow-up visit." We agree. The CPT book does not include considerations of UCR. We asked BeneFirst to check our reference source, MediCode, a UCR reference guide, but they did not. | | | | | | | |

# EXHIBIT I

Potential and Actual Claim Errors

W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Richard ▓ | Mary | ▓9360-S | 20100318-01 | 07/22-23/02 | $5,829.91 | | |
| | | | 20105685-01 | 07/22-23/02 | $731.44 | | |
| | | | 20116339-01 | 07/22-23/02 | $6,361.35 | | $6,361.35 |
| | | | 20089785-01 | 7/22/2002 | $1,960.00 | | |
| | | | 20010326-01 | 7/22/2002 | $36.00 | | |
| | | | 20085198-01 | 7/11/2002 | $65.00 | $8,622.35 | |

**Comments:** The diagnosis of internal derangement of knee was never investigated by BeneFirst, causing a missed potential recovery opportunity. Regardless, Claim 20116339-01 appears to be a duplicate of 20100318-01 and 20105685-01, but BeneFirst cannot confirm this because it cannot find copies of the claims. The claim is at least overpaid by $6,361.35, even if there is no potential for other party liability/subrogation recovery.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Kevin ▓ | Self | ▓2499 | 40015714-01 | 12/20/2003 | $  2,349.00 | | $  500.00 |

**Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| William ▓ | Laura | ▓5854 | 30084301-01 | 7/3/2003 | $  3,808.00 | | $  952.00 |

**Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees.

# EXHIBIT I

## Potential and Actual Claim Errors

### W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Bernard █████ | Julia | ████2855 | 30092113-01 | 8/12/2003 | $ 3,036.00 | | $ 483.60 |
| **Comments:** $200 deductible and 90% coinsurance were not applied to this out-of-network claim. BeneFirst agrees. | | | | | | | |
| Aaron █████ | Delaney █████ | 00689109-03 | Various | 07/01/04-12/31/04 | $ 3,535.53 | | $ 3,535.53 |
| **Comments:** This claimant has a different last name than employee, and claims show she has a different address. We asked BeneFirst to provide details of the relationship of the claimant to the employee, and BeneFirst responded "enrollment states she is his daughter." BeneFirst did not explain why she has a different last name and different address. Because the Aubuchon plan requires that, to be eligible, dependents reside with the employee, we believe these claims are not eligible. | | | | | | | |
| Army █████ | Self | ████247 | 30059164-01 | 5/2/2003 | $ 3,975.00 | | $ 577.50 |
| **Comments:** $200 deductible and 90% coinsurance were not applied to this out-of-network claim. BeneFirst agrees. | | | | | | | |
| Chad █████ | Dekota █████ | ████8850 | 40054294-01 | 5/10/2004 | $ 4,152.26 | | $ 381.71 |
| **Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees. | | | | | | | |

# EXHIBIT I

Potential and Actual Claim Errors

W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Keven ▮ | Harley ▮ | 364 ▮ | Various | 2003 | $ 25,741.56 | | $ 25,741.56 |
| Keven ▮ | Harley ▮ | 364 ▮ | Various | 2004 | $ 7,436.13 | | $ 7,436.13 |

**Comments:** COB notes for this claimant indicate she is the great niece of the enrolled employee's wife. The Plan covers a dependent for whom the Covered Employee is legal guardian and who is eligible to be claimed as a dependent on the Covered Employee's Federal Income Tax return. We asked BeneFirst to confirm this claimant's enrolled status, and BeneFirst provided an enrollment form that showed that the claimant is enrolled as the Employee's step child, which is not true. BeneFirst further referenced an "attached adoption order." The legal document attached and referenced is not an adoption order, but an "Order Adopting Commissioner's Recommendations" that gives the Employee's wife, Debra ▮ legal custody of the claimant, Harley ▮ There is no reference to status granted to the Employee, Keven ▮ Because the claimant is not the child of the Employee's wife, but a great niece, step child status does not apply, and the child is in the legal custody of the wife, not the Employee. Therefore, we do not believe that, according to the Plan wording, this is an eligible dependent.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Keven ▮ | Self | 364 ▮ | 40045124-02 | 4/1/2004 | $ 8,700.00 | | |
| | | | 40045123-02 | 4/1/2004 | $ 9,150.00 | | $ 7,600.00 |

**Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Kevin ▮ | Self | 364-00 ▮ | 40105556-01 | 9/30/2004 | $2,570.40 | | $179.00 |

**Comments:** We asked BeneFirst to confirm that the claimant's out-of-network deductible was met. BeneFirst advised that only $21 of the $200 was met for 2004, producing an overpayment on this claim of $179.

