## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **W.E. AUBUCHON CO., INC., AUBUCHON DISTRIBUTION, INC., W.E. AUBUCHON CO. INC. EMPLOYEE MEDICAL BENEFIT PLAN, and AUBUCHON DISTRIBUTION, INC. EMPLOYEE MEDICAL BENEFIT PLAN**<br>　　　　　　　　**Plaintiffs,**<br><br>v.<br><br>**BENEFIRST, LLC**,<br>　　　　　　　　**Defendant.** | **CIVIL ACTION NO. 05-40159 FDS** |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM**
_____

On December 11, 2006, after the Court's hearing on the Defendant's motion for reconsideration, the plaintiffs, without leave of the Court, submitted a supplemental memorandum concerning the issues raised in the motion for reconsideration. Substantively, however, the premise of the plaintiffs' supplemental memorandum - that Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003) requires production of the medical bills by BeneFirst at BeneFirst's expense - is simply flat wrong. In fact, as discussed *infra*, the plaintiffs' presentation in their supplemental memorandum of the law set forth by Zubulake leads inexorably to the exact opposite of the conclusion reached by the plaintiffs in their memorandum. Rather than requiring the production and that the costs of it be borne by BeneFirst, the plaintiffs' argument in fact establishes that the production should either be denied or all costs of it borne by the plaintiffs.

As a result, BeneFirst requests that this Court grant leave to the defendant to file this response to the plaintiffs' supplemental memorandum, and that the Court take note of the issues addressed *infra* in ruling on the defendant's motion for reconsideration.

I.      **Contrary to the Plaintiffs' Arguments, The Medical Bills Constitute Inaccessible Data for Purposes of <u>Zubulake</u>**

The plaintiffs begin by arguing at pages 2 and 3 of their supplemental memorandum that the medical bills in question are part of the first three categories of documents identified by the <u>Zubulake</u> court -- categories which the plaintiffs assert are typically understood to constitute documents that are deemed accessible and subject to production.  The plaintiffs, however, make no effort to actually demonstrate to the Court that the documents in question fall within those first three categories of documents identified by <u>Zubulake</u>, 217 F.R.D. at 318-19.  This is because, in fact, the documents in question do not fall within any of those first three categories, which are: active, online data; near-line data; and offline storage/archives.

There can be no doubt that the medical bills do not fall within the first two categories of documents, which are active, online data and near-line data.  Active, online data, as the plaintiffs admit, consists of regularly and frequently used data. (Plaintiffs' Supplemental Mem. at 2).  As this Court has been previously advised, the medical bills in question are no longer part of any such active, online and in use database.  The plaintiffs constantly referred in the hearing held by this Court on the motion for reconsideration to the fact that BeneFirst is now out of business, but this is not the reason that the medical bills in question are not part of any active, online database for these purposes.  Rather, they are not part of any active, online database for these purposes because the plaintiffs terminated their contract with BeneFirst and ceased using BeneFirst as their third-party administrator long before BeneFirst went out of business.  (See Docket Paper No. 35, Exhibit E, Plaintiff W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan's Answers to Interrogs. at No. 20).  Thus, even if BeneFirst were still in business, the documents at issue would not constitute active, online data for these purposes.

The medical bills in question are also not within the category of near-line data.  Given that the definition of near-line data as presented by the plaintiffs themselves is limited to media involving

2

access speeds ranging from milliseconds to one hundred twenty seconds, it is obvious that the medical bills in question cannot be deemed near-line data. As documented in BeneFirst's motion for reconsideration, the time for recovery of each individual medical bill at issue in this matter is at least five minutes and, as discussed in the hearing on December 8th on BeneFirst's motion for reconsideration, is probably closer to one-half hour per medical bill. Accordingly, the medical bills at issue cannot be deemed near-line data for purposes of the Zubulake taxonomy of documents. See 217 F.R.D. at 318.

The documents in question do not fall within the third category of documents recognized by the Zubulake court - offline storage/archives - either. Id. Although accessing the medical bills at issue does involve "manual intervention and is much slower than online or near-line storage," which are characteristics under Zubulake of documents that fall within the offline storage/archives category, documents must still be accessible within "minutes, hours, or even days" to fall within this category. Id. at 319. As detailed at the hearing on BeneFirst's motion for reconsideration and in BeneFirst's motion for reconsideration, access to all of the medical bills in question will require - depending on whether the actual access time is a metronomic five minutes per claim or instead, as sampling has shown, one-half hour per claim - anywhere from two months to several months of full-time work. The medical bills sought by the plaintiffs are therefore too difficult and time consuming to access to fall within the category of offline storage/archives for purposes of the Zubulake categorization of documents.

