UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| W.E. AUBUCHON CO., INC., AUBUCHON DISTRIBUTION, INC., W.E. AUBUCHON CO. INC EMPLOYEE MEDICAL BENEFIT PLAN, and AUBUCHON DISTRIBUTION, INC. EMPLOYEE MEDICAL BENEFIT PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> BENEFIRST, LLC, <br><br> Defendant. | CIVIL ACTION <br> NO. 05-40159-FDS |

**ORDER ON BENEFIRST'S MOTION FOR RECONSIDERATION
OF COURT'S DISCOVERY ORDER RELATED TO MEDICAL BILLS**
February 6, 2007

**HILLMAN, M.J.**

**INTRODUCTION**

By order of this Court dated September 7, 2006, the Defendant, BeneFirst, LLC ("BeneFirst"), was ordered to produce medical claims files, including actual bills in its possession, custody, or control (Docket #28). On September 18, 2006, BeneFirst filed the instant Motion for Reconsideration of Court's Discovery Order Related to Medical Bills (Docket #29), together with an accompanying memorandum and affidavit.[1] BeneFirst claims that the documents are not reasonably accessible because the cost of their production far outweighs their value to the Plaintiffs. For the reasons set forth below, I deny the motion.

---

[1] The parties attempted several times to work this matter out by themselves. Unfortunately, despite their best efforts, they were unable to come to agreement.

**BACKGROUND**

This case involves the administration of qualified benefits plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*. W.E. Aubuchon Co., Inc. ("Aubuchon") is the employer, sponsor and administrator of the W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan ("Aubuchon Plan"). Aubuchon is the sponsor and Aubuchon Distribution, Inc. ("Aubuchon Distribution") is the employer and administrator of the W.E. Aubuchon Co., Inc. & Aubuchon Distribution, Inc. Employee Medical Benefit Plan ("Aubuchon Distribution Plan", and, together with the Aubuchon Plan, the "ERISA Plans").

BeneFirst, which is a Massachusetts limited liability company based in Marshfield, Massachusetts, entered into a contract with the Plaintiffs pursuant to which BeneFirst assumed the rights, duties and obligations to administer the ERISA Plans, as a third-party administrator. BeneFirst's obligations included "investigating and determining eligibility, payments, co-pays, co-insurance and subrogation claims," for which BeneFirst allegedly "exercised discretion and control over [its] decisions [presumably with respect to payment of claims] and was paid to execute these duties properly." (*Amended Complaint*, Docket #19, ¶¶8,14). The Plaintiffs charge that BeneFirst failed to perform its duties in a reasonably prudent manner, thereby breaching its fiduciary duty (Counts I and II) and that it breached the underlying contract by failing to provide services accurately and completely (Counts III and IV).

In the initial motion to compel (Docket #24), Plaintiffs sought, among other things, to compel BeneFirst to produce all medical claims files, including the actual medical bills in BeneFirst's custody or control. This Court ruled that BeneFirst was to provide those files and bills. It is that ruling that is the subject of this motion for reconsideration.

## FACTS

BeneFirst is no longer in operation. Therefore, I will set out a historical summary of the procedures utilized by BeneFirst for processing, storing and retrieving claims at the time it administered the ERISA Plans. In order to comply with this Court's initial ruling, BeneFirst would have to hire personnel to retrieve the claims sought by the Plaintiffs in accordance with the procedures described below.

BeneFirst would typically receive requests for payment from medical providers who had provided covered medical services to Aubuchon/Aubuchon Distribution personnel. These requests for payment were on claim forms.[2] These claims would be sorted or "batched" into client groups for processing. Once processed for payment, the claim forms were retained for a 60 day period. After 60 days, the batch of claim forms would be scanned and stored as electronic images and then destroyed. These scanned forms were stored in groups according to their processing date and the person who processed the claim.

