UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| W.E. AUBUCHON CO., INC., AUBUCHON DISTRIBUTION, INC., W.E. AUBUCHON CO. INC. EMPLOYEE MEDICAL BENEFIT PLAN, and AUBUCHON DISTRIBUTION, INC. EMPLOYEE MEDICAL BENEFIT PLAN,<br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>BENEFIRST, LLC,<br>　　　　　　　　Defendant. | CIVIL ACTION NO.<br>05-40159 FDS |

**DEFENDANT BENEFIRST, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO ENFORCE THIRD-PARTY SUBPOENA**

Defendant BeneFirst, LLC ("BeneFirst") submits the following memorandum in support of its motion to compel Northshore International Insurance Services ("Northshore") to produce documents requested in the subpoena duly served upon it.

**I.     BACKGROUND**

As this Court is aware, this lawsuit involves the plaintiffs' claims that BeneFirst committed millions of dollars in errors in the administration of the plaintiffs' employee benefit plans during the years that BeneFirst served as the third party administrator for those plans. Northshore's involvement in this case involves three separate but overlapping roles it has played in this matter. First, during the course of BeneFirst's administration of the plaintiffs' employee benefit plans and long before this litigation was instituted, Northshore was hired by the insurer of one of the plaintiffs' employee benefit plans to review and report to the insurer on BeneFirst's administration of that employee benefit plan. Second, Northshore was also hired by other companies to conduct reviews of other employee benefit plans administered by BeneFirst for companies who are not parties to

this litigation.[1]  Third, Northshore has now been hired, separate from these other earlier retentions, by the plaintiffs in the instant matter as an expert in the current litigation.  It is the documents generated in its role in that second capacity - as the auditor of BeneFirst's administration of benefit plans that are not parties to this litigation - that is at issue in the current motion to compel.

On December 1, 2006, BeneFirst issued a subpoena to Northshore seeking, among other things, all documents relating to Northshore's audits of the Plaintiffs' health plans, including documents consulted for those audits, correspondence between Northshore and the excess insurers for the Plaintiffs and the like.  See Exhibit A, Subpoena to Keeper of Records, Northshore International Insurance Services, and Return of Service.  Northshore did not object to these requests, and did not assert that the requests were unduly burdensome.

Instead, Northshore objected to producing certain categories of documents.  The first category consisted of documents it has characterized as work product, including "correspondence, e-mails, and notes of meetings between Northshore's agents and Plaintiffs' counsel in anticipation of litigation."  See Exhibit B, Rule 45 Objection at ¶1.  These are documents in its possession that were created or obtained in its role as an expert retained by the Plaintiffs in the current litigation.  Second, Northshore raised a specific objection to Paragraph 12 of the subpoena, noting that this part of the subpoena requires the production of documents relating to Northshore's previous audits of BeneFirst, even if they were not audits involving the plaintiffs or their insurers; Northshore objected to the production of these documents because Northshore claims they are irrelevant.  Rule 45 Objection at ¶2.  These are apparently documents created or compiled by Northshore when it was retained by insurers of employee benefit plans other than those at issue in the instant litigation that were administered by BeneFirst and to whom Northshore reported on BeneFirst's administration of those plans.

---

[1] Northshore admits this in its Rule 45 objection served in response to the subpoena served upon it in this case.

Northshore originally refused to produce any documents in response to the subpoena. However, after BeneFirst's counsel contacted plaintiffs' counsel as required by the local rules in advance of moving to enforce the subpoena, Northshore changed its position and agreed to produce all documents sought by the subpoena with the exception of documents concerning Northshore's audits of BeneFirst's administration of other plans that are not parties to the instant litigation. The parties have continued up until the date of this filing to try to negotiate a resolution of all remaining discovery disputes, but have not been able to resolve the issue of whether Northshore must produce the documents related to these other audits of BeneFirst by Northshore. Northshore should be ordered to fully respond to the subpoena served upon it by producing these requested documents. As discussed in detail *infra*, these documents are clearly relevant, and there is no legitimate basis for withholding those documents from production. As discussed in detail *infra*, the documents are directly relevant to testing on cross-examination the opinions of this expert.

