# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

W.E. AUBUCHON CO., INC., AUBUCHON
DISTRIBUTION, INC., W.E. AUBUCHON CO., INC.
EMPLOYEE MEDICAL BENEFIT PLAN, and
AUBUCHON DISTRIBUTION, INC. EMPLOYEE
MEDICAL BENEFIT PLAN,

                            Plaintiffs,

v.

BENEFIRST, LLC,

                            Defendant.

CIVIL ACTION NO.
05-40159FDS

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

_____

## I.     INTRODUCTION

The plaintiffs, W.E. Aubuchon Co., Inc., Aubuchon Distribution, Inc., W.E. Aubuchon Co.,

Inc. Employee Medical Benefit Plan ("Aubuchon Plan") and Aubuchon Distribution, Inc. Employee

Medical Benefit Plan ("Aubuchon Distribution Plan"), bring this action under the Employee

Retirement Income Security Act of 1974 ("ERISA") against BeneFirst, LLC, ("BeneFirst") seeking

to recover damages, attorneys' fees and costs pursuant to 29 U.S.C. § 1132. In their complaint,

the plaintiffs allege exactly two theories of liability, one for breach of fiduciary duty under ERISA

and the other for common law breach of contract.  As detailed below, neither theory is actionable

as a matter of law, and summary judgment should be granted to BeneFirst as a result.

The plaintiffs allege that BeneFirst was a fiduciary of both the Aubuchon Plan and the

Aubuchon Distribution Plan, within the meaning of ERISA, 29 U.S.C. § 1001, *et seq*.  The plaintiffs

further allege that BeneFirst breached its fiduciary duty under both Plans by failing to perform its

duties, including investigating and determining eligibility, payments, co-pays, co-insurance and

subrogation claims, in a reasonably prudent fashion.  However, the breach of fiduciary duty claims

with respect to the Aubuchon Plan and the Aubuchon Distribution Plan fail because BeneFirst does

not qualify as a fiduciary, as that term is defined under ERISA.  Specifically, BeneFirst is not named

as a fiduciary in the plan documents pertaining to either the Aubuchon Plan or the Aubuchon Distribution Plan. In addition, BeneFirst had no discretionary authority with respect to either the Aubuchon Plan or the Aubuchon Distribution Plan, but instead performed routine administrative and ministerial duties as the third-party administrator for both Plans that do not, as a matter of law, give rise to fiduciary status.

Furthermore, the plaintiffs assert that BeneFirst, by failing to provide services accurately and completely, breached the terms of the Administrative Services Agreement that it entered into with W.E. Aubuchon Co., Inc., and that BeneFirst also breached the terms of the Administrative Services Agreement that it entered into with Aubuchon Distribution Inc.[1] ERISA, however, provides for preemption of all state law causes of action "insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The plaintiffs' breach of contract counts clearly relate solely to the employee benefit plans of both W.E. Aubuchon Co., Inc., and Aubuchon Distribution, Inc. Those claims are preempted as a matter of law.

## II.    FACTS

The plaintiffs allege that defendant BeneFirst was a fiduciary of both the Aubuchon Plan and the Aubuchon Distribution Plan, within the meaning of ERISA, 29 U.S.C. § 1001, *et seq.* The plaintiffs further allege that BeneFirst breached its fiduciary duty under both Plans by failing to perform its duties in a reasonably prudent fashion.[2] However, the breach of fiduciary duty claims with respect to the Aubuchon Plan and the Aubuchon Distribution Plan fail because BeneFirst does not qualify as a fiduciary, as that term is defined under ERISA. There is extensive documentation and deposition testimony in this matter that reflects indubitably that, under the pertinent provisions

---

[1] Substantively, these claims fail as well because the actual evidence demonstrates a degree of performance by BeneFirst that exceeds the objective requirements set forth in the applicable contracts. See e.g. *Gatanti Tr.* pp. 58-59. However, this summary judgment motion addresses only the legal issue - preemption - that precludes the causes of action from existing at all.

[2] According to Sarah Arel, benefits manager at W.E. Aubuchon Co., Inc., defendant BeneFirst was the third-party administrator for W.E. Aubuchon Co., Inc.'s plan from July 1, 2001, until December 31, 2004. In addition, BeneFirst was the third-party administrator for Aubuchon Distribution, Inc.'s plan from August 25, 2001, until August 24, 2002. *Arel Tr. p. 11.* The employee benefit plan of Aubuchon Distribution, Inc. terminated earlier and ceased to exist when that company's employees' began instead to receive their benefits under a union health and welfare plan. *Id.*

of ERISA and relevant case law,  BeneFirst was neither a named fiduciary nor a functional fiduciary.[3]

### A.    Administrative Services Agreements

An Administrative Services Agreement was entered into by Aubuchon Distribution, Inc. (identified in the document as the "Plan Sponsor") and BeneFirst (identified as the "Plan Administrator"), which delineates the terms and conditions under which BeneFirst agreed to provide administrative services to Aubuchon Distribution, as the Plan Sponsor, for purposes of the operation of Aubuchon Distribution's employee benefit Plan. A separate Administrative Services Agreement was entered into by W.E. Aubuchon Co., Inc. and BeneFirst covering the benefit plan operated and maintained by W.E. Aubuchon, Inc. for its employees.   Although no executed copies of these agreements have been located, the plaintiffs' F.R.C.P. 30(b)(6) designee has testified that both Agreements were identical to the Agreement version that was Exhibit 7 to the F.R.C.P. 30(b)(6) deposition of the plaintiffs, which this Court can locate at Exhibit A to the Defendant's Statement of Undisputed Material Facts ("Defendant's Statement").   *Arel Tr.* p. 32-36.