# EXHIBIT I

Potential and Actual Claim Errors

W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| , Jamey | Indigo | ████54-01 | Various | 07/01/02–06/30/03 | $ 7,405.92 | $ 7,405.92 | |
| **Comments:** The claimant was effective 03/01/02, and had a tonsilectomy on 05/21/02. BeneFirst never confirmed prior creditable coverage or performed a preexisting condition investigation. Therefore, the claim could be overpaid. | | | | | | | |
| , Gary | April | ████347 | 30040897-02 | 3/10/2003 | $ 4,798.80 | | $ 531.90 |
| **Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees. | | | | | | | |
| Kenneth P. | Self | ████1866 | 40013331-01 | 12/17/2003 | $ 8,440.04 | | $ 19.16 |
| **Comments:** BeneFirst received a refund from the provider for $44.72, for a $63.88 recovery obtained by a company identified as "AIM," who kept a $19.16 commission. We asked BeneFirst who AIM was and why they sent a refund on this claim. BeneFirst replied that they had no idea. Since neither BeneFirst nor Aubuchon authorized this company to take a commission on this recovery, we do not believe that commission should not have been allowed. | | | | | | | |
| Troy | Shannon | ████0870 | 20107231-01 | 8/13/2002 | $4,336.57 | | $200.00 |
| **Comments:** BeneFirst confirmed that a precertification penalty was taken in error on this claim, producing an underpayment. | | | | | | | |
| , Howard | Marguerite | ████0934 | 40052345-01 | 5/3/2004 | $ 3,210.00 | | $ 321.00 |
| **Comments:** 90% coinsurance was not applied to this out-of-network claim. BeneFirst agrees. | | | | | | | |
| , Denise | Self | ████523-00 | 40094422-01 | 9/14/2004 | $ 3,205.00 | | $ 262.50 |
| **Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees. | | | | | | | |

# EXHIBIT I

## Potential and Actual Claim Errors
### W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Robert D. | Tanya | ▉2975 | 30094034-01 | 8/13/2003 | $ 2,050.00 | $ | $ 205.00 |

**Comments:** 90% coinsurance was not applied to this out-of-network claim. BeneFirst agrees.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Robert D. | Tanya | ▉2975 | 30094032-01 | 8/13/2003 | $ 6,060.82 | $ | $ 606.08 |

**Comments:** 90% coinsurance not applied to this out-of-network claim. BeneFirst agrees.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Wendell Jr. | Cameron | ▉2362-01 | 20125137-02 | 11/27/2002 | $ 330.00 | $ | $ 330.00 |

**Comments:** This claim is for an assistant surgeon. MediCode UCR indicates that a surgical assist is not warranted for procedure 67311 and 67314. Therefore, we believe that the claim should have been denied. BeneFirst responded that "Nothing in the CPT book says that an assistant is not warranted for this surgery." We agree. The CPT book does not include considerations of UCR. We asked BeneFirst to check MediCode, a UCR reference guide, as we did, but they did not.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Carol ● | John | ▉451-S | Multiple | 6/26/1905 | $ 51,164.97 | $ | $ 17,425.59 |

**Comments:** The plan allows 45 days for inpatient treatment of mental/nervous claims. The claimant was confined for 66 days, and BeneFirst did not cut the benefits at 45 days. BeneFirst agrees the claim was overpaid, but stated that it paid for 64 days not 66. However, BeneFirst did not explain its calculation of 64 versus 66 days, so our deduction is based upon 66 days, with 21 days in excess of the limit.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Bradford | Self | 7496-01 | 40106841-01 | 10/4/2004 | $ 8,325.00 | $ | $ 1,300.00 |

**Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees.

# EXHIBIT I

Potential and Actual Claim Errors

W. E. Auchuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Brian ▆ | Ashleigh | ▆788-01 | 40013896-01 | 10/29/2004 | $ 216.75 | $ 216.75 | $ - |
| | | | 50007042-01 | 10/29/2004 | $ - | $ - | |
| | | | 4009033-01 | 10/22/2004 | $ - | $ - | |
| | | | 40109033-02 | 10/22/2004 | $ 216.75 | $ 216.75 | |
| | | | 40114002-01 | 10/22/2004 | $ 36.00 | $ 36.00 | |
| | | | 40105619-01 | 10/8/2004 | $ - | $ - | |
| | | | 40105619-02 | 10/8/2004 | $ 216.75 | $ 216.75 | |
| | | | 40111831-01 | 10/8/2004 | $ 36.00 | $ 36.00 | |
| | | | 40102624-01 | 10/1/2004 | $ 216.75 | $ 216.75 | |
| | | | 40100171-01 | 9/24/2004 | $ 2,927.40 | $ 2,927.40 | |
| | | | 40101704-01 | 9/24/2004 | $ 825.00 | $ 825.00 | |
| | | | 40102623-01 | 9/24/2004 | $ 275.00 | $ 275.00 | |
| | | | 40100170-01 | 9/23/2004 | $ 621.95 | $ 621.95 | |
| | | | 40101689-01 | 9/23/2004 | $ 36.00 | $ 36.00 | |