The plaintiffs admit in their supplemental memorandum that only the documents in those "first three categories are typically identified as accessible." (Plaintiffs' Supplemental Mem. at 3 (quoting Zubulake, 217 F.R.D. at 320)). Since the medical bills sought by the plaintiffs are not within those first three categories, by the plaintiffs' own admission, they are not accessible and are instead, inaccessible documents. This, in fact, is affirmed when one compares the categories of inaccessible documents under Zubulake with the medical bills sought by the plaintiffs. Category

four under the Zubulake taxonomy, which is an inaccessible group of materials, consists of documents within the category "back-up tapes." 217 F.R.D. at 319.  To fall within this category, the documents in question must be stored in a method characterized by "transfer speeds [that] vary considerably" and by a "structure" that requires reviewing "preceding blocks [of information]" before locating and reviewing the "particular block of data that must be produced." Id.  These are exactly the characteristics of the computer storage of the medical bills that the plaintiffs ask this Court to order BeneFirst to produce.  As explained in BeneFirst's motion for reconsideration and at the hearing on that motion, the transfer speeds for collection of the medical bills vary considerably, ranging from five minutes at best to a half-hour per record, and - as all of the evidence submitted to this Court to date establishes - production of the medical bills will require months,[1] rather than the limited time period required for the production of what the Zubulake court recognizes as accessible information.

In addition, as was also explained in BeneFirst's motion for reconsideration and in the hearing on that motion, each individual medical bill that the plaintiffs seek production of can only be located by reviewing all of the medical bills processed on a particular day, and not just the requested medical bills.  As a result, the production of one medical bill can only be achieved by first reading all of the preceding medical bills for the same date, before being able to access the requested information. These are the exact characteristics - of poor transfer speed and the need to review preceding material to locate the requested documents - that Zubulake posits make up data that falls within the "back-up tapes" category, which are deemed, as the plaintiffs admit, to be inaccessible data.  (See Plaintiffs' Supplemental Mem. at 2-3).

---

[1] To this day, the plaintiffs still have not submitted a single piece of evidence to the contrary on this point, despite deposing a representative of BeneFirst concerning this exact issue.

4

II. **Contrary to the Plaintiff's Assertions, the Seven Factor Test from <u>Zubulake</u> Requires Denying the Plaintiffs' Demand for Production**

The plaintiffs' presentation of the seven factor test outlined in <u>Zubulake</u>, 217 F.R.D. at 322, to be used in considering cost shifting and the burden of the plaintiffs' request similarly proves the exact opposite of what the plaintiffs wish their analysis to prove. The plaintiffs argue that the most important factors to be considered by the Court in determining whether the production should be deemed an undue burden or expense and not allowed - or at a minimum be paid for by the plaintiffs - are the first two factors, the very first of which is "the extent to which the request is specifically tailored to discover relevant information." (Plaintiffs' Supplemental Mem. at 4). As discussed at the hearing on BeneFirst's motion for reconsideration, to this day the plaintiffs have never produced a single piece of admissible evidence, whether in the form of an affidavit from their expert or otherwise, showing any reason to believe that an error by BeneFirst was made in the processing of even one, let alone a majority or all, of the 3,000 claims for which the plaintiffs are demanding the production of medical bills. While the defendant has provided in great detail evidence of the burden placed upon it by the plaintiffs' request for production of these medical bills, the plaintiffs have not provided any evidence that any errors occurred with regard to these 3,000 claims in either their opposition, filed some months ago, to BeneFirst's motion for reconsideration or in their supplemental memorandum, filed this week.

Moreover, at the hearing on the motion for reconsideration, plaintiffs' counsel represented to the Court that plaintiffs' expert narrowed down the list of claims on which medical bills are requested (if one can call 3,000 claims requiring months of work to produce documents a "narrowing down") simply by identifying those claims above a certain dollar value. The fact that medical bills were above a certain dollar value in no manner indicates that an error occurred on them. Rather, this admission simply proves that the plaintiffs are engaged in exactly what BeneFirst has represented to the Court is shown by the evidence, namely a fishing expedition conducted in

5

an attempt to inflate plaintiffs' damages. If a selection of 3,000 claims for which the production of medical bills is sought that is based solely on the dollar amounts at issue and not on any evidence that errors occurred with regard to them is not a fishing expedition, then nothing is.