If a claim needed to be retrieved after the 60 day period, the claim number, processor, and date of processing would be needed in order to retrieve the image. If all of this information was available, then the search would take 3-4 minutes. If all of the information was not available, it could take upwards of 7 minutes. It is particularly important to the search process to have the name of the person who processed the claim because on any given day, 3-4 claims examiners would process Plaintiffs' claims and during the relevant period, 14 different

---

[2] It is unclear whether the claim form was the 'medical bill' or whether the claim form had a medical bill attached, or some combination. The Defendant takes great pains to point out that there were never "claim files" as referenced in this Court's earlier ruling. Instead, medical professionals would submit "claim forms" and those forms would be sorted into client groups for processing. *See Affidavit of Charles T. Dobens* (Docket #31). It is my understanding, after review of the pleadings, particularly the Doben Affidavit, that no information, other than the clam form, would be needed for the claims examiner to process a medical bill.

examiners were employed.  Furthermore, for parts of 2001, 2002 and 2003, BeneFirst utilized an outside vendor to process claims.  The outside vendor would scan the claims and return them to BeneFirst on a CD-R for further processing.  The images scanned by the outside vendor would then be batched in the same way as was done during in-house processing.

The search process for retrieving claims is further complicated by the fact that there is no index of images *per se*.  The images are stored on BeneFirst's server first, according to year of processing, then by claims examiner, then by the month of processing, and finally by the actual processing date.  Inexplicably, BeneFirst's system was not set up to for the wholesale retrieval of claim images on a group by group basis.

During the 3.5 years at issue in this litigation, BeneFirst was administering up to 48 different plans and, by its estimation, processed between 550,000 and 600,000 claims.  Of that number, 34,112 claims were submitted for processing under the ERISA Plans.  Of that number, the Plaintiffs have narrowed their request, based upon a dollar value, to approximately 3,000 claims.  BeneFirst estimates that it would cost approximately $80,000.00 and take almost 4,000 hours to retrieve all 34,112 claims.  They have not provided a cost/time estimate for the retrieval of the 3,000 claims.

## **DISCUSSION**

Our courts have repeatedly reiterated that "'notice pleading standard relies on liberal discovery rules' ... . " and that "it is now beyond dispute that '[b]road discovery is a cornerstone of the litigation process contemplated by the Federal Rules of Civil Procedure.'" *Zublulake v. UBS Warburg*, 217 F.R.D. 309, 311 (2003)(alteration in original).  While the principle is relatively straightforward, its application is not.  This principle of liberal discovery is sorely

4

tested when the object of the discovery is electronic data.  As of December 1, 2006, the Federal Rules of Civil Procedure were amended to give greater guidance to courts and litigants in dealing with electronic discovery issues.  There are four key areas of change to the Rules that address electronic discovery: early attention to e-discovery issues; the role of accessibility; the form of production; and sanctions under Rule 37.  This case squarely presents the question of whether the information sought is reasonably accessible  within the meaning of the Rule and if not, whether it still should be produced.

The Recent Amendments

On December 1, 2006, Rule 26 was amended, in relevant part, to provide the following limitation to the general rule that a party may obtain discovery of any matter, not privileged, that is relevant to such party's claim or defenses:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought musts show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

F.R.C.P. 26(b)(2)(B).

The Order of the Supreme Judicial Court of the United States adopting this amendment to Rule 26 provides that such amendments ". . . shall take effect on December 1, 2006, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending."  This case was filed before December 1, 2006 and the instant dispute arose before the effective date of the amendment.  At the same time, the case is still in the discovery stages.  Furthermore, in briefing the issue, the parties have cited to the seven-step

5

analysis for determining whether or not to shift the cost of production proposed by Judge Scheindlin in *Zublulake*. The notes to the 2006 Amendment to Rule 26 to a large degree adopt Judge Scheindlin's seven-step analysis for purposes of determining whether a party should be required to search for and produce information that is not reasonably accessible. *See* Fed.R.Civ.P. Advisory Committee's note to 2006 Amendment. Under these circumstances, I find that it is just and practicable to apply the recent amendments to Rule 26 to the instant dispute.

Application of The Rule 26 Amendment

Under Rule 26, as revised, this Court must determine whether the information sought is reasonably accessible. If the information is not reasonably accessible, this Court may still order discovery if Aubuchon shows good cause for requesting the information, taking into consideration the limitations of Rule 26(b)(2)(C).