## II. NORTHSHORE IS OBLIGATED TO PRODUCE THE "OTHER AUDIT" DOCUMENTS REQUESTED FROM IT IN THE SUBPOENA SERVED UPON IT

### A. Discovery Relating To Northshore's Previous Audits Of Benefirst Is Highly Relevant To Northshore's Credibility As An Expert Witness In The Present Case

As noted previously, Northshore was previously hired by one of the Plaintiffs' insurers to conduct an audit of medical claims and to review BeneFirst's claims handling practices; this occurred as a routine part of BeneFirst's work as the third-party administrator for the Plaintiffs. This prior, pre-litigation audit resulted in the generation of the table attached as Exhibit I to the Plaintiffs' Answers to Interrogatories and which is a part of the record at Exhibit 5 to Benefirst's prior, and now withdrawn, Motion to Compel.[2] See Document 35. The Plaintiffs now intend to have Northshore, in its new and separate role as an expert for the Plaintiffs, conduct an additional, far

---

[2] The prior motion to compel was withdrawn as negotiations between the parties resolved the discovery disputes addressed in that motion.

- 3 -

larger audit of BeneFirst's administration of the Aubuchon plans involving 3000 claims for medical benefits submitted under those plans.

Northshore and the Plaintiffs acknowledge that Northshore has previously also conducted reviews and audits of BeneFirst's administration of the plans of other companies, who are not parties to this litigation. These types of audits and reviews are a routine part of the daily operations of such plans. Northshore claims that documents related to those audits and reviews are irrelevant to the present matter and, therefore, Northshore will not produce them.

However, the relevance of these documents is obvious. They will demonstrate whether Northshore applies the same standards and norms to its review of BeneFirst's activities in its role as a paid expert for the Plaintiffs as it applied when simply engaged in the routine reviews of BeneFirst's operations that it has conducted for other clients in other situations and for less adversarial purposes. In fact, since Northshore holds itself out as an expert in conducting these sorts of audits, deviations from its normal procedures, whether in size, scope, or process, become particularly relevant in assessing Northshore's credibility as an expert in this case, the weight to give its proposed testimony, and its potential biases. BeneFirst does not – at this time – seek Northshore's audits of other administrators, but only those audits it conducted that involved BeneFirst, as a comparison and control to determine whether Northshore's techniques, either in claim selection for review or in the review process itself have changed now that Northshore has been retained as an expert in this case.

BeneFirst should be free to explore potential biases on the part of Northshore, to assess flaws or inconsistencies in its methodologies, and to assess differences between Northshore's work as an expert in this case and Northshore's previous approach to other audits of BeneFirst's performance as the third-party administrator for other health plans. Indeed, Federal Rule of Evidence 702 provides that an expert witness may testify only if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3)

the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. Inherent in these rules is the availability of cross-examination to test the reliability of the application of whatever methods Northshore has used and proposes to use in the present case. See United States v. Vargas, 2006 U.S. App. LEXIS 31509 at *26-30 (No. 05-2826, 1st Cir. Dec. 22, 2006)(encouraging testing of reliability of methodology described in expert's testimony by the adversary process, including competing expert testimony and active cross-examination); International Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 544-45 (1st Cir. 1988)(discussing cross-examination of experts as fundamental to exploring and exposing weaknesses in the underpinnings of the expert's opinion); Liquid Dynamics Corp. v. Vaughan Co, Inc., 449 F.3d 1209, 1221 (Fed. Cir. 2006)(noting that under Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S. Ct. 2786 (1993), challenges to an expert's testimony can be directed at both the principles and methodology; where an expert's analysis may be flawed, such an attack on cross-examination will allow for arguments addressing the weight of the expert's testimony).