Section I of these governing contracts, entitled Claims Administration, at paragraph A1 provides that "[t]he plan sponsor [which is the applicable Aubuchon company] shall [r]etain the final authority and responsibility for the Benefit Plan and its operations.  The Plan Sponsor gives the Plan Administrator [which is BeneFirst] the authority to act on behalf of the Plan Sponsor in connection with the Benefit Plan, but only as expressly stated in this Agreement or as mutually agreed upon in writing by the Plan Sponsor and the Plan Administrator."  Furthermore, paragraph B4 of the same section provides that BeneFirst, as  the plan administrator, shall "[r]efer to the Plan Sponsor for determination of: (a) any claim or class of claims the Plan Sponsor may specify, (b) any disputed claim, (c) any claim involving any question of eligibility or entitlement of the claimant for coverage under the Benefit Plan, (d) any question with respect to the amount of payment due,

---

[3] ERISA extends fiduciary liability to functional fiduciaries.  Such functional fiduciaries act as fiduciaries, even though they are not explicitly named as such in the plan documents, by performing certain functions with regard to an employee benefits plan.  *Beddall v. State Street Bank*, 137 F.3d 12 (1st Cir. 1998).  A person is a functional fiduciary with respect to a plan to the extent he (I) exercises any discretionary authority or discretionary control respecting management or disposition of its assets, (ii) renders investment advice for a fee or other compensation . . . (iii) has any discretionary authority or discretionary responsibility in the administration of such plan.  29 U.S.C. § 1002(21)(A). BeneFirst had no such discretionary authority or responsibility for purposes of this statutory provision.

or (e) any other question."  The Plan Sponsor for purposes of these provisions is the applicable Aubuchon company; the Plan Administrator—who, under these provisions, is subject to the control by the Plan Sponsor—is BeneFirst.

None of the provisions of the contracts name BeneFirst as a fiduciary. The terms of these Agreements do not grant to BeneFirst any discretionary authority, control or responsibility in the administration of either the Aubuchon Plan or the Aubuchon Distribution Plan, and instead retain for W.E. Aubuchon Co., Inc.  and Aubuchon Distribution, Inc. final responsibility for the benefit plans; they further dictate that BeneFirst must refer to those companies for resolution of any issues that require any discretionary decision-making.

## B.    The Employee Medical Benefit Plans

The employee benefit plans administered by BeneFirst consisted of the medical benefit plans maintained by W.E. Aubuchon Co., Inc.  and Aubuchon Distribution, Inc. for their employees.

### 1.    Aubuchon Distribution, Inc. Plan

The Aubuchon Distribution Inc. Plan is governed by an applicable plan document. Defendant's Statement at 13.[4]  This particular plan provides on page one, in the Introduction, that the "Company has retained the services of an independent Contract Administrator to assist it in administering the Plan."  Furthermore, the plan names on page three W.E. Aubuchon Co., Inc. and Aubuchon Distribution, Inc., c/o M. Marcus Moran, Jr., as the Plan Administrators.  In addition, on page four of the document, the terms of the plan provide that the "Plan is self-administered by the Employer, which is a 'named fiduciary' and the 'plan administrator' under ERISA.  The Employer has delegated claims administration and other day-to-day functions for all benefits . . . to the following Contract Administrator as of August 25, 2001:  BeneFirst."  Furthermore, in Section VIII beginning on page 56, entitled General Plan Provisions, the plan provides that the "Company shall be the Plan Administrator . . . The Plan Administrator shall be a named fiduciary for purposes of Section 402(a)(1) of ERISA, shall administer the Plan in accordance with its terms, and shall have complete discretionary authority and all powers necessary to carry out its terms and to control and

---

[4]The F.R.C.P. 30(b)(6) designee of the plaintiffs has authenticated this as the plan applicable to Aubuchon Distribution. *Arel Tr.* at 17-18.

manage the operation and administration of the Plan."  The Plan reinforces that the employer, who is one of the plaintiffs in this case, is the Plan Administrator, expressly naming W.E. Aubuchon Co., Inc. as the Plan Administrator on page 78 of the Plan.

Finally, on page 71 of the Plan document, BeneFirst, LLC is named as the contract administrator, "together with any other of its programs, units, or divisions that is designated to perform claims administration functions under the Plan . . . ."

## 2.    W.E. Aubuchon Co., Inc. Plan

The W.E. Aubuchon Co., Inc. Plan is likewise governed by a written plan document applicable only to that company's employee benefits.  Defendant's Statement at 14-16.[5] The Plan for this company  provides on page one that "The Plan is administered through the Benefits Manager of the Employer.  The Employer has retained the services of an independent Contract Administrator to assist it in administering the Plan."  This Plan, on page three, names W.E. Aubuchon Co., Inc.,  c/o M. Marcus Moran, Jr., as Plan Administrator.  In addition, at page four, the plan provides that the "Plan is self-administered by the Employer, which is a 'named fiduciary' and the 'plan administrator' under ERISA.  The Employer has delegated claims administration and other day-to-day functions for all benefits . . . to the following Contract Administrator as of July 1, 2001: BeneFirst."