**Comments:** The diagnosis for these claims is fracture metatarsal. We asked BeneFirst for details of how this injury occurred, to determine if other party liability or subrogation applied. BeneFirst responded that the former claims manager had instructed examiners that, for accidents for children under 15, the claims should be paid without investigation of accident details. We disagree, and believe these claims should not have been paid without investigation of accident details.

# EXHIBIT I

## Potential and Actual Claim Errors
## W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Kenneth | April | ████1662-S | 30037139-01 | 02/26-28/03 | $ 3,752.00 | | $ 3,752.00 |

**Comments:** BeneFirst's utilization review vendor, Med-Value, issued a determination that the proposed surgery as reflected in these claims was not medically necessary. BeneFirst's explanation as to why the claim was paid is that the "examiner was never given the denial from Med-Value and the notes were not put in the system to deny."

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| | | | 30035102-01 | 2/26/2003 | $ 1,190.00 | | $ 1,190.00 |
| | | | 30037140-01 | 2/26/2003 | $ 1,800.00 | | $ 1,800.00 |
| | | | 30037141-01 | 2/26/2003 | $ 346.40 | | $ 346.40 |
| | | | 30045564-01 | 2/26/2003 | $ 360.00 | | $ 360.00 |
| Gregory | Self | 6891 | 40020440-01 | 12/26/2003 | $ 4,512.00 | | $ 375.00 |

**Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Gregory | Self | 6891 | 40033936-01 | 12/24/2003 | $ 3,753.60 | | $ 832.20 |

**Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Gregory | Self | 6891 | 40050033-01 | 3/1/2004 | $ 2,667.20 | | $ 585.00 |

**Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees.

# EXHIBIT I

## Potential and Actual Claim Errors
## W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|----------|----------|-----------|--------------|--------------------|-------------|------------------|---------------|
| Marcus | Claire | 006 | 40018908-01 | 8/27/2003 | $ 2,465.60 | | $ 500.00 |
| **Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees. | | | | | | | |
| Marcus | Jennifer | 237-S | 20109861-01 | 9/16/2002 | $ 3,100.00 | | $ 400.00 |
| **Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees. | | | | | | | |
| Susan | Samantha | 4272-01 | Various | 07/01/02-06/30/03 | $ 21,180.05 | | $ 17,305.05 |
| **Comments:** BeneFirst never investigated potential coordination of benefits from the father's insurance. In addition, the plan requires that, to be eligible, a dependent must reside with the employee. BeneFirst confirmed that this claimant lived with her grandparents. Therefore, we believe that no claims paid for this claimant should be allowed. Regardless, an overpayment of $3,875.00 was made because only 15 days of the 19-day confinement from 11/13/02-12/02/02 was authorized. BeneFirst agrees that the hospital claim was overpaid. | | | | | | | $ 3,875.00 |
| Louise B. | Stephanie | 5217 | 40009635-01 | 12/8/2003 | $ 2,600.00 | | $ 2,600.00 |
| | | | 30129948-01 | 12/08-11/2003 | $ 8,971.34 | | $ 8,971.34 |
| **Comments:** These claims were originally denied for accident details, and then released for no apparent reason because accident details were never obtained. BeneFirst agrees that claims of this dollar amount should not have been paid without accident details. | | | | | | | |

# EXHIBIT I

Potential and Actual Claim Errors

W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Frank | Self | ██2380-00 | Various | 07/01/04-12/31/04 | $ 6,286.87 | $ 6,286.87 | |
| Larry | Jayne | █9234 | 40018932-01 | 2/4/2004 | $ 2,875.50 | | $ 1,087.65 |
| Glen | Joy | █952 | 40062272-01 | 3/19/2004 | $ 3,290.50 | | $ 1.14 |

**Comments:** The claimant was effective 12/01/03, and had claims in June of 2004. BeneFirst never confirmed prior creditable coverage or performed a preexisting condition investigation. Therefore, the claim could be overpaid.