These facts make clear that the request is not carefully tailored to obtain relevant information. As such, the most important elements of the Zubulake test only point to denying the requested production of documents, contrary to the plaintiffs' assertions in their supplemental memorandum.

Moving beyond this particular aspect of the Zubulake seven factor test, the plaintiffs argue that they have a right to the documents and any difficulty in accessing them at this point is the fault of the defendant. (Plaintiffs' Supplemental Mem. at 5). Apparently, although these issues appear to reside nowhere within the seven factor test that the plaintiffs rely on in their supplemental memorandum, the plaintiffs believe that these issues warrant ordering the production and imposing the cost of it on BeneFirst (despite the plaintiffs' utter failure to document that these 3,000 claims actually include claims on which errors were committed by BeneFirst).

However, even if the Court were to consider these issues, these factors would, once again, require only a conclusion opposite to that sought by the plaintiffs. The plaintiffs terminated BeneFirst as their third-party administrator on December 31, 2004, and the plaintiffs state in their interrogatory answers that they terminated BeneFirst when they learned of BeneFirst's errors that are at issue in this litigation. (See Docket Paper No. 35, Exhibit E, Plaintiff W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan's Answers to Interrogs. at No. 20). At that time, BeneFirst was an operating entity with staff. The plaintiffs were free at that time to audit the plans and determine exactly what errors actually occurred, if any. In fact, it is a standard event during the life of a plan to send in an auditor and have them engage in this activity at the expense of the party pursuing the audit, and for the auditor to then work with the third-party administrator to review any materials necessary to accomplish an audit. The plaintiffs' expert in this case is exactly such an auditor who,

had she been retained to pursue such an audit during the ongoing business relationship of the parties, rather than years later in litigation, would have engaged in exactly this process, at the expense of the party that retained her, namely the Aubuchon entities. The Aubuchon entities elected at that time not to engage in this activity, presumably because they did not want to incur the costs of conducting an audit, which would have occurred as part of the ongoing business relationship between the parties. Rather, the plaintiffs decided to instead wait until after litigation was instituted to seek access to these documents, so as to seek to impose the costs of this audit on BeneFirst, when those same costs would have been borne by the plaintiffs if they had not delayed in pursuing this information and had instead conducted this review during the lifespan of their business relationship with BeneFirst.

Indeed, in this regard, it is important to note that the plaintiffs assert that a provision of the service agreement entered into between the parties provides that the plan administrator shall maintain "adequate records of all transactions between plan sponsor, the plan administrator and plan participants [and that] the records are the property of the plan sponsor. The plan sponsor has the right of continuing access to the records . . . ." (Plaintiffs' Supplemental Mem. at 5 n.1). The provision, however, provides only that the documents shall be maintained, which BeneFirst clearly has done, that the records are the property of the plan sponsor, and that the plan sponsor has the right of continuing access to the records. As discussed *supra*, the plaintiffs had the right to access the records and audit them at their own expense during the business relationship of the parties, but instead elected to wait until after litigation was imposed in the hope of instead imposing the expense of this review on BeneFirst. This provision by its express terms does not impose the expense of the plan sponsor's access to the records on BeneFirst, and thus this provision does little more than buttress BeneFirst's position in this case, which is that if the plaintiffs desire access to the medical bills in question, it is the plaintiffs' burden to pay for that access, as it was throughout the business relationship of the parties. Simply waiting to sue BeneFirst, which is what the plaintiffs

7

elected to do in this matter, rather than taking advantage of their contractual rights outside of litigation, should not change that fact.