### Is the requested information 'reasonably accessible' within the meaning of FRCP 26(b)(2)?

BeneFirst asserts that the requested claims forms are not reasonably accessible within the meaning of FRCP 26(b)(2)(B) because of the high cost to retrieve such information (both in monetary terms and in terms of the man hours it would require to retrieve the information). BeneFirst contends that the high cost/time to retrieve such data is necessitated by the fact that it is maintained in an inaccessible format.

In *Zubulake,* the court found that the time and expense required to retrieve documents and electronic data depends primarily on whether such information "is kept in an *accessible or inaccessible* format ... [furthermore,] [w]hether electronic data is accessible or inaccessible turns largely on the media on which it is stored ". *Zubulake*, 217 F.R.D. at 318 (emphasis in original).

*Zubulake* broke down electronic data into the following five categories, listed in order of most accessible to least accessible: (1) active on-line data (hard drives, for example); (2) near-line data (typically, robotic storage devices such as optical disks); (3) offline storage/archives (removable optical disks or magnetic tape media which can be labeled and stored in a shelf or rack); (4) backup tapes (devices like tape recorders that read data from and write it onto a tape; they are sequential access devices which are typically not organized for retrieval of individual documents or files); and (5) erased, fragmented or damaged data (such data can only be accessed after significant processing). *Id.*, at 318-319.

Generally, the first three categories of data are considered "accessible" and the last two categories are considered "inaccessible". That the data is deemed "accessible" does not mean it is readily obtainable, "the time it takes to actually access [such] data ranges from milliseconds to days, [however] the data does not need to be restored or otherwise manipulated to be usable". *Id.*, at 320. "'Inaccessible' data, on the other hand, is not readily usable. Backup tapes must be restored ... fragmented data must be defragmented, and erased data must be reconstructed. That makes such data inaccessible". *Id.*

Because, as noted by Judge Sheindlin, the determination of whether the production of electronic data is expensive or unduly burdensome often depends on whether it is maintained in an "accessible" or "inaccessible" format**,** I find that it is instructive to apply this media based analytical approach in considering whether electronic data is "reasonably accessible" for purposes of the new Rule 26(b)(2)(B). In this case, the records sought by the Plaintiffs are stored on a server used by BeneFirst in Pembroke Massachusetts, which is clearly an accessible format. However, because of BeneFirst's method of storage and lack of an indexing system, it

will be extremely costly to retrieve the requested data. I am hard pressed to understand the rationale behind having a system that is only searchable by year of processing, then claims examiner, then the month of processing, and finally the claims date. None of these search criteria reflect the name of the individual claimant, the date that the claimant received the medical service, who the provider was, or even the company that employed the benefit holder. It would seem that such a system would only serve to discourage audits and the type of inquiries that have led to the instant litigation[3]. Nevertheless, the retrieval of the records will be costly and for the purposes of this decision, I find that such retrieval would involve undue burden or cost. Accordingly, the images are not reasonably accessible within the meaning of Fed.R.Civ.P. 26(b)(2)(B).

### Since the images are not reasonably accessible is there 'good cause' to order their production?

The Plaintiffs argue that the information they have requested goes to the heart of their case and that they have established "good cause" for production of the same. In making a determination of whether the requesting party has established "good cause", this Court must consider whether: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its

---

[3] BeneFirst's Managing Member, Charles T. Dobens states that "the decision to store the images in this manner was one that was made by Paul Gatani, BeneFirst's former claims manager, and myself. This setup was designed to locate, within a reasonable amount of time, a particular claim if it became necessary to locate the associated image. However, the image itself was generally not required in the normal course of BeneFirst's claims processing operations. The organization of the image files was not designed for the wholesale retrieval of images on a group-by-group basis." *Affidavit of Charles T. Dobens* (Docket #31), at ¶13.

likely benefit, taking into account the needs of the case, the amount in controversy, the parties'
resources, the importance of the issues at stake in the litigation, and the importance of the
proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C). To the extent not
covered by the aforementioned factors, the Court should also consider:

> (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources.

Fed.R.Civ.P. 26 Advisory Committee's note, to 2006 Amendment.

### The specificity of the discovery request.

BeneFirst's Motion seeks reconsideration of this Court's earlier discovery order which ordered BeneFirst to produce "all claims files, including the actual bills in BeneFirst's possession or control." The parties have responded intelligently and vigorously to this Order and there is no misunderstanding or confusion about the specificity of the information sought by the Plaintiffs.