Precluding BeneFirst from comparing all of Northshore's prior audits of BeneFirst to the opinions it renders as a retained expert in the present case would significantly undermine BeneFirst's ability to cross-examine Northshore. This is, of course, clearly the opposite of what the Federal Rules of Evidence and the corresponding case law interpreting Rule 702 encourage.

Thus, there is no legitimacy to the only objection Northshore raised in its Rule 45 objection to producing these documents, which was that they were allegedly irrelevant. They clearly are relevant, and must therefore be produced in compliance with the subpoena.

### B.    No Privacy Or HIPAA Concerns Are Implicated By Production Of These "Other Audit" Documents

The Court should be aware that the production of these requested materials, even though they do not involve the plaintiffs' employee benefit plans, will not implicate any privacy concerns or issues under HIPAA. Production to BeneFirst of documents in Northshore's possession that relate to its prior audits of BeneFirst and of other employee benefit plans administered by BeneFirst

cannot possibly implicate any privacy or HIPAA concerns, because it is impossible for those documents to include medical information that was not already previously disclosed to BeneFirst in its role as the third party administrator of those plans. Any medical records or information in Northshore's possession with regard to such plans would have previously already been disclosed to BeneFirst during its administration of the plans. In fact, any medical information at all concerning those other plans that are in Northshore's possession could only have come originally from BeneFirst itself, as Northshore's only access to them would have occurred when it audited the plans during BeneFirst's tenure as the administrator of those plans.

Thus, BeneFirst notes that privacy concerns are not implicated in the present motion to compel, because disclosure of Northshore's files regarding previous audits of BeneFirst will not disclose records that have not already been previously disclosed to Northshore as part of its audits or to BeneFirst, which previously processed them. To the extent that the items disclosed in response to BeneFirst's subpoena become a basis for cross-examination or questioning of Northshore, BeneFirst will take the appropriate steps needed to limit disclosure of the records to the extent warranted by any concerns of privacy.

The Court should also note that, in any event, Northshore did not object to producing the requested documents on privacy grounds in its Rule 45 objection to the subpoena served upon it. See generally, Exhibit B, Northshore's Rule 45 Objection. Since Northshore did not interpose an objection of this nature in response to the subpoena served upon it, Northshore has waived any such objection in any event. See e.g. Universal City Dev. Ptnrs, Ltd. v. Ride & Show Eng'g, Inc., 230 F.R.D. 688, 697 (D. Fla. 2005)("although the Eleventh Circuit has not addressed the issue of waiver of privileges for documents subpoenaed pursuant to Rule 45, the rule itself requires both that an objection be made to the subpoena and the claim of privilege must be stated within 14 days of service of the subpoena. Fed. R. Civ. P. 45(c)(2)(B). Failure to serve written objection to a

subpoena within the time specified by Fed. R. Civ. P. 45 typically waives any objections the party may have."(internal citation omitted)); Burroughs Corp. v. Dataware Sources, Inc., 1987 U.S. Dist. LEXIS 10334 (D. Mass. 1987)(the "objections are untimely. . . [w]hen objections are not filed within the time provided by the Rule, the objections are waived."); 9 James Wm. Moore et al., Moore's Federal Practice § 45.41[1][c] (3d ed. 1997) (all potential grounds for objection then available should be combined into a single written objection, as permitting serial objections unnecessarily prolongs the process . . . it remains necessary to raise an objection to production or inspection within the time permitted by the rule or the claim will be waived. This requirement is sound, in the interest of efficiency and fair notice.").

    **C.    Northshore Should Therefore Be Ordered to Produce the "Other Audit" Documents Subpoenaed from it**

As discussed above, there is no doubt that the documents that Northshore is refusing to produce that relate to its audits of BeneFirst's administration of other health plans is highly relevant in the instant litigation.  Since Northshore is therefore wrong as to its only asserted basis for refusing to produce these documents, which was that they are irrelevant, Northshore should be ordered to produce them.