Furthermore, in Section VIII, entitled General Plan Provisions, the plan states that the Plan Administrator, which is W.E. Aubuchon Co., Inc., "shall be a named fiduciary for purposes of Section 402(a)(1) of ERISA, shall administer the Plan in accordance with its terms, and shall have complete discretionary authority and all powers necessary to carry out its terms and to control and manage the operation and administration of the Plan."[6]  Meanwhile, the Plan provides that

_____

[5]According to the F.R.C.P. 30(b)(6) designee of the plaintiffs, the plan for this company was revised once while in effect during the time that BeneFirst was the third party administrator.  The initial version was dated "revised July 1, 2001" and then the subsequent version is dated "revised September 1, 2002."  *Arel Tr.* at 16-19.  The plan terms discussed herein are identical in both versions.

[6]The pagination of the two versions of the plan varies slightly, and this language can be found at page 58 of the earlier July 1, 2001 version of the plan and page 60 of the subsequent September 1, 2002 version.  The actual plan terms are the same, however.

BeneFirst is only the contract administrator, "together with any other of its programs, units, or divisions that is designated to perform claims administration functions under the Plan."[7]

### C. Deposition Testimony

Significant and undisputed deposition testimony - including from employees of the plaintiff companies - establish exactly the scope of BeneFirst's role, authority and responsibility while serving as the contract administrator for the two plans. The deposition testimony, detailed below, uniformly demonstrates that BeneFirst had no discretionary authority in its capacity as third-party administrator, and simply followed the various plans' terms as written.

### 1. Paul Gatanti

Mr. Gatanti joined BeneFirst in August 2002 as the claim manager. *Gatanti Tr.* p. 13. He testified that BeneFirst's sole authority was to pay claims as delineated in the applicable medical benefit plan; BeneFirst had no authority to vary from the terms of such plan. *Id.* at 29. Furthermore, Aubuchon had the final authority to decide whether to pay a disputed medical benefit claim. *Id.* at 30, 34-35. The applicable written medical plans could only be amended by the plaintiff companies, and the terms of such plan were then applied by BeneFirst in determining whether to pay medical claims. *Id.* at 34.

In processing claims, BeneFirst used a computerized claim processing system, which was built out to match and apply the terms of the written medical benefit plans. The computer build outs utilized by BeneFirst to process claims regarding the Aubuchon account were designed to reflect the terms of the Aubuchon employee medical benefit plans. *Id.* at 82. BeneFirst claims examiners would only authorize a claim for payment under that system if it fell within the coverage provided by the applicable plans. *Id.* at pp. 120, 124. Employees of Aubuchon itself, however, were extremely involved in the details of the plaintiffs' employee medical benefits plans, and would become involved in deciding whether to authorize payment for medical benefit claims that were not covered under the express terms of the applicable plans. *Id.* at 27-29, 97. BeneFirst itself,

---

[7]At page 78 of the pre-September 2002 version and page 74 of the post-September 2002 version.

however, could not authorize payment of medical benefit claims that were not actually covered under the written terms of the applicable Plans. *Id.* at 32-33.

### 2.    Sarah Arel

Ms. Arel,[8] the benefits manager at W.E. Aubuchon Co., Inc. since 1994, confirmed that when BeneFirst became the third-party administrator for W.E. Aubuchon Co. and for Aubuchon Distribution Inc., BeneFirst was provided with the plan documents for both companies that had been utilized by the previous third-party administrator. *Arel Tr.* p. 5, 10-12. She testified that BeneFirst was not involved in drafting the terms of either Plan when it became the third-party administrator for W.E. Aubuchon Co. and for Aubuchon Distribution, Inc., or the terms of any subsequent revisions. *Id.* at 21. She testified that the Administrative Services Agreement provided that BeneFirst had no authority to pay claims that were not covered pursuant to the terms of the applicable Plan. *Id.* at 36-37. Only M. Marcus Moran, president and treasurer of W.E. Aubuchon Co., Inc. had authority to overrule any claim denials by BeneFirst. *Id.* at 145-146.[9]

### 3.    Carrie Reddie

Ms. Reddie, who began working at BeneFirst in March 2001**,** held the position as plan-builder intermittently during her employment at BeneFirst. *Reddie Tr.* pp. 6-10. This work consisted of "building out" the computer system to properly process claims in a manner that matched the plan document for a particular company's plan. *Id.* at 12-15. Each BeneFirst account had its own computer plan build out, based on plan documents, for claims processing. *Id.* at 13-14. The BeneFirst computer build out was based on the relevant Aubuchon plan documents; there were no major discrepancies between the build out and the plan. *Id.* at 91.

She also served as a claim adjuster processing claims submitted under the plaintiffs' medical benefit plans. Ms. Reddie would pay claims approved by the computer as covered under the terms of the plaintiffs' plans, but did not have any authority to – and would not – pay an

---

[8]Ms. Arel testified as the F.R.C.P. 30(b)(6) designee of the plaintiffs, and thus her testimony is attributable to them.

[9]Kim McMahon, Sarah Arel's assistant, likewise testified that only M. Marcus Moran had the authority to decide to cover a claim that the third-party administrator determined was not covered, under the terms of the applicable medical plan. *McMahon Tr.* pp. 11-12.

Aubuchon claim that BeneFirst's computer system deemed denied, based on plan documents. *Id*. at 20-21. The plan documents, and directives from Aubuchon regarding particular claims, dictated the processing of Aubuchon claims by BeneFirst. *Id*. Only Aubuchon had authority to direct that a denied benefit claim should, instead, be paid despite not being covered under the actual terms of the plan documents; BeneFirst had no such authority. *Id*. at 23. Ms. Reddie testified that she would only pay a claim that was denied under the plan terms if she was specifically instructed to do so by Aubuchon. *Id*. at 22-25.