**Comments:** Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees..

**Comments:** An error was made in applying the primary carrier's payment when calculating benefits as secondary payor. BeneFirst believes that, due to the small amount of the overpayment, the error should be disregarded.

# EXHIBIT I

## Potential and Actual Claim Errors

### W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Glenn ▇ | Joy | ▇952 | Various | 07/01/04-12/31/04 | $ 61,077.70 | $ 61,077.70 | |

**Comments:** This claimant has her own health plan, which is primary over Aubuchon's plan. Industry standards for coordinating benefits are that, when the secondary plan adjudicates the claim, the secondary plan calculates benefits as it would have done if it was primary, applying PPO discounts, deductibles, coinsurance, and the like, and then subtracts the primary plan payment to determine the net benefit payable. For example, for a $1,000 bill with a $200 PPO discount, the Aubuchon plan's 100 percent benefit would be $800. If the primary plan paid $500, the net payable under Aubuchon's plan is $300, with $200 not the patient's liability as the PPO discount. BeneFirst did not use this method to calculate the secondary plan's liability. Instead, BeneFirst took the full billed amount, deducted the primary plan payment, and paid the full balance, regardless of the secondary plan's actual benefit limits. We believe that this incorrect procedure resulted in multiple overpayments on the Aubuchon plan, and we show as an error the full amount paid for this claimant until BeneFirst recalculates all claims with the correct coordination of benefit

| Janice ▇ | Roger | ▇0778-S | 20120103-01 | 6/6/2002 | $ 3,234.73 | $ 3,234.73 | $ 3,234.73 |

**Comments:** BeneFirst was unable to locate a copy of this claim. Therefore, the claim is overpaid, because BeneFirst cannot provide the supporting documentation to confirm that its actions in adjudicating this claim were accurate.

# EXHIBIT I

## Potential and Actual Claim Errors
## W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Thomas | Susan | 4783 | 40018891-01 | 1/13/2004 | $ 2,566.00 | | $ 622.50 |
| Comments: Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees. | | | | | | | |
| Stephen | Self | 6840-00 | Various | 07/01/04-12/31/04 | $ 77,367.46 | $ 37,491.46 | $ 39,876.00 |
| Comments: Because of the nature of this claimant's condition and the volume of claims, we questioned whether the claimant was actually working 40 or 47 hours per week, as required by the plan. BeneFirst's response to our question was "you have to get that from Aubuchon." Until the claimant's actively-at-work status was clarified, we believe that none of the claims were eligible. As a separate issue, the claimant's Medicare coverage became primary as of 08/01/04, but $39,876 was paid with no coordination of benefits with Medicare. BeneFirst advised that "refund requests were made for those claims" but did not provide details of the amount or status of refund requests. Until this is provided, we believe that at least $39,876.37 is overpaid on this claimant. | | | | | | | |
| Fred | Joan | 896 | 40004870-02 | 12/17/2003 | $ 2,619.00 | | $ 886.50 |
| Comments: Multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees. | | | | | | | |
| Craig | Donna | 184 | 40013624-01 | 1/15/2004 | $ 2,500.00 | | $ 430.00 |
| Comments: $200 deductible and 90% coinsurance were not applied to this out-of-network claim. BeneFirst agrees. | | | | | | | |

## EXHIBIT I

### Potential and Actual Claim Errors
### W. E. Aubuchon Co., Inc.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Donald | Self | 521 | 30056964-01 | 5/6/2003 | $ 2,323.50 | | $ 312.90 |

**Comments:** Out-of-network benefits not applied for this non-contracted provider and multiple surgery rules were not applied in the adjudication of this claim. BeneFirst agrees.

| Employee | Claimant | ID Number | Claim Number | Date(s) of Service | Paid Amount | Potential Errors | Actual Errors |
|---|---|---|---|---|---|---|---|
| Philip R. | Self | 8828-00 | 30043766-01 | 3/14/2003 | $ 5,245.41 | $ 5,245.41 | |
| | | | 30043768-01 | 3/14/2003 | $ 1,960.00 | $ 1,960.00 | |
| | | | 30043776-01 | 3/14/2003 | $ 1,240.00 | $ 1,240.00 | |
| | | | 30050885-01 | 3/14/2003 | $ 34.00 | $ 34.00 | |

**Comments:** BeneFirst never investigated the origin of the diagnosis of these back surgery claims to determine if there was a potential for other party liability or subrogation recovery.

| | Exhibit Totals: | $503,885.05 | $179,703.15 | $189,182.37 |
|---|---|---|---|---|