In fact, the plaintiffs' reliance upon this contractual term to try to shift the cost of the audit to BeneFirst, and away from the plaintiffs, who had the contractual obligation to pay for it, is beyond disingenuous. The plaintiffs clearly believe that this provision requires BeneFirst to incur many thousands of dollars in expenses in producing the medical bills in question, and the defendant, quite clearly, does not believe that this provision requires that at all. As such, there is a dispute between the contracting parties as to the meaning of this provision. The plaintiffs, however, have refused to produce evidence to BeneFirst, despite requests for production that would require it, that would shed any light concerning the actual meaning given to the provision by the parties at the time of contracting, see Def. BeneFirst, LLC's Mot. to Compel Prod. of Docs. at 5-6 (Doc. No. 35); having refused to allow discovery that would clarify the meaning of this contractual provision, plaintiffs cannot not now be heard to assert that this particular provision has the meaning the plaintiffs wish it to hold and requires the production of the medical bills in question at BeneFirst's expense.[2]

Finally, at pages 5 to 6 of the plaintiffs' supplemental memorandum, the plaintiffs make a simply inaccurate statement to this Court in an attempt to obtain production of documents to which they, simply put, are not entitled. They assert that a sampling of the requested electronic documents to determine their relevancy "has already been performed as is evidenced by Exhibit 1, attached to Plaintiffs' Answers to Interrogatories." (Plaintiffs' Supplemental Mem. at 5-6). This is simply untrue. Exhibit 1 is an audit performed by the plaintiffs' expert during the course of BeneFirst's administration of the plaintiffs' employee benefit plans. It was conducted by the plaintiffs' expert when she was retained by - and on behalf of - a stop loss insurer that insured the

---

[2]It is probably worth noting, simply to clarify the record for the Court, that, when the plaintiffs assert in footnote 1 of their supplemental memorandum that the plaintiffs have demanded the return of records pursuant to this contractual provision and that "to date, defendant has ignored" that request, the plaintiffs are being less than forthcoming with the Court. The defendant has already produced all records in its possession, other than the medical bills that are the subject of the discovery dispute before this Court, to the plaintiffs, and have so advised them. (See Docket Paper No. 35, Exhibit B, Rosenberg Letter of Nov. 15, 2006).

8

plans, and was not conducted on behalf of the plaintiffs. It certainly was not conducted as part of this litigation or as a sampling to establish the legitimacy of the list of 3,000 claims sought by the plaintiffs. Moreover, it was conducted well before the current litigation or the submission by the plaintiffs of their lists of 3,000 claims for which they seek medical bills. As such, there is no truth to the representation that Exhibit 1[3] represents a sampling of the 3000 claims at issue.[4]

### III. Conclusion

For the reasons discussed *supra*, BeneFirst requests that this Court consider this response in ruling on its motion for reconsideration, grant the motion for reconsideration and deny the further discovery sought by the plaintiffs.

Respectfully submitted,

The Defendant, **BeneFirst, LLC**

By its attorneys,

**Dated:** December 14, 2006

/s/  *Stephen D. Rosenberg*
/s/  *Eric L. Brodie*
Stephen D. Rosenberg    [BBO# 558415]
Eric L. Brodie    [BBO# 639833]
**THE MCCORMACK FIRM, LLC**
One International Place - 7th Floor
Boston, MA    02110
Ph:    617•951•2929
Fax:    617•951•2672

---

[3] With regard to Exhibit 1, it should be noted that the plaintiffs' assertion that it is not part of the public record in this matter is simply incorrect. It was made a part of the public record in this litigation when the plaintiffs served it on the defendant, placing all the information within it at issue in this case. It was incumbent upon plaintiffs to protect confidential information contained in that document, knowing that it would thereafter be used, whether in depositions or otherwise, in the litigation.

[4] In any event, Exhibit 1 is certainly not a sampling of the 3,000 claims to determine their relevance under any circumstances. It is instead a self-selected list submitted by the plaintiffs of a subset of claims that the plaintiffs have already decided they believe contain errors. As such, to call it a sampling is a misnomer at best, an Orwellian distortion of the word at worst.

## CERTIFICATE OF SERVICE

I hereby certify that today, December 14, 2006, a copy of *Defendant's Response to Plaintiff's Supplemental Memorandum* was served via the ECF system upon the following attorneys of record, each of whom has been identified as a registered participant on the Notice of Electronic Filing (NEF):

>Louis M. Ciavarra     *lciavarra@bowditch.com*
>Ryan T. Killman      *rkillman@bowditch.com*
>Colleen E. Cushing    *ccushing@bowditch.com*
>**Bowditch & Dewey, LLP**
>311 Main Street
>P.O. Box 15156
>Worcester, MA   01615-0156

>/s/ *Eric L. Brodie*
>Eric L. Brodie

92132.1

10