This factor favors the Plaintiffs.

### The quantity of information available from other and more easily accessed sources; The failure to produce relevant information that seems likely to have existed but is no longer available from more easily accessed sources.

The gravamen of the Plaintiffs' Amended Complaint is that BeneFirst mishandled their employees' medical claims by failing to determine eligibility for payment, the availability of co-payment and co-insurance, and subrogation. The processing of the claim forms was presumably

9

the mechanism for making these determinations. While the Amended Complaint and subsequent pleadings are silent, the relevant time period appears to be from 2001 to 2004.[4]

According to BeneFirst, the original claim forms and medical bills were processed by hand, kept for 60 days, converted to a digital image and then destroyed. Therefore, digital images which constitute the information requested by the Plaintiffs are in the custody and control of BeneFirst and are not available through any other source.

These factors favor the Plaintiffs.

**Predictions as to the importance and usefulness of the further information; the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources.**

I agree with the Plaintiffs that the requested claim forms and medical bills are clearly an integral part of the litigation; the requested information goes not only to BeneFirst's culpability, but also to the amount of damages, if any, to which the Plaintiffs may be entitled. There can be no serious contention that the information is not highly relevant. In fact, it is difficult to imagine how this case could be prosecuted or defended without the claims forms and attendant bills. As previously found, they are not available from any other source (a determination which is uncontroverted).

These factors favor the Plaintiffs.

---

[4] I so find because this litigation was commenced in 2005 and it seems safe to assume that none of the original claim forms and medical bills were still in existence at that time (if they were, BeneFirst presumably would have retained them).

### The importance of the issues at stake in the litigation.

While the importance of the claims/issues in this case are real and substantial *vis a vis* the parties, such claims/issues to not raise any global concerns.

This factor favors the Defendants (if it favors any party at all).

### The parties resources.

While the Defendant has understandably engaged in a lengthy discussion of the cost of production, neither party has provided the court with any information about their resources. BeneFirst does represent that they no longer have a full time staff and that in order to retrieve the images that they would have to hire temporary help. At the same time, as previously noted, the Plaintiffs have significantly narrowed the breadth of their request and therefore, the time and cost for BeneFirst to produce the requested information should be *significantly* reduced.

Given the lack of information available to the Court, this factor is neutral.

### Other relevant considerations.

In addition to the above 7 factors, it is important to note that a provision in the Service Agreement between the parties provided that: " ... The Records are the property of the Plan Sponsor. The Plan Sponsor has the right of continuing access to their records. . . ." . In other words, although in the custody and control of BeneFirst, the records at issue are the property of the Plaintiffs.[5]

### **The Plaintiffs Have Met Their Burden To Establish Good Cause**

---

[5]BeneFirst argues that the Service Agreement does not contain any express terms which would impose the expense of the records production upon them. That argument begs the question of the role of these records in this lawsuit. While the agreement provides that the records belong to the Plaintiffs, they have always been in the care, custody and control of the Defendant. As discussed above, the Plaintiffs' claims will inevitably rise or fall upon what those records reveal. They are not extraneous to the lawsuit or marginally relevant to some arcane side issue. Given that the parties have ended up in litigation, the issue of whether they must be produced and, if so, who must bear the expense of such production is properly determined in accordance with Rule 26(b)(2)(B).

On balance, I find that the Plaintiffs have clearly established good cause for requiring BeneFirst to produce the requested information. As noted above, the Plaintiffs have significantly narrowed their original request from approximately 34,000 claims to a list of approximately 3,000. This reduction should serve to reduce the time and expense of retrieving the requested information. Under the circumstances, I find that the requested information should be produced by BeneFirst at its own expense.

## ORDER

For the reasons set forth above, BeneFirst's Motion for Reconsideration of Court's Discovery Order Related to Medical Bills (Docket # 29) is <u>denied</u>. BeneFirst shall produce the Medical Bills and Claims Forms for the approximately 3,000 claims as specified by the Plaintiffs at their own expense.

/S/ Timothy S. Hillman
TIMOTHY S. HILLMAN
UNITED STATES MAGISTRATE JUDGE