*        *        *

**III. CONCLUSION**

     For the reasons discussed above, Defendant BeneFirst, LLC requests that this Court enter an order compelling Northshore International Insurance Services to produce the remaining documents requested in the Subpoena served upon it, which consist of documents related to its other audits of BeneFirst.

                                            Respectfully submitted,

                                            **BeneFirst, LLC**, Defendant
                                            by its attorneys,

                                            */s/ Stephen D. Rosenberg*
                                            Stephen D. Rosenberg   [BBO# 558415]
                                            Eric L. Brodie               [BBO# 639833]
                                            **THE MCCORMACK FIRM, LLC**
                                            One International Place - 7th Floor
                                            Boston, MA    02110
                                            Ph:    617•951•2929
                                            Fax:   617•951•2672

Issued by the

# UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

W.E. AUBUCHON CO., INC., et al.

        Plaintiffs,

v.

BENEFIRST, LLC,

        Defendant.

SUBPOENA IN A CIVIL CASE

Civil Action No. 05-40159 FDS [1]

[1] If action is pending in district other than district of issuance, state district under case number

To: Keeper of Records,
   North Shore International Insurance Services
   199 Rosewood Drive, Danvers MA 01923

A TRUE COPY ATTEST
DAVID D. AYLES, PROCESS SERVER
AND DISINTERESTED PERSON

___ YOU ARE COMMANDED to appear in the District Court for the District of _____ at the place, date, and time specified below to testify in connection with the above case:

| Place of Testimony: | Courtroom: |
|---|---|
|  | Date and Time: |

___ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the taking of a deposition in connection with the above case:

| Place of Deposition: | Date and Time: |
|---|---|
| If the deponent is public or private corporation or a partnership or association or governmental agency, the following are the matters on which examination is requested: |  |

**X** YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects in your possession, custody or control at the place, date and time specified below in connection with the above case:

| List documents or objects: | See attached Schedule "A" | Date and Time: | December 22, 2006 |
|---|---|---|---|
| Place of Production: | The McCormack Firm, LLC<br>One International Place, 7th Floor<br>Boston, MA 02110 |  | 1:00 p.m. |

___ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below in connection with the above case:

| Premises to be Inspected: | Date and Time: |
|---|---|

Issued by: Stephen D. Rosenberg, Attorney for BeneFirst, LLC
     The McCormack Firm, LLC
     One International Place, 7th Floor
     Boston, MA 02110
     Phone 617.951.2929  Signature of Issuing Attorney: _____ for SDR.

Issue Date: December 1, 2006

| PROOF OF SERVICE (to be filled out by server) ||
|---|---|
| Date of Service: | Place Served: |
| Served On: (Print Name) | Manner of Service: |
| Served By: (Print Name) | Title of Server: |

**DECLARATION OF SERVER:** I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

| Date Executed: | Signature of Server: |
|---|---|
| | Address of Server: |

## REQUIRED NOTICES

If you are a public or private corporation or a partnership or association or governmental agency and have received a subpoena for your deposition, please note the following pursuant to Rule 30, subsection (b)(6):

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The persons so designated shall testify as to matters known or reasonably available to the organization.

Please note the following provisions of Rule 45, subsections (c) and (d) of the Federal Rules of Civil Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
  (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

  (2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

  (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

  (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
    (i) fails to allow reasonable time for compliance;
    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
    (iv) subjects a person to undue burden.

  (B) If a subpoena
    (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
    (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
  (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it, or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(c). The court may specify conditions for discovery.