BeneFirst claims examiners, when working on Aubuchon accounts, processed claims based on information included in the relevant plan document as well as the computer build out; whenever there was an issue that was unclear, the claims examiner would defer to Aubuchon for a determination. *Id*. at 85. When Ms. Reddie, while employed with BeneFirst, could not determine from the appropriate Aubuchon plan document whether a claim was covered, it was Ms. Reddie's practice to speak directly with appropriate Aubuchon representatives and obtain a definitive answer in writing. *Id*. at 86-87. Moreover, Ms. Reddie erred on the side of caution when processing claims and in designing the BeneFirst computer build out for the Aubuchon account; she did so by generating denials regarding questionable claims because neither she nor BeneFirst had the discretion to decide to pay questionable claims. *Id*.

### 4. **M. Marcus Moran**

M. Marcus Moran, president and treasurer of W.E. Aubuchon Co., Inc., has the sole authority to amend the terms of the Aubuchon employee medical benefit plans. *Moran Tr.* at p. 20, 30. Mr. Moran, who was essentially the controlling executive for the plaintiffs, testified that BeneFirst had no authority to deviate from the Aubuchon plan documents. *Id*. at 83. He further testified that BeneFirst only had the authority to pay a claim that was not covered under the Aubuchon medical plans if Mr. Moran himself authorized such a payment; absent such authorization from him, BeneFirst did not have the discretion to pay a claim that was not covered under the actual terms of the medical benefit plans. *Id*. at 84. He further testified that BeneFirst determined eligibility for coverage based solely on the terms of the various Aubuchon plan documents, *Id*. at 90-91, that BeneFirst's authority to deny a claim rested only with the Aubuchon

plan documents, and that BeneFirst was accountable for paying claims only in accordance with plan documents, *Id.* at 92.

> **D.    Corroborating Documentation That Plaintiffs Made All Discretionary Decisions Regarding Benefit Claims**

The plaintiffs recently located and produced a number of written communications from Sarah Arel and Kim McMahon of Aubuchon to BeneFirst employees, including Carrie Reddie, instructing BeneFirst to pay particular claims that had been denied or were otherwise not covered. Defendant's Statement at 24. The Court will note that many instruct BeneFirst to pay these bills "outside the loss fund," which testimony in the case documents meant that they were to be paid even though the claims at issue were not covered under the actual terms of the Plans. *Gatanti Tr.* at 27; *Reddie Tr.* at 24. These documents thus corroborate and affirm the testimony of Mr. Gatanti and Ms. Reddie, discussed above, that Aubuchon officials were actively involved in claim decisions and would instruct BeneFirst to pay claims that were not covered under the terms of the Plans themselves.   They are also consistent with, and document, the testimony of Mr. Moran, the plaintiffs' President and Treasurer, that only the plaintiffs could authorize payment of benefit claims that were not otherwise covered under the terms of the Plans.

**III.    COUNTS I AND II OF THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE BENEFIRST WAS NOT A FIDUCIARY WITH RESPECT TO EITHER THE  AUBUCHON PLAN OR THE AUBUCHON DISTRIBUTION PLAN**

ERISA's fiduciary duty provisions describe who is a "fiduciary" or "co-fiduciary," as well as what activities constitute a breach of fiduciary duty. *Beddall v. State Street Bank*, 137 F.3d 12 (1st Cir. 1998).   In the first instance, the statute reserves fiduciary liability for "named fiduciaries," defined either as those individuals listed as fiduciaries in the plan documents, or those who are otherwise identified as fiduciaries pursuant to a plan-specified procedure.  Id., citing 29 U.S.C. § 1102(a)(2); see also 29 U.S.C. § 1105(c)(1)(permitting allocation of fiduciary responsibility pursuant to the plan instrument).  As the evidence discussed in detail above amply establishes, BeneFirst was not a named fiduciary for either of the employee benefit plans at issue in this case.

ERISA also extends fiduciary liability to functional fiduciaries – persons who act as fiduciaries, although not explicitly denominated as such, by performing at least one of several

enumerated functions with respect to a plan. *Beddall* at 12. Specifically, "a person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets,[10] (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

The key characteristic of whether a person qualifies as a functional fiduciary under these tests is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets (such as by rendering investment advice). *Beddall* at 13, citing *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 96 (1st Cir. 1982)("In the absence of [the discretionary, advisory activities described by the statute], it would be unfair to impose. . . the responsibilities and liabilities created by the statute for fiduciaries."); *see also* 29 C.F.R. § 2509.75-8 (1986). It has been said, quite accurately, that "[d]iscretion is the *sine qua non* of fiduciary duty."[11] *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20, 22 (1st Cir. 1996). Significantly, the mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status. *Beddall* at 14, *citing Cottrill* at 21-22; *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995)(one must perform more than the "usual professional" or "ministerial" functions in order to be considered a fiduciary). Furthermore, fiduciary status is not an all or nothing proposition; the statutory language indicates that a person is a plan fiduciary only "to the extent" that he possesses or exercises the requisite discretion and control. *Beddall* at 14; 29 U.S.C. § 1002(21)(A). Because fiduciary responsibility under ERISA is directly and solely attributable to the possession or exercise of discretionary authority, fiduciary liability arises in specific increments correlated to the vesting or performance of particular fiduciary functions in service of the plan, not in general terms. *Id.*, citing *Maniace v. Commerce Bank*, 40

---

[10] The term "control" has been interpreted as "the power to exercise a controlling influence over the management or policies of a person other than an individual." *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757, 761 (D.N.H. 1997).

[11] "Without which it could not be."