  (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has, and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for determination of the claim. If the receiving party disclosed the information before being notified it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

No. 88385.2 (rev 12/1/06)

## SCHEDULE "A" TO SUBPOENA
## TO NORTHSHORE INTERNATIONAL INSURANCE SERVICES

**PLEASE NOTE:** If the deponent produces the documents listed in this Schedule on or before the date set forth in the Subpoena to Attorney Stephen D. Rosenberg, The McCormack Firm, LLC, One International Place, Boston, MA 02110, the deponent need not personally appear to produce the listed documents.

1. All documents relating to audits or reviews of the W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan.

2. All documents relating to audits or reviews of the Aubuchon Distribution, Inc. Employee Medical Benefit Plan.

3. All documents consulted by any representative of Northshore International Insurance Services in the course of conducting any audits or reviews of the W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan.

4. All documents consulted by any representative of Northshore International Insurance Services in the course of conducting any audits or reviews of the Aubuchon Distribution, Inc. Employee Medical Benefit Plan.

5. All documents created by any representative of Northshore International Insurance Services in the course of or as a result of conducting any audits or reviews of the W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan.

6. All documents created by any representative of Northshore International Insurance Services in the course of or as a result of conducting any audits or reviews of the Aubuchon Distribution, Inc. Employee Medical Benefit Plan.

7. All correspondence between Northshore International Insurance Services and any stop-loss or excess carrier or representative therefor, including, but not limited to, BP, Inc., BCS Insurance Company and/or Combined Insurance Company of America, with regard to W.E. Aubuchon Co., Inc., the W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan, Aubuchon Distribution, Inc., or the Aubuchon Distribution, Inc. Employee Medical Benefit Plan.

8. All documents concerning the retention of Northshore International Insurance Services by any stop-loss or excess carrier or representative therefor, including, but not limited to, BP, Inc., BCS Insurance Company and/or Combined Insurance Company of America, to conduct any audit or review of W.E. Aubuchon Co., Inc., the W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan, Aubuchon Distribution, Inc., or the Aubuchon Distribution, Inc. Employee Medical Benefit Plan.

9. All reports generated by Northshore International Insurance Services as a result of any audit or review of W.E. Aubuchon Co., Inc., the W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan, Aubuchon Distribution, Inc., or the Aubuchon Distribution, Inc. Employee Medical Benefit Plan, including but not limited to any such audits or reviews that were commissioned by a stop-loss or excess carrier or representative therefor, including, but not limited to, BP, Inc., BCS Insurance Company and/or Combined Insurance Company of America.

10. All documents referenced by Northshore International Insurance Services to confirm

adjudication competency and accuracy in conducting any audit or review of W.E. Aubuchon Co., Inc., the W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan, Aubuchon Distribution, Inc., or the Aubuchon Distribution, Inc. Employee Medical Benefit Plan.

11. The complete contents of any and all files related to, concerning or discussing any audits or other reviews of W.E. Aubuchon Co., Inc., the W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan, Aubuchon Distribution, Inc., or the Aubuchon Distribution, Inc. Employee Medical Benefit Plan.

12. The complete contents of any and all files related to, concerning or discussing any audits or reviews of the activities of BeneFirst, LLC.

13. All documents discussing, relating to or concerning any audits or other reviews of W.E. Aubuchon Co., Inc., the W.E. Aubuchon Co., Inc. Employee Medical Benefit Plan, Aubuchon Distribution, Inc., or the Aubuchon Distribution, Inc. Employee Medical Benefit Plan.

### Applicable Definition

The term "document" is used herein in its broadest sense and includes, without limitation, all written or other recorded, graphic or photographic matter of any kind or character, whether produced or reproduced, and includes, without limiting the generality of the foregoing, e-mails, letters, telegrams, teletypes, correspondence, contracts, agreements, drafts, proofs, workpapers, applications, notes to file, reports, memoranda, memoranda of telephone or personal conversations or of meetings or conferences, transcripts, reports, interoffice communications, minutes of meetings, ledgers, checks, bills, invoices, computer data bases, computer printouts, including originals and copies of any of the foregoing, whether typed, printed, handwritten or on tape or otherwise recorded or saved, and any material underlying, supporting or used in the preparation of any such document which are in your possession, custody or control, or in the possession, custody or control of any of your present or former agents, representatives, or attorneys, or any and all persons acting on your behalf, including documents at any time in the possession, custody or control of such individuals or entities, or known by you to exist. Any document containing written or other markings in addition to that contained in another document must be produced in addition to that other document. "Document" also includes and refers to the file or any container holding or which once held any responsive documents, as well as any writing or printing which may appear on such files or container. "Document" also includes all documents annexed to the responsive document.