F.3d 264, 267 (8th Cir. 1994); *Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir. 1982); *NARDA, Inc. v. Rhode Island Hosp. Trust Nat'l Bank*, 744 F. Supp. 685, 690 (D. Md. 1990).

Attorneys, accountants, auditors, actuaries and others who render their professional services to an employee benefit plan are not fiduciaries, as defined by ERISA, unless there is a showing of control respecting the management of plan assets, investment advice for a fee, or discretionary responsibility over the administration of the plan. *Toomey v. Jones*, 855 F. Supp. 19 (D. Mass 1994), citing *Anoka Orthopaedic Assoc., P.A. v. Lechner*, 910 F.2d 514, 517 (8th Cir. 1900)(accounting firm); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 454-55 (6th Cir. 1991)(claims processing company); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 537 (7th Cir. 1991) (actuaries); *Yeseta v. Baima*, 837 F.2d 380, 385 (9th Cir. 1988)(attorney). In reaching this conclusion, courts have expressly relied on interpretive regulations issued by the Department of Labor relating to certain aspects of fiduciary responsibility under ERISA. 29 C.F.R. § 2509.75-8.

The construction of regulations issued by the Department of Labor, which is entrusted with ERISA enforcement, is entitled to considerable weight. *Toomey* at 24. The Labor Department guidelines provide that persons "processing claims, applying plan eligibility rules, communicating with employees and calculating benefits, are not fiduciaries under ERISA." *Toomey* at 24, citing *Baxter* at 455 (citing 29 C.F.R. § 2509.75-8 D-2). Fiduciary responsibilities do not include processing claims within a framework of policies, rules and procedures established by others; these are administrative functions only. *Livick v. Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008), citing 29 C.F.R. § 2509.75-8; *Gelardi v. Pertec Computer*, 761 F.2d 1323, 1325 (9th Cir. Ct. App.), citing 29 C.F.R. § 2509.75-8. Furthermore, a party who only performs ministerial or clerical functions relating to the administration of a plan is not an ERISA fiduciary since that party has no discretionary authority over the plan management and merely performs the tasks assigned. *See Watson v. Deaconess Waltham Hospital*, 141 F. Supp. 2d 145, 153 (D. Mass. 2001), *aff'd*, *Watson v. Deaconess Waltham Hospital*, 298 F.3d 102 (1st Cir. 2002)("[t]he established law of the First Circuit is that the mere existence of physical control over a plan or the performance of ministerial administrative tasks is insufficient to create fiduciary status"); 29 C.F.R. § 2509.75-8 (detailing the purely ministerial functions which if performed by a person do not make him a fiduciary because

such person does not have discretionary authority or discretionary control respecting management of the plan).

Courts have determined that when the plan administrator of an employee benefit plan - such as the plaintiff companies in the present matter - retains discretion to decide disputes, a third-party service provider, such as BeneFirst, is not a fiduciary of the plan, and thus not amenable to a suit alleging breach of fiduciary duty. *Livick,* 524 F.3d at 29 ("the [c]alculation of benefits and [p]reparation of reports concerning participants' benefits are ministerial functions, and a person who performs purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary"); *Terry,* 145 F.3d 28, citing *HealthSouth Rehab. Hosp. v. American Nat'l. Red Cross*, 101 F.3d 1005, 1008-1009 (4th Cir. 1996), cert. denied, 117 S. Ct. 2432 (1997); *Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 613-614 (7th Cir. 1995); *Kyle Railways, Inc. v. Pacific Admin. Services, Inc.*, 990 F.2d 513, 516 (9th Cir. 1993)(third-party administrators not fiduciaries when they merely perform ministerial duties or process claims); *Baxter* at 290 (a claims processor that only had the power to pay out benefits according to the terms of the established plan was not an ERISA fiduciary); *Baker v. Big Star Div. of The Grand Union Co.*, 893 F.2d 288, 290 (11th Cir. 1989)("An insurance company does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer."); *Haidle v. Chippenham Hosp., Inc.*, 855 F. Supp. 127, 131-132 (E.D. Va. 1994)(Processing and paying claims are administrative, not discretionary functions, and an entity seized of the obligation to simply make determinations about who and what is covered by looking at a plan's clearly established language is not an ERISA fiduciary.)  An interpretive bulletin issued by the Department of Labor supports this tenet, providing that an entity which merely processes claims "is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan." *Terry* at 35-36, citing 29 C.F.R. § 2509.75-8, D-2 (1997).

Neither the Aubuchon Plan nor the Aubuchon Distribution Plan name BeneFirst as a fiduciary.  In fact, in these documents, W.E. Aubuchon Co., Inc. and Aubuchon Distribution, Inc. are named specifically as fiduciaries while BeneFirst is granted the status solely of contract

administrator. Moreover, these Plan documents delegate to BeneFirst only claims administration responsibility as well as other attendant duties related to the day-to-day functions of a third-party administrator. Furthermore, the Administrative Services Agreement between BeneFirst and W.E. Aubuchon Co., Inc. as well as the same agreement between BeneFirst and Aubuchon Distribution, Inc., do not name BeneFirst as a fiduciary. In fact, these Agreements emphasize that BeneFirst only had authority to act on behalf of either W.E. Aubuchon Co., Inc. or Aubuchon Distribution, Inc. to the extent stated in the Agreements, or as agreed upon in writing by the parties. The terms of the Agreements specifically directed BeneFirst to consult with the proper Aubuchon company in the event of any disputed claim, or any claim which raised a question of eligibility or entitlement. It is abundantly clear from the provisions of the Administrative Services Agreement that BeneFirst was not a named fiduciary and was also not intended to have any discretionary authority in its capacity as third-party administrator.