DECEMBER 4, 2006

# QUICKSERV
**ALLSTATE PROCESS SERVERS**

## RETURN OF SERVICE

*I this day summoned the within named* KEEPER OF RECORDS
NORTH SHORE INTERNATIONAL INSURANCE SERVICES

*to appear as within directed by delivering to*   TORY STEVENS, EMPLOYEE, 2:15 PM

**X**   *in hand, or*
   *leaving at last and usual place of abode, to wit:*

*No.*   199 ROSEWOOD DRIVE
*in the*   DANVERS        *District of said*   ESSEX        *County an attested copy of the subpoena together with*   $        *fees for attendance and travel*

*Service and travel*        28

*Paid Witness*

*it being necessary I actually used a motor vehicle in the distance of*
25   *miles in the service of this process*

_____
Process Server

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| W.E. AUBUCHON CO., INC., AUBUCHON DISTRIBUTION, INC., W.E. AUBUCHON CO. INC. EMPLOYEE MEDICAL BENEFIT PLAN, and AUBUCHON DISTRIBUTION, INC. EMPLOYEE MEDICAL BENEFIT PLAN<br>　　　　Plaintiffs,<br><br>v.<br><br>BENEFIRST, LLC,<br>　　　　Defendant. | C.A. No. 05-40159FDS |

## RULE 45 OBJECTION

Keeper of Records of Northshore International Insurance Services ("Northshore") hereby objects to the Subpoena served upon it pursuant to Federal Rule of Civil Procedure 45 on the following grounds:

1.　Adria L. Garneau, CEBS of Northshore has been retained by Plaintiffs as an expert in the above-captioned action. The categories of documents requested in the Subpoena include various documents that constitute work product, including but not limited to correspondence, e-mails and notes of meetings between Northshore's agents and Plaintiffs' counsel in anticipation of litigation. Such documents are privileged and will not be produced.

2.　The Subpoena is extremely broad in scope and requests documents which do not relate to the above-captioned action. The category of documents referenced in Paragraph 12 of the Subpoena's Schedule "A" is particularly objectionable. It seeks "The complete contents of any and all files related to, concerning or discussing any audits or reviews of the activities of

BeneFirst, LLC." As drafted, Paragraph 12 would include documents reflecting Northshore's audits of BeneFirst, LLC on behalf of entities other than Plaintiffs or their insurers. Such documents would be irrelevant and outside the scope of discovery in this matter.

On these grounds, Northshore objects to this Subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure.

NORTHSHORE INTERNATIONAL
INSURANCE SERVICES

*/s/ Adria L. Garneau*

Adria L. Garneau, CEBS, Vice President,
Northshore International Insurance Services
Telephone: 978-745-6655
Dated: December 7, 2006          Facsimile: 978-741-1642

### CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December, 2006 I served the foregoing document by mailing a copy of same, first class, postage prepaid, to:

Stephen D. Rosenberg, Esq.
Eric L. Brodie, Esq.
The McCormack Firm, LLC
One International Place, 7th Floor
Boston, MA 021010

Louis M. Ciavarra, Esq.
Ryan T. Killman, Esq.
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156

*/s/ Adria L. Garneau*
Adria L. Garneau, CEBS

{J:\CLIENTS\LIT\302508\0002\PLD\00814674.DOC;1}