Additionally, the deposition testimony of Mr. Gatanti, Ms. Arel, Ms. Reddie and Mr. Moran uniformly points to the same unmistakable conclusion: BeneFirst was not a functional fiduciary during the time period that it operated as a third-party administrator for W.E. Aubuchon Co., Inc. and Aubuchon Distribution, Inc. Specifically, their testimony reflects that BeneFirst did not exercise any discretionary authority or discretionary control regarding the management or administration of the Aubuchon Plans in question. BeneFirst only had authority to pay claims as delineated in the various Aubuchon Plans and had no authority to vary from the terms of the Plans. BeneFirst did not draft the terms of the Aubuchon Plans in question, nor did BeneFirst participate in any revision to the terms of the Plans.

BeneFirst was responsible to the Aubuchon companies only for daily ministerial administrative duties, and clearly had no control or responsibility for any facet of managing the Aubuchon Plans; moreover, there was no expectation on the part of either W.E. Aubuchon Co., Inc. or Aubuchon Distribution, Inc. that BeneFirst should undertake any tasks beyond processing claims and applying the Plan terms as written. The BeneFirst computer system utilized to process Aubuchon claims was based on the Plan terms; BeneFirst had no discretionary authority to authorize payment of a claim deemed denied by its computer build-out because only Aubuchon

could authorize payment of such a claim.  Mr Moran, president and treasurer of W.E. Aubuchon Co., Inc. confirmed that BeneFirst had no authority, when processing claims, to deviate from the various Plan documents; BeneFirst could only pay a claim that was not covered under the Aubuchon Plans if authorization to do so were obtained from Mr. Moran.

Relevant case law as well as Department of Labor regulations, discussed above, reflect that fiduciary responsibilities do not include claims processing within a framework of policies, rules and procedure established by others as these are only administrative functions.  In this matter, BeneFirst carefully performed its administrative functions solely pursuant to the terms of the Aubuchon Plans as well as the Administrative Services Agreements.  During the course of their contractual relationship with BeneFirst, W.E. Aubuchon Co., Inc. and Aubuchon Distribution, Inc. consistently retained discretion to decide any disputes related to claims processing, and were involved in the minutiae of BeneFirst's clerical functions.  BeneFirst was simply not allowed by either W.E. Aubuchon Co., Inc. or Aubuchon Distribution, Inc. to undertake any discretionary functions in its capacity as third-party administrator.

Under the facts of the instant matter, BeneFirst does not qualify as named or functional fiduciary under ERISA.  Accordingly, Counts I and II of the amended complaint must be dismissed as these claims are improperly pleaded against a defendant without ERISA fiduciary status.

## IV.    COUNT III AND COUNT IV ARE PREEMPTED BY ERISA AND, ACCORDINGLY, MUST BE DISMISSED

ERISA provides for the preemption of all state law causes of action  "insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a), ERISA § 514.[12] ERISA § 514 preemption analysis involves two central questions: (1) whether the plan at issue is an "employee benefit plan" and (2) whether the cause of action "relates to" that employee benefit plan. *McMahon v. Digital Equipment Corporation*, 1998 U.S. App. LEXIS 30803; *see also Rosario-Cordero v. Crowley Towing & Transp. Co.*, 46 F.3d 120, 124 (1st Cir. 1995); *Curran v. Camden Nat'l Corp.*, 477 F. Supp. 2d 247, 258 (D. Me. 2007).  Regarding the first question, it is beyond argument

---

[12] "State laws" include "all laws, decisions, rules, regulations, or other State action having the effect of law."  § 514(c)(1).

that the W.E. Aubuchon Co., Inc. and the Aubuchon Distribution, Inc. Employee Medical Benefit Plans are employee benefit plans. Regarding the second question, "[a] law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990), quoting *Shaw*, 463 U.S. 85, 96-97. When state-law claims "relate to" ERISA plans, those claims are transmuted into ERISA claims. *Carpenters Local Union No. 26 v. United States Fidelity & Guaranty Company,* 215 F.3d 136 (1ˢᵗ Cir. 2000).

*Ingersoll-Rand* identified two tests for determining whether a state cause of action "relates to" an ERISA plan. First, a state law cause of action is expressly preempted by ERISA where a plaintiff, in order to prevail, must prove the existence, or specific terms of an ERISA plan. The cause of action "relates to" an ERISA plan in this context because the court's inquiry must be directed to the plan; ERISA will be found to preempt state-law claims if the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's claims. *See e.g. Curran,* 477 F. Supp. 2d at 258 (D. Me. 2007). Second, even where there is no preemption for this reason, a cause of action is preempted if it conflicts directly with an ERISA cause of action. *Id.* at 258-59.

The First Circuit has consistently held that a cause of action "relates to" an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action. *See Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 52 (1ˢᵗ Cir. 2000); *McMahon v. Digital Equipment Corp.*, 162 F.3d 28, 38 (1ˢᵗ Cir. 1998); *Boston Children's Heart Found., Inc. v. Nadal-Ginard*, 73 F.3d 429, 440(1st Cir. 1996); *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 793-794 (1ˢᵗ Cir. 1995)(court dismissed complaint including state law misrepresentation claims against plaintiff's employer afer noting that an analysis of plaintiff's claims would "ultimately depend on an analysis" of the ERISA plan at issue, to which the claims were thus "inseparably connected."); *Zipperer v. Raytheon Co., Inc.,* 493 F.3d 50 (1ˢᵗ Cir. 2007)(court affirmed District Court's judgment in favor of defendant former employer after finding that plaintiff's state law claims of negligence, equitable estoppel and negligent misrepresentation were "inseparably connected to former employer's retirement plan and its administration.); *Vartanian v. Monsanto Co.*, 14 F.3d 697, 698-99 (1ˢᵗ Cir. 1994); *Curran*, 477 F. Supp. at 258-60 (breach of contract claims preempted). Moreover, the First Circuit has held that ERISA preempts state law causes of action

for damages where the damages must be calculated using the terms of an ERISA plan.  *See Carlo*, 49 F.3d at 794.

In this matter, the plaintiff has asserted in Counts III and IV that, pursuant to the terms of both the W.E. Aubuchon Plan and the Aubuchon Distribution Plan, the plaintiffs and  BeneFirst entered into administrative services agreements in which BeneFirst agreed to administer both the W.E. Aubuchon Plan and the Aubuchon Distribution Plan; the plaintiffs allege that BeneFirst has breached both administrative services agreements.   The plaintiffs allege that BeneFirst committed multiple millions of dollars of claims processing errors by its decisions as to which medical claims to pay, which to deny, the amount to pay on particular claims, and the degree of investigation to pursue on particular claims. Defendant's Statement at 25.  The plaintiffs specifically seek these errors in paying claims under the plans' terms as their recovery from the defendant.  Defendant's Statement at 25.  Moreover, the plaintiffs' expert report in support of these claims specifically bases the claim of breach of contract on a comparison of the claims paid by BeneFirst with the applicable plan terms. Defendant's Statement at 25.[13]

These theories of liabilities and of recovery cannot be prosecuted without detailed consideration and analysis of the Plans themselves, and as a result, the breach of contract claims "relate to" the employee benefit plans for purposes of preemption;  in order to attempt to prevail, the plaintiffs must necessarily prove first the terms of the ERISA plans, specifically the W.E. Aubuchon Plan and the Aubuchon Distribution Plan, and then, second, the manner and extent to which BeneFirst varied from those terms.

The First Circuit Court of Appeals has noted that the *Ingersoll-Rand* test applies to judicially created causes of action, such as the common law breach of contract claims in this matter. Moreover, the First Circuit has consistently held that a cause of action "relates to" an ERISA plan when a court, as it must in the present matter, must evaluate or interpret  the terms of an ERISA-regulated plan in order to determine liability under the state law cause of action.  See  *McMahon*

---

[13]In addition, the contracts that the plaintiffs allege were breached -the Administrative Services Agreements-provide for performance standards that are governed by the terms of the Plans, and thus it is impossible for the plaintiffs to allege breach of these agreements without reference to the Plan documents.  Exhibit A to Defendant's Statement at Section VI, Performance Standards.

*v. Digital Equipment Corporation*, 1998 U.S. App. LEXIS 30803(claims against manager of plaintiff's employer's short-term disability program for, *inter alia*, breach of contract were preempted; claim required the plaintiff to prove the terms of the relevant ERISA plan because she could not prevail unless she was able to demonstrate that, in fact, she was "totally disabled" under the plan's definition of that term). The First Circuit has held that ERISA "broadly preempts any state law claim that 'relates to' an employee benefit plan." *Hotz v. Blue Cross and Blue Shield of Mass., Inc.,* 292 F.3d 57, 60 (1st Cir. 2002); *Utility Workers v. NSTAR Electric and Gas Corp.*, 2004 U.S. Dist. LEXIS 8587 (plaintiffs alleged that the defendant NSTAR violated federal and state laws when it changed certain retirement benefits to which the plaintiffs were entitled; the court determined that the plaintiffs' state law breach of contract and misrepresentation claims both related to NSTAR's alleged representation that the plaintiffs' benefit plans would not change, holding that "these claims necessarily have 'a connection with or reference to' the benefit plan itself."  Plaintiffs' state law claims for breach of contract and misrepresentation were deemed preempted by ERISA § 514 and dismissed accordingly); *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 794 (1st Cir. 1995); *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 277 (1st Cir. 2000)(affirming district court's ruling that plaintiff's state law breach of contract claims was preempted by ERISA); *Nadworny v. Shaw's Supermarkets, Inc.*, 2005 U.S. Dist. LEXIS 35174 (in considering whether plaintiff's breach of contract claim "relates to" employee benefit plan, court noted that, if an employee benefit plan was at issue, there would be "little doubt that the issue of its breach 'relates to' that benefit plan."); *Turner v. Fallon Community Health Plan*, 127 F.3d 196, 199 (1st Cir. 1997)('It would be difficult to think of a state law that relates more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan.")

The state common law breach of contract claims included in Counts III and IV clearly "relate to" the Plans at issue under these standards and are preempted.  They should therefore be dismissed.

In addition, *Ingersoll-Rand* provides for a second avenue of preemption, which is that if a state law claim does not "relate to" an employee benefit plan for purposes of preemption analysis, that state law theory of liability  is nonetheless preempted if it should be considered an alternative

enforcement mechanism to the remedies expressly provided by ERISA itself.  "ERISA preemption proscribes the type of alternative enforcement mechanism that purposes to provide a remedy for the violation of a right expressly guaranteed and exclusively enforced by the ERISA statute." *Carpenters Local Union No. 26* at 141.[14]

The First Circuit, in *Turner v. Fallon Community Health Plan*, 127 F.3d 196 (1st Cir. 1997), found state common law claims preempted after determining that they fell within ERISA's exclusive civil enforcement regime.  The plaintiff brought breach of contract, other state law claims, and a claim under ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) against a health maintenance organization, charging that it wrongly denied a request to fund a certain treatment.  The plaintiff sought compensatory damages, arguing "that if ERISA provided no federal [damages] remedy, it ought not be read to preempt his state-law claims;" alternatively, "if ERISA preempted the state-law claims, then a federal remedy ought to be inferred or created by the court to permit damages for wrongful withholding of treatment under the employee benefits plan." *Id.* at 198.  The First Circuit rejected both arguments, finding instead the state law claims preempted, and holding that ERISA's preemption clause "precludes state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights." *Id.* at 199.  *See also Hampers* (the fact that the very same conduct underlied both the plaintiff's state law contract claim and his ERISA-benefits claim suggested that the state law claim was an alternative mechanism for obtaining ERISA plan benefits).

In the circumstances presented by the instant matter, ERISA contains an enforcement remedy and a mechanism: claims for breach of fiduciary duty when a party fails to properly operate a plan. In addition, where, as here, a fiduciary claims that an administrator was not properly administering a plan, the fiduciary has the option to pursue injunctive relief during the time that the administrator is performing those functions to compel the administrator to properly administer the

---

[14]*See also Ingersoll-Rand Co.*, 498 U.S. 133 (the Supreme Court specifically recognized that a state law can be preempted as an alternative enforcement mechanism to ERISA § 502(a); preemption extends to "causes of action within the scope of the civil enforcement provisions of ERISA").

plan's terms.[15] 29 U.S.C. § 1132(a)(3).  It is irrelevant to preemption analysis that the plaintiffs'
breach of fiduciary duty claim fails under the actual facts here, or that it failed to timely pursue
injunctive relief to remedy alleged problems in the administration of the Plans, as all that matters
is that the statute in fact provides a remedy, limited though it may be, that covers the administration
and operation of the Plans.  ERISA is widely accepted and recognized as containing all remedies
and causes of action that can be brought involving an ERISA-governed employee benefit plan,
such as the ones at issue in the instant matter, and it is widely recognized that Congress
specifically restricted what causes of action are available and under what circumstances they may
be brought.[16]

It is a commonplace that ERISA provides limited remedies and that those limited remedies
can interact with preemption of state law claims to result in the complete absence of an actionable
theory of liability.  See e.g. Curran, 477 F. Supp. 2d 247.  This outcome is not an accident or
oversight in statutory draftsmanship, but instead reflects a balancing by Congress of the need to
limit liabilities so as to encourage the creation of employee benefit plans and supporting networks
by the expedient of limiting legal exposures and the accompanying costs.  See e.g., Mertons v.
Hewitt Assocs., 508 U.S. 248, 254 (1993).

The complaint in the instant matter alleges in Counts I and II causes of action under ERISA
for breach of fiduciary duty based on exactly the same conduct that underlies the plaintiffs' state
law breach of contract claims included in Counts III and IV.  The fact that the same alleged conduct

---

[15]Indeed, some would argue, the very nature of the fiduciary obligation under trust law would require a  fiduciary
(such as the plaintiffs) who has assigned administration to a non-fiduciary third party, to have remained
contemporaneously aware of any problems in administration while they were occurring, and to have pursued equitable
relief to remedy it while the administrator was still in a position to remedy the alleged problems.  Anything less than this
level of involvement by an employer and plan sponsor who has retained fiduciary status is in derogation of the high level
of duty owed by a fiduciary to plan participants.

[16]"ERISA is a 'comprehensive and reticulated statute,' Mertens v. Hewitt Assocs., 508 U.S. 248, 251
(1993)(quoting Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359 (1980)), and the Court has "therefore been
especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not
specifically authorized by its text."  Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (quoting Mass. Mut.
Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985)("We are reluctant to tamper with an enforcement scheme crafted with
such evident care as the one in ERISA.")) "ERISA's "carefully crafted and detailed enforcement scheme provides strong
evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." Mertens
v. Hewitt Assocs., 508 U.S. 248, 254 (1993), quoting Russell at 146-147.  See also Terry v. Bayer Corp., 145 F.3d 28,
34 (1st Cir. 1998); New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645
(1995).

underlies both the state law breach of contract claims included in Counts III and IV and the ERISA based claims included in Counts I and II demonstrates that the "state law claim is an alternative mechanism" for obtaining relief or redress that is instead governed by ERISA's own intentionally limited theories of liability and, accordingly, are preempted under the "alternative enforcement mechanism" test for preemption. *Hampers* at 52. *See also Zipperer v Raytheon Co, Inc.*, 2007 U.S. App. LEXIS 16616 (plaintiff's three counts rely on common claim that defendant employer's negligent record keeping led to reliance on mistaken retirement benefits estimate; subjecting employer's plan administration to state law scrutiny would, *inter alia*, impermissibly create "an alternative enforcement scheme" to ERISA's requirements).

## V.    CONCLUSION

The plaintiffs, in their amended complaint, assert four counts. Count I and Count II allege breach of fiduciary duty. Count III and Count IV allege breach of contract. For the reasons detailed above, all four claims fail and summary judgment should be granted in favor of the defendant on these counts.

Respectfully submitted,
The Defendant, by its attorneys


/s/ Stephen D. Rosenberg
Stephen D. Rosenberg [BBO #558415]
Eric L. Brodie      [BBO #639833]
THE MCCORMACK FIRM, LLC
One International Place
Boston, MA    02110
**Ph:**    617•951•2929
**Fax:**    617•951•2672
srosenberg@mccormackfirm.com
ebrodie@mccormackfirm.com


112406.1